**PLAGER SCHACK LLP**
Mark H. Plager (CA Bar No. 192259)
*mark@plagerschack.com*
Michael L. Schack (CA Bar No. 128784)
*michaels@plagerschack.com*
16152 Beach Boulevard, Suite 207
Huntington Beach, California 92647
(714) 698-0601 - Phone
(714) 698-0608 - Fax

Attorneys for Interpleader
Gotham Insurance Company

**Filed**

AUG 16 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

*Fee paid*
*SI* ①

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

GOTHAM INSURANCE COMPANY,

Plaintiff in Interpleader,

v.

SHASTA TECHNOLOGIES, LLC,
INSTACARE CORP., and
PHARMATECH SOLUTIONS, INC.
Defendants in Interpleader.

CASE No. CV 13-03810 PJH

**COMPLAINT IN INTERPLEADER PURSUANT TO RULE 22 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiffs in Interpleader, Gotham Insurance Company ("Gotham"), for their complaint in interpleader against Defendants Shasta Technologies LLC, Instacare Corp., Pharmatech Solutions, Inc., and Conductive Technologies, Inc., avers as follows:

///
///
///

---

## Jurisdiction

1.     This Court has jurisdiction pursuant to Title 28, United States Code Sections 1332, 1335, and Rule 22 of the Federal Rules of Civil Procedure.

2.     Venue is proper in this district pursuant to 28 U.S.C. §1397 because Defendants in Interpleader are subject to personal jurisdiction in this judicial district and is already party to primary action in this jurisdiction captioned as *Lifescan Scotland Ltd. v. Shasta Technologies LLC, Instacare Corp., PharmaTech Solutions, Inc., and Conductive Technologies, Inc.*, Case No. CV11-04494 (U.S.D.C., N.D.Cal., San Jose Div.) (the "Underlying Lawsuit").

## Parties

3.     Gotham Insurance Company is a New York corporation with its principal place of business located at 919 Third Avenue, New York, New York 10022, and does business in this judicial district.

4.     On information and belief, Defendant in Interpleader Shasta Technologies LLC ("Shasta") is a limited liability company organized under the laws of the State of Oregon, having a principal place of business at 7340 Hunziker Road, Suite 205, Tigard, Oregon 97223.

5.     On information and belief, Defendant in Interpleader Instacare Corporation ("Instacare") is a corporation organized under the laws of the State of Nevada, having a principal place of business at 2660 Townsgate Road, Suite 300, Westlake Village, California 91361.

6.     On information and belief, Defendant in Interpleader PharmaTech Solutions LLC ("PharmaTech") is a limited liability company organized under the laws of the State of Nevada, having a principal place of business at 2660 Townsgate Road, Suite 300, Westlake Village, California 91361.

///
///
///

1
2

# **FIRST CAUSE OF ACTION**
## **INTERPLEADER**

3     7.     Gotham issued insurance policy No. IP00705-D to Shasta entitled
4 Intellectual Property Infringement Defense Cost Reimbursement Insurance (the
5 "Policy") effective May 20, 2010 to May 20, 2011.  A true and correct copy of the
6 Policy and its Endorsements is attached hereto as Exhibit 1.

7     8.     The Policy provides coverage limits of $2 Million for Litigation Expenses
8 and Damages per claim and $2 Million for Litigation Expenses and Damages in the
9 aggregate (hereinafter the "Proceeds").  The Proceeds are payble subject a 10% co-
10 pay, and exhaustion of $250,000 Self Insured Retention per Claim pursuant to
11 Endorsement No. IPI-DEF 843-10B effective May 5, 2010.

12     9.     Effective May 20, 2010, Gotham at the request of Shasta issued
13 Endorsement No. IPI-DEF 843-13A to the Policy which added PharmaTech and
14 Instacare as Additional ILsureds.

15     10.    The Policy is governed by New York law.

16     11.    Gotham retains an interest in and claim to the Proceeds of the Policy
17 based upon the issuance of a reservation of rights letter on May 30, 2012 to
18 Defendants in Interpleader Shasta, Instacare and PharmaTech on the grounds stated in
19 that letter Gotham thus reserves its right to seek return of the proceeds paid and cease
20 further payments upon issuance of a formal declination.  A true and correct copy of the
21 May 30, 2012 Reservation of Rights Letter is attached hereto as Exhibit 2.

22     12.    The amount of the insurance proceeds available pursuant to the Policy are
23 undisputed.  However, the total amount of the proceeds payable to the Defendants in
24 Interpleader as defense reimbursement is currently unknown.  In lieu of depositing the
25 entirety of the proceeds with the Court, which may or may not be the subject of
26 reimbursement pursuant to the terms of the Policy, Gotham is amenable to issuing a
27 bond covering the total insurance proceeds as set forth in Paragraph 8 above.

28     13.    Defendants in Interpleader, Shasta, PharmaTech and Instacare each seek

1   the Proceeds authorized by the Policy.

2      14.    Defendants in Interpleader, Shasta, PharmaTech and Instacare have each
3   made conflicting claims against the Proceeds.

4      15.    On or about June 1, 2012, Plaintiff in Interpleader commenced an
5   Interpleader Action against these same Defendants in Interpleader, in the matter
6   stylized as *Gotham Insurance Company v. Shasta Technologies LLC, et al., Case No.*
7   *CV12-02823* (hereinafter Interpleader I) to resolve the conflicting claims of the
8   Defendants in Interpleader to the Proceeds.

9      16.    On or about September 6, 2012, after commencing Interpleader I, the
10  parties reached a settlement of the dispute regarding the lawful and equitable
11  distribution of the Proceeds resulting in the dismissal of Interpleader I without
12  prejudice. A true and correct copy of the Settlement Agreement resolving Interpleader
13  I is attached hereto as Exhibit 3.

14     17.    In accordance with the Policy and the Settlement Agreement of
15  Interpleader I, Gotham has paid a total of $1,421,266.42 of the Proceeds to date. Of
16  the Proceeds paid to date, $489,111.00 was paid to Shasta on the one hand, and
17  $932,155.42 was paid to PharmaTech and Instacare on the other hand.

18     18.    Despite payment of Proceeds to date in accordance with the Settlement
19  Agreement of Interpleader I, Shasta has asserted new demands for payment of more
20  than its fair share of the Proceeds which conflicts with the rights of the remaining
21  Defendants, PharmaTech and Instacare pursuant to the terms and conditions of the
22  Settlement Agreement and the Policy.

23     19.    Gotham is unable to determine the validity of the conflicting demands
24  made by Defendants in Interpleader, and cannot determine to whom the remaining
25  Proceeds shall be paid.

26     20.    Plaintiff has incurred costs and reasonable attorneys fees in connection
27  with these proceedings any may incur additional costs and fees hereafter.

28  ///

---

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF

21.     Gotham  restates the allegations of Paragraphs 1 through 20 herein as though set forth in full in this cause of action.

19.     Gotham has duly investigated the Underlying Lawsuit.  As part of said investigation, Gotham has requested additional information regarding the contents of the Underlying Lawsuit.  Despite this additional information and Gotham's own investigation, Gotham cannot determine to whom the Proceeds are payable.

20.     An actual case or controversy has arisen between the parties hereto with respect to the Proceeds due, if any, under those portions of the Policy and the Settlement Agreement of Interpleader I.  Gotham is entitled to have this Honorable Court decide the obligations of Gotham and Defendants in Interpleader and each of them and to have the Court render its judgement of declaratory relief regarding to whom the amounts due under those provisions of the Policy and Settlement Agreement of Interpleader I are payable, if any.

### PRAYER FOR RELIEF

Wherefore, Gotham  prays for:

(a)     That Defendants in Interpleader and each of them be ordered to interplead and to litigate their claims to the Proceeds described in this Complaint;

(b)     That Gotham be discharged from liability as to each of the said defendants with respect to said money or properties;

(c)     That all Defendants in Interpleader and adverse claimants be restrained from instituting or further prosecuting any other action in any state court involving the same Proceeds pursuant to Section 386(f) of the California Code of Civil Procedure ;

(d)     That this Court enter its judgment for declaratory relief regarding the Proceeds due under the Policy, if any;

(e)     That Gotham be awarded costs, reasonable attorney's fees.

1   (h)  For such other and further relief as this Court deems to be just and

2 appropriate.

3

4 Dated:   August 15, 2013       **PLAGER SCHACK LLP**

5

6

7               By:

                 Mark H. Plager

8               Attorneys for Plaintiff in Interpleader

9               Gotham Insurance Company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

Endorsement No.: **IPI-DEF 843-13A**

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

This endorsement, effective **September 10, 2010**, at 12:01 a.m., Eastern Standard Time, forms a part of Policy No. **IP100705-D** issued to **Shasta Technologies, LLC** by Gotham Insurance Company.

This endorsement modifies insurance provided under the following:
Intellectual Property Infringement Defense Cost Reimbursement Insurance

---

### CHANGES TO POLICY TERMS – ADDITIONAL INSURED

- **Declarations Page, Item 6, Forms and Endorsements :**

  o **At the request of the Named Insured and after receiving underwriting approval, it is agreed that Endorsement No. IPI-DEF 843-02a is replaced with Endorsement No. IPI-DEF 843-02a entitled "ADDITIONAL INSURED(S) – Revision 1" (attached) as of the Effective Date listed above.**

  o **The executed No Claims/No Circumstances Declaration (attached) is also made a part of this policy.**

No additional premium was charged.

All other terms & conditions of the Policy remain the same.

---

(IPI-DEF 843-13A  endorseIP100705DAddtlInsRev1_Shasta_3582_2010.doc)
**Program Manager Copy**

**Gotham Insurance Company**
*919 Third Avenue, New York, NY 10022*

## INFRINGEMENT DEFENSE COST AND DAMAGES
## REIMBURSEMENT INSURANCE - ENDORSEMENT

*Endorsement No. IPI-DEF 843-02a*

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

| POLICY NO.: | POLICY CHANGES EFFECTIVE: | COMPANY |
|---|---|---|
| IPI00705-D | September 10, 2010 | Gotham Insurance Company |
| NAMED INSURED: | | AUTHORIZED REPRESENTATIVE |
| Shasta Technologies, LLC | | Sheila A. VanMeter |

| ADDITIONAL INSURED(S) – Revision 1 |
|---|

In consideration of the premium charged, it is understood and agreed that Item 1 of the Declarations includes the following Additional Insured(s):

      Broadtree, Inc.
      Pharma Tech Solutions, Inc.
      Instacare Corp.
      Pharmatech Direct Corp.

It is further understood and agreed that coverage under this Policy for the above-identified Additional Insured(s) shall be no greater than coverage would be if such Additional Insured(s) were the first Named Insured. It is further understood and agreed that coverage under this Policy is limited solely to the Insured MANUFACTURED PRODUCTS identified in Endorsement No. IPI-DEF-843-11.

**All other terms and conditions remain unchanged.**

Authorized Representative of Named Insured

(Additional Insureds 091707)

Program Manager Copy

## INTELLECTUAL PROPERTY INFRINGEMENT INSURANCE

### NO CLAIMS/CIRCUMSTANCES DECLARATION

### FOR ADDITIONAL INSURED(S)

For the purpose of adding Additional Insured(s) to the Intellectual Property Defense Cost Reimbursement Insurance Policy No. IPI-DEF 843-13 as of the effective date of May 20th, 2010, it is confirmed that in respect to the above form of insurance and with respect to the Insured MANUFACTURED PRODUCT(S) supplied to _Pharma Tech Solutions, Inc., Instacare Corp., and Pharmtech Direct Corp. by us, we have **not** received any notification from [either] Pharma Tech Solutions, Inc., Instacare Corp. or Pharmtech Direct Corp. that:

1.  A CIVIL PROCEEDING alleging INFRINGEMENT has been made against them; nor have we received notice of any circumstances that might give rise to a CIVIL PROCEEDING alleging INFRINGEMENT against them; and

2.  Similarly, we have not received notice of any legal action alleging INFRINGEMENT which has been commenced by them nor have we received notice of any circumstances that might give rise to legal action by them.

The above statements are being made with the knowledge that willful, false statements are punishable under state and federal laws.

Signed: _Cadillac Kuckerbecker_

Named Insured: _Shelter Technologies, llc_

Name: _Calvin A. Kuckerbocker_

Title: _Managing member & Ctd_

Date: _9/9/2010_

(noknowalossltr on behalf of addtl insured.doc ~ 01/31/2006)

Program Manager Copy

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

Endorsement No.: IPI-DEF 843–13

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

This endorsement, effective **May 20, 2010** at 12:01 a.m., Eastern Standard Time, forms a part of Policy No. **IP100705-D** issued to Shasta Technologies, LLC by Gotham Insurance Company.

This endorsement modifies insurance provided under the following:
Intellectual Property Infringement Defense Cost Reimbursement Insurance

<div style="border:1px solid">

### CORRECTIONS TO ENDORSEMENT(S)

- **Declarations Page, Item 6, Forms and Endorsements, Endorsement Nos. IPI-DEF 843-10B and IPI-DEF 843-19**, the Effective Date on said Endorsements is corrected to read as follows:

**May 20, 2010**

L

All other terms & conditions of the Policy remain the same.

</div>

(IPI-DEF 843-13  Shasta_endorseIP100705DEffDateCorr.doc)

Program Manager Copy

Gotham Insurance Company
919 Third Avenue, New York, NY 10022

# INTELLECTUAL PROPERTY INFRINGEMENT DEFENSE COST REIMBURSEMENT POLICY
# - DECLARATIONS -

## POLICY NO. IP100705-D

This insurance was procured and developed under the Oregon Surplus Lines laws. It is NOT covered by the provisions of ORS 734.510 to 734.710 relating to the Oregon Insurance Guaranty Association. If the insurer issuing this insurance becomes insolvent, the Oregon Insurance Guaranty Association has no obligation to pay claims under this evidence of insurance.

**NOTE:** Unless waived by Endorsement, no CLAIM to have a CIVIL PROCEEDING or any part thereof deemed COVERED LITIGATION will be accepted or considered if such CIVIL PROCEEDING is actually commenced or threatened on or before the Effective Date of this Policy as well as commenced or threatened within Ninety (90) days after the Effective Date of this Policy.

**Item 1.** Name and Address of Insured:

Shasta Technologies, LLC
6950 Hampton St. #100
Tigard, OR 97223

**Insured's Agent, Address:**
Alexander Morford & Woo, Inc.
3030 SW Moody Avenue, Ste. 200
Portland, OR 97201

S/L License No.: 807817

Insured is: [ ] Individual    [ ] Corporation    [ X ] Partnership/Other

**Item 2. Policy Period (Month, Day, Year):**

| From: | May 20, 2010 | To: | May 20, 2011 |
|---|---|---|---|
| | (12:01a.m. U.S. Eastern Standard Time) | | |

(Note: Policy renewability is not guaranteed. Re-application for continued coverage is required. The Company reserves the right to refuse continued coverage, except where required by law.)

**Item 3. Schedule of MANUFACTURED PRODUCTS Insured and Premium:**

| PRODUCT(S) DESCRIPTION: | AMOUNT CHARGED: |
|---|---|
| See Attached Schedule of MANUFACTURED PRODUCT(S). | $31,065.00 Premium |
| Coverage includes CIVIL PROCEEDINGS for infringement of: | $637.50 State Tax |
| Patents  Yes [X]  No [ ] | $500.00 Policy Process Fee |
| Trademarks  Yes [ ]  No [X] | $15.00 S/L Service Fee |
| Copyrights  Yes [ ]  No [X] | $310.00 S/L Tax Filing Fee |

TOTAL AMOUNT CHARGED: $32,527.50

**Item 4. Limits of Liability; Coinsurance; and Self Insured Retention:**

| LIMITS/COINSURANCE/SIR | AMOUNT | |
|---|---|---|
| LITIGATION EXPENSE/DAMAGES (if applicable) per CLAIM.................................. | $ | 2,000,000 |
| LITIGATION EXPENSE/DAMAGES (if applicable) Policy Aggregate............................ | $ | 2,000,000 |
| Copayment Percentage.................................................................... | | 10% |
| Self Insured Retention per CLAIM...................................................... | $ | 100,000 |

**Item 5. Other Coverages:**

| | | | |
|---|---|---|---|
| Reimbursement for DAMAGES included? | [X] Yes | [ ] No | |
| Multi-Peril (MP) Rider Coverage included? | [ ] Yes | [X] No | |
| TERRORISM COVERAGE Accepted? | [ ] Yes | [X] No | |

**Item 6. Forms and Endorsements attached at inception, if any:**

| Endorsements: | IPI-DEF 843-02a; IPI-DEF 843-10B; IPI-DEF 843-11; IPI-DEF 843-15; IPI-DEF 843-17; IPI-DEF 843-19 |
|---|---|
| Forms: | Declination of Terrorism Coverage |

Countersigned if required by law:

THIS DECLARATIONS PAGE WITH POLICY AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF,
COMPLETES THE ABOVE NUMBERED INFRINGEMENT DEFENSE COST REIMBURSEMENT POLICY.

(Policy 2005-100104)

Program Manager Copy

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

| | | |
|---|---|---|
| **Named Insured:** | Shasta Technologies, LLC | |
| **Policy No.:** | IP100705-D | |
| **Effective Date:** | May 20, 2010 | at 12:01a.m. Eastern Standard Time |

## Forms and Endorsements Schedule
### Intellectual Property Infringement Defense Cost Reimbursement

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of the above-identified Policy:

| Item Nbr.: | Endorsement #: | Edition: | Description of Endorsement: |
|---|---|---|---|
| 1 | IPI-DEF 843-02a | 9/17/2007 | Additional Insured(s) |
| 2 | IPI-DEF 843-10B | 10/1/2004 | Special SIR - Selected Coverages |
| 3 | IPI-DEF 843-11 | 4/25/2001 | Schedule of Manufactured Products |
| 4 | IPI-DEF 843-15 | 10/1/2007 | Renewal |
| 5 | IPI-DEF 843-17 | N/A | Service of Suit |
| 6 | IPI-DEF 843-19 | 5/15/2003 | Policy Terms |

*****************************************************************************

| | Form # | Edition | Description |
|---|---|---|---|
| 1 | N/A | N/A | Declination of Terrorism Coverage |

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

## INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE – ENDORSEMENT

*Endorsement No. IPI-DEF 843-02a.*

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

| POLICY NO.: | POLICY CHANGES EFFECTIVE: | COMPANY |
|---|---|---|
| IPI00705-D | May 20, 2010 | Gotham Insurance Company |
| NAMED INSURED: | | AUTHORIZED REPRESENTATIVE |
| Shasta Technologies, LLC | | Sheila A. VanMeter |

### ADDITIONAL INSURED(S)

In consideration of the premium charged, it is understood and agreed that Item 1 of the Declarations includes the following Additional Insured(s):

Broadtree, Inc.

It is further understood and agreed that coverage under this Policy for the above-identified Additional Insured(s) shall be no greater than coverage would be if such Additional Insured(s) were the first Named Insured. It is further understood and agreed that coverage under this Policy is limited solely to the Insured MANUFACTURED PRODUCTS identified in Endorsement No. IPI-DEF-843-11.

**All other terms and conditions remain unchanged.**

X _____
Authorized Representative of Named Insured

(Additional Insureds 091707)

Program Manager Copy

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

Endorsement No.: IPI-DEF 843-10B

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

This endorsement, effective May 5, 2010 at 12:01 a.m., Eastern Standard Time, forms a part of Policy No. IPI0070S-D issued to Shasta Technologies, LLC by Gotham Insurance Company. This endorsement modifies insurance provided under the following:

Infringement Defense Cost & Damages Reimbursement Insurance

### SPECIAL SELF-INSURED RETENTION ENDORSEMENT FOR SELECTED COVERAGES

If COVERED LITIGATION is brought against Named Insured for alleged INFRINGEMENT of US Patent Nos. 5,708,247 and/or 6,733,655 or any patents related to the above referenced intellectual property including but not limited to continuations, continuations-in-part, divisionals, reissues, etc. by the Insured MANUFACTURED PRODUCT(S), then irrespective of whether or not such COVERED LITIGATION includes any other intellectual property counts or other counts of any nature, then Item 4., Self-Insured Retention listed on the Declarations page is amended to read as follows:

Self Insured Retention per CLAIM................................................................ $250,000

Specifically, regardless of whether the COVERED LITIGATION asserts INFRINGEMENT of other patents, if the COVERED LITIGATION also asserts INFRINGEMENT of US Patent Nos. 5,708,247 and/or 6,733,655 or any patents related to the above referenced intellectual property including but not limited to continuations, continuations-in-part, divisionals, reissues, etc., , then the Self-Insured Retention shall be that shown above.

All other terms & conditions of the policy remain unchanged.

Authorized Representative of Insured

(IPI-DEF-843-10B 100104 – Special SIR Selected Coverages)

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

*Endorsement No. IPI-DEF-843-11*

## INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE – ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

| POLICY NO.: | POLICY CHANGES EFFECTIVE: | COMPANY |
|---|---|---|
| *IPI00705-D* | **May 20, 2010** | **Gotham Insurance Company** |
| NAMED INSURED: | | AUTHORIZED REPRESENTATIVE |
| *Shasta Technologies, LLC* | | Sheila A. VanMeter |

## SCHEDULE OF INSURED MANUFACTURED PRODUCTS

**Patent Coverage:**

The Insured MANUFACTURED PRODUCT is the reagent test strip described in Exhibit A. Coverage is only provided for CIVIL PROCEEDINGS alleging INFRINGEMENT of the specific numbered patents listed and cleared in the sixteen page November 30, 2007 letter and the nine page January 15, 2009 letter to Mr. Calvin Knickerbocker from Malcolm B. Wittenerg Esq.; except however no coverage whatsoever is provided for allegations of INFRINGEMENT of the following two patents: U.S. 5,141,868; and U.S. 5,120,420.

Coverage also is to include US Patents 7,112,265 and 7,250,105 discussed and cleared in the Infringement Opinion dated December 16, 2009, written by Malcom B. Wittenberg and addressed to Mr. Calvin Knickerbocker

For the specifically listed patents in the above-mentioned letters of Nov 30, 2007, January 15, 2009, and December 16, 2009, that are covered under this Policy, coverage does NOT extend to divisionals, continuations or continuations in part.

_____
Authorized Representative of Named Insured

(Schedule of MP 042501)

# Attachment A

Shasta Technologies LLC develops and intends to sell a reagent test strip for use in blood glucose meters marketed by Lifescan under One Touch Ultra® brand name. The test strip will be functionally compatible with: OneTouch Ultra Smart®, OneTouch Ultra 2®, OneTouch Ultra® and OneTouch Mini® meters.

The strip is based on electrochemical sensing principle. It comprises a non-conductive plastic substrate that has dimensions compatible with the OneTouch Ultra® meter's strip receptacle. Two working carbon electrodes and one reference carbon electrode were screen-printed onto the said substrate. The said electrodes were extended to the proximal end to provide electrical contacts with the OneTouch Ultra® meter. Further, an electrically conductive stripe, which was fabricated from conductive carbon paste, was positioned at the proximal end of the substrate for triggering the meter on when inserted into the OneTouch Ultra® meter's strip receptacle.

As the strip is being inserted into the meter's strip receptacle, the meter is turned on and is ready to accept glucose containing sample. A sample is applied through the capillary channel fashioned at the distal end of the strip, triggering a cascade reaction, producing an electrochemically active species; and hence it alters the conductive property of the sensing surface of the said electrodes. The deviation of conductivity is proportional to the glucose concentration in sample.



Electrodes on plastic
Electrode 1 is wider than
2 and 3 (counting from top)
Fig 1.

Thin insulator over
electrodes
all 3 electrodes have
same width, 1 is taller
than 2 & 3
Fig 2.

Thick spacer over
insulator (create wider
and taller channel)
Fig 3.

Enzyme reagent
deposited over
electrodes and space
between spacer and
insulator
(no enzyme
reagent between
the light green and
dark green layers)
Fig 4

Hydrophilic adhesive
cover to form capillary
channel
Fig 5

Clear layer
Heat activated adhesive
Thick spacer
Thin insulator
Electrode
Plastic substrate

Enzyme reagent

Capillary channel

Fig 6. side view

**Gotham Insurance Company**
919 Third Avenue, New York, NY 10022

. Endorsement No.: IPI-DEF 843-15

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

This endorsement, effective May 20, 2010 at 12:01 a.m., Eastern Standard Time, forms a part of Policy No. IPI00705-D issued to Shasta Technologies, LLC by Gotham Insurance Company.

This endorsement modifies insurance provided under the following:
Infringement Defense Cost and Damages Reimbursement Insurance

### INSURANCE POLICY RENEWAL

In the event the Policy to which this Endorsement is attached is a renewal of a previous policy, then the following conditions shall apply:

1. COVERED LITIGATION which is proceeding under the previous Policy is excluded from coverage under this Policy.

2. CLAIMS tendered to the Company under the previous Policy are excluded from coverage under this Policy unless Company has indicated otherwise in writing specifically identifying the possible plaintiff(s) to which the carried forward CLAIM relates.

3. All rights to make a CLAIM under the previous Policy shall terminate as of the termination date of said previous Policy and the Company will not accept any such CLAIM submitted to it thereafter.

4. The Company will accept and consider CLAIMS made under this Renewal Policy on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced at any time during this Renewal POLICY PERIOD.

5. If in the event there is no further renewal of this renewal Policy, the Company will accept CLAIM(S) for a period of ninety (90) days after the expiration of this renewal Policy provided that there has been no cancellation or termination of this Policy by either Named Insured or the Company but rather this Policy has expired; and, provided the Named Insured was not issued by the Company a Waiver Endorsement or a modified Policy at the inception of coverage that eliminated or modified the 90-day waiting period as provided in the 2nd paragraph of the introductory language preceding Article I, Insuring Agreement, and in Article IV, Conditions, Section A.2. (or modifications or replacements thereof) of the Policy.

X _____
Authorized Representative of Insured

(DefRenew 10/1/07)

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

**ENDORSEMENT # IPI-DEF 843-17**

| | |
|---|---|
| **Named Insured:** | Shasta Technologies, LLC |
| **Policy No.:** | IP100705-D |
| **Effective Date:** | May 20, 2010 |

at 12:01a.m. Eastern Standard Time

## SERVICE OF SUIT

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon:

Senior Claims Officer of GOTHAM Insurance Company, 919 THIRD AVENUE, 10TH FLOOR, NEW YORK, NY 10022

or designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IPI-DEF 843-17                Program Manager Copy

Endorsement No. IPI-DEF 843-19

**_Gotham Insurance Company_**
_919 Third Avenue, New York, NY 10022_

## _INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE - ENDORSEMENT_

_THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY._

| POLICY NO.: | POLICY CHANGES EFFECTIVE: | COMPANY |
|---|---|---|
| IPI00705-D | May 5, 2010 | Gotham Insurance Company |
| NAMED INSURED: | | AUTHORIZED REPRESENTATIVE |
| _Shasta Technologies, LLC_ | | Sheila A. VanMeter |

### Policy Terms Endorsement

In consideration of the premium paid, it is understood and agreed that the Policy is amended as set forth below:

Page 16, paragraph G, of the policy is removed and replaced with the following language:

**Mediation and Choice of Law**

1. This Policy shall be interpreted according to the law of the state and federal judicial district of New York notwithstanding any rules for conflict of laws of that jurisdiction.

2. Upon mutual agreement any dispute between the Named Insured and the Company arising out of this Policy shall be promptly referred to mediation for settlement. Such mediation shall be held in New York unless waived by both parties.

3. If mediation is not successful, no litigation against the Company under this policy upon any CLAIM or any other action relating to any CLAIM shall be sustainable unless all the requirements of this Policy shall have been complied with, and unless commenced within twelve months after the Company's authorization or denial of such CLAIM or part thereof.

(PolicyTerms 051503)

Endorsement No. IPI-DEF 843-19

4.  Matters referred to mediation under this policy shall be heard by a single Mediator which shall be selected by the Company and the Named Insured from a mediation service mutually agreed upon by the parties.

5.  For any dispute arising out of Section IV, Part A of this Policy, the Mediator shall be admitted to practice before the US Patent & Trademark Office. The proceedings shall be informal.

6.  The cost of Mediation shall be shared equally between the Named Insured and the Company including filing fees, costs and Mediator's charges.

X _____
Authorized Representative of Named Insured

(PolicyTerms 051503)



**Intellectual Property**
Insurance Services Corporation

| POLICY DISCLOSURE |
| --- |

**OFFER OF TERRORISM
INSURANCE COVERAGE**

9720 Bunsen Parkway
Louisville, Kentucky 40299
502 / 491-1144
FAX 502 / 491-4888
www.infringeins.com

RE: Intellectual Property Infringement Abatement Insurance
Applies to Acceptance/Quote Form

You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Act of 2007, effective December 26, 2007, you have a right to purchase insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act.* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States -- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES AT THE RATE OF 85% OF COVERED TERRORISM LOSSES EXCEEDING THE INSURER'S DEDUCTIBLE, WHICH IS 20% OF ITS DIRECT EARNED PREMIUMS IN THE PREVIOUS CALENDAR YEAR. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

PLEASE NOTE: THE ANNUAL LIABILITY OF THE UNITED STATES UNDER THE ACT IS CAPPED AT $100,000,000,000, AND ANY INSURER WHICH HAS MET ITS STATUTORY DEDUCTIBLE SHALL NOT BE LIABLE FOR ANY PORTION OF LOSSES OVER THAT AMOUNT.

------------------------------------------------------------------------------------

*SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE*
UNDER FEDERAL LAW, YOU HAVE THIRTY (30) DAYS TO CONSIDER THIS OFFER OF COVERAGE FOR TERRORIST ACTS AND SUBMIT THE PREMIUM REQUIRED. IF YOU PURCHASE THE INTELLECTUAL PROPERTY INFRINGEMENT ABATEMENT COVERAGE AND WE DO NOT RECEIVE THE QUOTED TERRORISM COVERAGE PREMIUM BY MAY 14, 2010, YOU WILL NOT BE COVERED FOR LOSSES ARISING FROM TERRORIST ACTS.

**CHECK YOUR ELECTION IN THE APPROPRIATE BOX BELOW:**

|   | I hereby elect to purchase Terrorism coverage for a premium of $3,166.83 (which includes taxes) and hereby enclose this amount along with this executed form. |
| --- | --- |
| ✓ | I hereby elect NOT to have the Terrorism coverage. I understand that I will have no coverage for losses arising from acts of terrorism. |

Shasta Technologies, LLC

Policyholder/Applicant's Signature

Printed Name

4-27-10
Date

TerrorismQuote_Abatement2008

**APPLICATION FOR
INFRINGEMENT DEFENSE COST REIMBURSEMENT
INSURANCE POLICY (DAMAGES OPTIONAL)**

The Infringement Defense Cost Reimbursement Insurance Policy reimburses you for your litigation expenses should you be sued by another for infringement of their patent, trademark or copyright (depending upon the coverage taken). The policy responds to charges of infringement on your Manufactured Products, Marks and/or Works (as described below) which are listed and/or described on the Schedule of Manufactured Products, Marks and/or Works issued with the Declarations Page of your Policy.

Manufactured Product(s), Marks and/or Works (hereinafter referred to throughout this application form as "MPMW") shall mean any Work of Authorship, word, slogan, design, process, machine, article of manufacture or composition owned, licensed or controlled by applicant. A Work of Authorship shall include (1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; (8) architectural works; and (9) computer programs.

In completing this application, applicant understands that the information provided in the answers to the questions is not privileged. This document and/or its contents may be required to be disclosed during litigation, or as a result of statutory or regulatory action.

The Company agrees to use all information provided hereon and herewith solely for evaluating the feasibility of issuing an insurance policy on the MPMW. **NOTE: PLEASE ANSWER ALL QUESTIONS IN DETAIL AND ATTACH ADDITIONAL SHEETS AS NECESSARY.**

What specific coverage are you applying for? (check at least one)
Coverage for:

| | |
|---|---|
| Charges of Patent Infringement? | ☑ |
| Charges of Trademark Infringement? | ☐ |
| Charges of Copyright Infringement? | ☐ |

1. Applicant Name: Sheets Technologies, LLC & Broadtree, Inc.    Telephone No : 707-481-3294

   Street: 6950 Hampton St    7690 SW Hampton Rd    #e 100    Fax No.: 707-737-0308

   City, State, Zip: Tigard, OR 97223    Website Address: NA

   Please state below the name of the person we may contact to discuss this application.

   Contact Name: Calvin Knickerbocker, Sr.    Contact Phone No.: 707-481-3294

   Contact Fax No.: 707-737-0308

   Contact Address (if different from above):

   Street: 3257 Highway 128    E-Mail: calisnk@gmail.com

   City, State, Zip: Calistoga, CA

©Intellectual Property Insurance Services Corporation (1997 – 2007)
9720 Bunsen Parkway, Louisville, KY 40299
Phone 502.491.1144; Fax 502.491.4866; Email: info@IPISC.com

(Defapp 12/30/07)
Page -3-

2a.   Company Type (Check one):   Corporation ☐   Individual ☐   Partnership ☐   Other ☑

2b.   Date of incorporation (formation):   October 2007

2c.   Continuously operating since   October 2007

2d.   Please describe the nature of your business:   Generic Glucose Test Strips

3a.   Please indicate your future Requested Effective Date should coverage be offered:   May 2009   2 8 ( 0

3b.   Please list all additional insureds for which coverage is sought and their relationship to the MPMW.
      Broadline, Inc. Distributor

3c.   Are you now planning, or in the last five (5) years have you or anyone representing you, your Company or
      any related company been involved in, any merger, acquisition, joint venture or purchase of business
      assets, including communications, discussions or negotiations which did not lead to a transaction?
      (Check one)   Yes ☐   No ☑
      If "yes", please provide details:   Broadline, Inc. Distributor, Distribution contract, $2,000,000

4a.   Requested Policy Limit (Per Claim/Aggregate).   Aggregate Limits available are the same as per Claim
      Limits or higher.   Please indicate your interest.
      Per Claim Limits:   $2,000,000     Aggregate Limits:   $2,000,000

4b.   Have you had IP Defense insurance before?
      (Check one)   Yes ☐   No ☑
      If "yes", please provide name of carrier, limits, premium, and expiration date of Policy.
      _____

5.    Indicate if you or your Company have been involved in any of the following:

      |   |   | (Check one for each) |
      |---|---|---|
      | a. | International Trade Commission actions? | Yes ☐   No ☑ |
      | b. | Declaratory judgment actions? | Yes ☐   No ☑ |
      | c. | PATENTS, TRADEMARK OR COPYRIGHT related CIVIL PROCEEDINGS or settlement? | Yes ☐   No ☑ |
      | d. | Other post grant procedures (oppositions, reissue, re-exams, etc.)? | Yes ☐   No ☑ |
      | e. | Other litigation of any kind filed by or against you in the past 3 years, including state actions? | Yes ☐   No ☑ |

      If your answer to any of the above is "yes," briefly give details and outcome below or on a separate sheet.

6.    What SIC codes apply to the MPMW?   2835

7. Are you currently in business selling the MPMW?

   (Check one)   Yes ☐   No ☑

8a. What ownership/contractual rights or relationship do you have to the MPMW?

   Please check:   Owner ☑
                   Licensee ☐
                   Assignee ☐
                   Distributor ☐
                   Retailer ☐
                   User ☐
                   Other ☐   Please explain. _____

8b. Are you required by contract to carry IP Defense Insurance?   (Check one)   Yes ☑   No ☐
    If "yes", please provide details of type of contract, with whom, and limits required.
    Broadtree, Inc. Distributor, Distribution contract, $2,000,000

9. Is the MPMW to be insured manufactured by you, or for you, or by another under license from you?
   (Check one for each)
   By You:   Yes ☐ No ☑   For You:   Yes ☑ No ☐   Under license from you:   Yes ☐ No ☑

10. Have you previously had or are you now engaged in any disputes with any of your licensors or product
    suppliers (manufacturers)?
    (Check one)   Yes ☐   No ☑   If "yes", please give details. _____

11a. How many end uses are there for the MPMW to be insured?   1 _____

11b. Do the MPMW:                                                  (Check one for each)
    A.   Involve the use of relatively scarce raw materials?       Yes ☐    No ☑
    B.   Require special manufacturing equipment?                  Yes ☐    No ☑
    C.   Involve the use of extraordinary or scarce labor skills?  Yes ☐    No ☑
    D.   Have any special power, fuel, energy, water or
         Environmental requirement?                                Yes ☐    No ☑
    E.   Generate toxic wastes or involve hazardous conditions?    Yes ☐    No ☑

12. Are any confidential trade secrets or know-how used in any process/invention/device or MPMW to be
    insured?   (Check one)   Yes ☑   No ☐

13. Would you consider taking a license on the MPMW to be insured if you were likely to be found to infringe
    on another's intellectual property rights? (Check one)   Yes ☑   No ☐

©Intellectual Property Insurance Services Corporation (1997 – 2007)
9720 Bunsen Parkway, Louisville, KY 40299
Phone 502.491.1144; Fax 502.491.4838; Email: info@IPISC.com
(Defapp 12/30/07)
Page -5-

14a.   Are there presently in the market similar or competing alternatives to the MPMW to be insured?

(Check one)   Yes ☑   No ☐

14b.   If "yes" to 14a, are there patent, trademark or copyright numbers, symbols, or pending notices on such devices?   (Check one)   Yes ☑   No ☐

14c.   If "yes" to 14b, please give the numbers
5,708,247 / 5,651,838 / 6,241,862 / 6,284,125 / 5,413,410 / 5,733,655   ~~&~~ *of* 7,112,265 / 7,250,105

15.    Estimate the number of companies that directly compete with your MPMW in the marketplace.

None ☐   Less than 5 ☑   5 – 10 ☐   10 – 20 ☐   More than 20 ☐

16a.   Indicate the names of your top five (5) closest competitors and their geographic market.

| Competitor Name: | US: | Foreign: | Are they likely to hold Patents, Trademarks or Copyrights on their Products? | |
|---|---|---|---|---|
| 1. LifeScan, Inc. | ☑ | ☑ | Yes ☑ | No ☐ |
| 2. _____ | ☐ | ☐ | Yes ☐ | No ☐ |
| 3. _____ | ☐ | ☐ | Yes ☐ | No ☐ |
| 4. _____ | ☐ | ☐ | Yes ☐ | No ☐ |
| 5. _____ | ☐ | ☐ | Yes ☐ | No ☐ |
| Applicant's Company: | ☐ | ☐ | Yes ☐ | No ☐ |

16b.   Please categorize your company and the five (5) top competitors with regard to Total Sales in the following categories:

| | Estimated Total Annual Sales |
|---|---|
| 1. LifeScan, Inc. | > $500MM |
| 2. _____ | |
| 3. _____ | |
| 4. _____ | |
| 5. _____ | |
| Applicant's Company: | |

16c.   Your Sales:

| | | U.S. Sales | Foreign Sales | Total Sales |
|---|---|---|---|---|
| a. | Previous Year | $ NA | $ NA | $ NA |
| b. | Current Year | $ _____ | $ _____ | $ _____ |
| c. | Next Year | $ _____ | $ _____ | $ _____ |

16d.   Please attach/submit a current financial statement, audited if available, and/or Form 10K, if publicly traded.

17.   What is the average market life of the MPMW?

Less than one year ☐
1 – 3 years ☑
3 – 5 years ☐
5 – 10 years ☐

18.   Estimate the total size of the U.S. market for the MPMW to be insured.

Less than $1,000,000 ☐
$1MM – $10MM ☑
$10MM – $100MM ☐
$100MM – $500MM ☐

19a.   Report the number of years the product or process to be insured has been used or sold by you and your competitors in the following categories:

| | No. of Years |
|---|---|
| 1. LifeScan, Inc. | > than 20 years |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| Applicant's Company: | 1st time ever offered |

19b.   Who are the principal customers served by Your business: People with Diabetes

Does your business involve "aftermarket supply" or re-seller market (e.g., automotive replacement parts, printer ink replacement, long distance telephone re-seller).

(Check one)   Yes ☐   No ☑   please give details.

20.   Estimate the average % Net Profit (before interest and taxes) experienced by your company.

| For Insured MPMW only: (Choose one) | | For Company as a whole: (Choose one) | |
|---|---|---|---|
| Less than 5% | ☐ | Less than 5% | ☐ |
| 5% - 10% | ☐ | 5% - 10% | ☐ |
| 10% - 20% | ☐ | 10% - 20% | ☐ |
| 20% - 40% | ☐ | 20% - 40% | ☐ |
| More than 40% | ☑ | More than 40% | ☑ |

21a.   Have you ever been a Defendant in a patent, trademark or copyright infringement lawsuit?
       (Check one)      Yes ☐      No ☒ If "yes", please provide details.

21b.   Do you have an intellectual property attorney on staff with full time responsibilities for filing PATENTS,
       TRADEMARKS, or COPYRIGHTS, giving advice about potential infringements and other intellectual
       property legal advice?
       (Check one)      Yes ☐      No ☑      If "yes", please provide the name of the attorney(s).

21c.   Do you have an outside, independent law firm that regularly provides you intellectual property legal advice?
       (Check one)      Yes ☑      No ☐ If "yes", please provide the name of the law firm its address and the
       attorney who is your contact.   Dergosits & Noah, San Francisco, Malcolm Whittenberg

22.    Do you use confidentiality/non-compete agreements in all your IP negotiations?
       (Check one)      Yes ☑      No ☐

23.    What are your average IP related defense costs for the last three years?
       Year: NA              Costs: $ NA
       Year: ᴺ⁰ ™            Costs: $ ᴶ℞
       Year: ᴳ℞              Costs: $ ᴺ℞

24.    Are you aware of any facts or circumstances not otherwise disclosed on this application which could
       reasonably increase the likelihood that another party might accuse you of infringing upon its intellectual
       property?      Yes ☐      No ☑
       If yes, please provide details

The questions on the following pages pertain to the specific IP defense coverages you wish to purchase. Please answer only those pages that apply (e.g. if you are only insuring against patent infringement charges, then answer ALL of the questions which relate to "Patents" and skip the ones which relate to Trademarks and Copyrights).

QUESTIONS FOR COVERAGE AGAINST CHARGES OF "patent" INFRINGEMENT

NOTE: As part of this application, we request a copy of any infringement search and opinion(s) (freedom to manufacture opinion) from outside counsel. Include references cited, if any. If you need a sample format for this search & opinion, please notify us for a copy of the format. We may also be able to assist you in obtaining this search & opinion, or an alternative insurability report which will satisfy our underwriting requirements.

P1. Product/Processes for which insurance is being requested.

Product/Process Name (Describe below)                    Date of First Commercial Sales:
Generic Glucose Test Strips                                        August, 2006   3 6 1 5

Please attach any literature you may have describing your product/process.
**It is important that we have a clear understanding of the MPMW you wish to insure.**

P2. Do you hold PATENTS, PATENT applications, or anticipate filing a PATENT application(s) on the product/process to be insured?

(Check one)   Yes ☐   No ☑ If "yes", please provide copies and a brief explanation of the inventive features covered.

P3. Give the numbers of your ten (10) most important PATENTS.

1. NA               5. _____        9. _____
2. _____           6. _____        10. _____
3. _____           7. _____
4. _____           8. _____

P4. Are the PATENTS listed in P3 licensed to anyone?

(Check one)   Yes ☐   No ☑

If "yes", please identify Licensee and type of license (i.e. exclusive, non-exclusive, sole, territorial, products/processes, payments, royalties, duty to enforce, defend, etc.)

_____

P5. Are you obligated to defend any third party for patent infringement vis-à-vis the product being insured?

(Check one)   Yes ☑   No ☐

If "yes", please identify.
Broadline, Inc.    Distributor

P6. Are any products/processes (MPMW) to be insured licensed by you to others (i.e. you are the licensor)?

(Check one)   Yes ☐   No ☑ If "yes", please identify. _____

P7.   Are any products/processes (MPMW) to be insured licensed by you from others (i.e. you are the licensee)?

(Check one)   Yes ☐   No ☑   If "yes", please identify.

P8.   In designing your product, did you copy or design around any third party patents?

(Check one)

Copied:   Yes ☐   No ☑   Designed Around:   Yes ☑   No ☐

If yes to either, please identify patent number(s): All applicable patent numbers to insure none Infringement

P9.   Specify in detail your knowledge of:

A.   Existing infringements of the product/process to be insured either in the U.S. or in foreign countries of patents of others.  For example, are you currently using any patented features of another without their authorization?   (Check one)   Yes ☐   No ☑

If "yes", please provide details, including name of other party and date you intend to begin this use:

B.   Suspected or anticipated infringements of other's patent rights.  For example, do you anticipate or are you about to use the patented features of another without their authorization?

(Check one)   Yes ☐   No ☑

If "yes", please provide details, including name of other party and date you intend to begin this use:

C.   Activities outside the U.S. which if conducted in the U.S. would be an infringement.  For example, are you using any patented features of another overseas without their authorization?

(Check one)   Yes ☐   No ☑

If "yes", please provide details, including name of other party and date you first began this use;

P10.   Have you received any warning letters or notices of infringement from anyone concerning the product to be insured?

(Check one)   Yes ☐   No ☑   If "yes", please attach copies.

P11.   Indicate if you have been offered and you have refused a license covering any of the products to be insured.

(Check one)   Yes ☐   No ☑

If "yes", please provide details, including name(s):

P12a. Are there any circumstances of which the Applicant is aware (including existing or threatened lawsuits) that could reasonably be expected to give rise to IP litigation against the Applicant?

(Check one)   Yes ☐   No ☑   If "yes", please provide details.

P12b. Is this policy being sought to cover any MPMW loss, costs or expenses vis-à-vis filing an abbreviated or new drug application (ANDA or NDA) with the FDA under the Hatch Waxman Act.

(Check one)   Yes ☐   No ☑   If "yes", please provide details.

P12c. Has the MPMW ever been involved in any Hatch Waxman proceedings?

(Check one)   Yes ☐   No ☑   If "yes", please provide details.

P13.   Indicate the number of patents held/controlled/licensed by you.  0

**QUESTIONS FOR COVERAGE AGAINST CHARGES OF "trademark" INFRINGEMENT**

NOTE: As part of this application, we request a copy of any infringement search and opinion(s) (freedom to use opinion) from outside counsel. Include references cited, if any. If you need a sample format for this search & opinion, please notify us for a copy of the format. We may also be able to assist you in obtaining this search & opinion or an alternative insurability report which will satisfy our underwriting requirements.

T1.   Identify below or attach a list of the marks, symbols, designations or TRADE DRESS you own, control or license (MPMW) for which you would like coverage.

T/M registration number (if applicable) or identifying features of symbol, mark, designation or trade dress (MPMW): _____

Registration Date (if applicable): _____    (Please also attach any literature describing your MPMW to be insured. It is important that we have a clear understanding of the MPMW you wish to insure.)

Date sales began: _____

Country: _____

T2.   Indicate the number of TRADEMARKS held/controlled/licensed by you: _____

T3.   Do you have an obligation to defend a third party vis-à-vis the marks, symbols, designations or TRADE DRESS (MPMW) to be insured?
(Check one)   Yes ☐   No ☐
If "yes", please identify party(ies). _____

T4.   Are any marks, symbols, designations or TRADE DRESS (MPMW) to be insured licensed by you to others (i.e. you are the licensor)?
(Check one)   Yes ☐   No ☐
If "yes", please identify party(ies). _____

T5.   Are any marks, symbols, designations or TRADE DRESS (MPMW) to be insured licensed by you from others (i.e. you are the licensee)?
(Check one)   Yes ☐   No ☐ If "yes", please identify party(ies).

T6.   Has anyone else registered the same or a similar mark, symbol, designation or TRADE DRESS (MPMW) in a different class?
(Check one)   Yes ☐   No ☐ If "yes", list classes: _____
                                    If "yes", list owners: _____

T7.   Is any part of the MPMW to which the marks, symbols, designations or TRADE DRESS to be insured
      are applied covered by COPYRIGHT(s) or PATENT(s)?
                                    (Check one)                              (Check one)
            COPYRIGHT(s)?   Yes ☐   No ☐          PATENT(s)    Yes ☐  No ☐

T8.   Does anyone else have a right in the marks, symbols, designations or TRADE DRESS (MPMW) to be
      insured?
      (Check one)     Yes ☐       No ☐       If "yes", please identify party(ies).

T9.   Have you notified anyone that the marks, symbols, designations or TRADE DRESS (MPMW) for which
      insurance is sought are infringed by them?
      (Check one)     Yes ☐      No ☐       If "yes", to whom?_____

T10.  Specify in detail your knowledge of:
      A.   Existing infringements of the MPMW to be insured either in the U.S. or in foreign countries of
           trademarks of others.  For example, are you currently using any trademark of another without their
           authorization?
           (Check one)     Yes ☐      No ☐
           If "yes", please provide details, including name of other party and date you first began this use:
           _____

      B.   Suspected or anticipated infringements of other's trademark rights.   For example, do you anticipate
           or are you about to use a trademark of another without their authorization?
           (Check one)·     Yes ☐       No ☐
           If "yes", please provide details, including name of other party and date you intend to begin this use:
           _____

      C.   Activities outside the U.S. which if conducted in the U.S. would be a trademark infringement.  For
           example, are you using any trademark of another overseas without their authorization?
           (Check one)     Yes ☐       No ☐
           If "yes", please provide details, including name of other party and date you first began this use:
           _____

T11.  Have you received any warning letters or notices of infringement from anyone that you might be infringing
      their trademark?
      (Check one)          Yes ☐       No ☐       If "yes", please attach/submit copies.

Intellectual Property Insurance Services Corporation (1997 – 2007)
9720 Bunsen Parkway, Louisville, KY  40299
Phone 502.491.1144; Fax 502.491.4836; Email: info@IPISC.com
(DefApp 12/30/07)
Page -14-

T12.   Indicate if you have received offers for license under any trademark of another which you have refused or
       denied.   (Check one)        Yes ☐        No ☐
       If "yes", please provide details: _____

T13.   Are any of your TRADEMARKS famous?
       (Check one)    Yes ☐        No ☐
       If "yes", please list the trademarks and describe their fame.

T14.   Are you aware of any famous trademarks that are similar to any of your TRADEMARKS, even if they are
       in a different area of commerce?
       (Check one)    Yes ☐        No ☐
       If "yes", please list and describe those trademarks and their relationship to your area of commerce.

## QUESTIONS FOR COVERAGE AGAINST CHARGES OF "copyright" INFRINGEMENT

C1.  Identify below the Works of Authorship you own, control or license (MPMW) for which you would like coverage.

COPYRIGHT Registration Number (if applicable) or attach a list or identifying features of Works of Authorship (MPMW): _____

Registration Date (if applicable): _____

Date sales began: _____

Country: _____

(Please also attach any literature describing your MPMW to be insured. It is important that we have a clear understanding of the MPMW you wish to insure.)

C2.  Indicate the number of COPYRIGHTS held/controlled/licensed by you: _____

C3.  Do you have an obligation to defend a third party vis-à-vis the Works of Authorship (MPMW) to be insured?

(Check one)    Yes ☐    No ☐

C4.  Are any Works of Authorship (MPMW) to be insured licensed by you to others (i.e. you are the licensor)?

(Check one)    Yes ☐    No ☐    If "yes", please identify party(ies).
_____

C5.  Are any Works of Authorship (MPMW) to be insured licensed by you from others (i.e. you are the licensee)?

(Check one)    Yes ☐    No ☐

If "yes", please provide copies of licensee(s) or written permission(s).

C6.  Has anyone else registered or asserted copyright rights in the same or similar Works of Authorship (MPMW) in a different class?

(Check one)    Yes ☐    No ☐    If "yes", list classes: _____

If "yes", list owners: _____

C7.  Is any part of the MPMW to which the Works of Authorship to be insured covered by TRADEMARK(s) or PATENTS(s)?

(Check one)    (Check one)

TRADEMARK(s)?    Yes ☐  No ☐        PATENT(s)   Yes ☐  No ☐

C8.    Does anyone else have a right in the Works of Authorship (MPMW) to be insured?

(Check one)    Yes ☐    No ☐    If "yes", please identify party(ies).

_____

C9.    Have you notified anyone that the Works of Authorship (MPMW) for which insurance is sought are infringed by them?

(Check one)    Yes ☐    No ☐    If "yes", to whom? _____

C10.    With respect to the Works of Authorship (MPMW) to be insured, specify in detail your knowledge of:

A.    Existing infringements of the MPMW to be insured either in the U.S. or in foreign countries of copyrights of others. For example, are you currently using any Works of Authorship of another without their authorization?

(Check one)    Yes ☐    No ☐    If "yes", please provide details, including name of other party and date you first began this use:

_____

B.    Possible infringement. For example, are you about to use Works of Authorship similar to those of another without their authorization.

(Check one)    Yes ☐    No ☐ If "yes", please provide details, including name of other party and date you intend to begin this use:

_____

C.    Activities outside the U.S. which if conducted in the U.S. would be a copyright infringement. For example, are you using any Works of Authorship of another overseas without their authorization?

(Check one)    Yes ☐    No ☐

If "yes", please provide details, including name of other party and date you first began this use:

_____

C11.    Have you received any warning letters or notices of infringement from anyone that you might be infringing their copyright?

(Check one)    Yes ☐    No ☐    If "yes", please attach/submit copies.

©Intellectual Property Insurance Services Corporation (1997 – 2007)
9720 Bunson Parkway, Louisville, KY 40299
Phone 502.491.1144; Fax 502.491.4855; Email: info@IPISC.com

C12.   Indicate if you have received offers for license under any copyright of another which you have refused or
denied.  (Check one)        Yes ☐        No ☐
If "yes", please provide details:

***

**CERTIFICATION TO INSURANCE APPLICATION FOR COPYRIGHT COVERAGE**
I hereby certify under penalty of law, including 18 U.S.C. Section 1001, that:  The work(s) of authorship
which by this Application I apply to insure are my original, independent creation, or are controlled or
licensed by me from the original author.  The work(s) of authorship to be insured have not been copied in
whole or in part from another existing work or copyrighted material of another without written permission.
If I am not the original author, I have used and will continue to use the work(s) of authorship only in a
manner specifically granted in the license(s) or written permission(s), and copies of such license(s) or
written permission(s) authorizing my use are attached hereto.

Applicant's Signature  Shasta Technologies, LLC & Broadree, Inc.          Date:   12-2-2008

Printed
Name/Company/Title:  Shasta Technologies LLC & Broadree, Inc.  /  Shasta Technologies, LLC          /  CEO and Managing Member

***

Contellectual Property Insurance Services Corporation (1997 – 2007)
9720 Bunsen Parkway, Louisville, KY 40299
Phone 502.491.1144; Fax 502.491.4855; Email: info@IPISC.com

(Catapp 12/30/07)
Page -18-

In connection with this application for Infringement Defense Cost Reimbursement Insurance, applicant and/or his authorized representative hereby represents and warrants as follows:

1. The Manufactured Products, Marks and Works (hereinafter referred to as "MPMW") identified in Questions P1 or T1 or C1 (whichever is applicable) for which this application for insurance is made have either been: manufactured or procured and commercially on sale or in use at least as early as the date specified in Question P1; or, if included in Question T1, has been legally procured and Applicant has no knowledge of any facts or circumstances adversely effecting its validity; or, if included in Question C1, has been authored or produced by or for Applicant and have not been copied from, in whole or in part, or derived from, in whole or in part, any other work.

2. Applicant understands that the statements and answers furnished to the Company are representations of Applicant and are also made on behalf of all persons and entities in or related to Applicant's company and the person signing this application represents that he has the authority to make these representations and sign this application.

3. Applicant has been provided with a specimen copy (or, if not, will request a copy) of the Infringement Defense Costs Reimbursement Insurance Policy and understands that the policy only reimburses LITIGATION EXPENSES and DAMAGES (if indicated on the Declarations page of the Policy purchased) for COVERED LITIGATION brought during the POLICY PERIOD, has read and understands the terms, conditions and exclusions of said Policy, and has had the opportunity to discuss the coverage with a professional intellectual property advisor.

4. The answers to the questions in this Application are true, accurate, and complete to the best of the Applicant's knowledge and belief. Applicant acknowledges and understands that any Intellectual Property issued is issued in reliance on the information and statements contained herein, and that any material misrepresentation or willful omission or inaccurate statement may result in voiding of coverage or recision of the Policy. After the exercise of due diligence, the Applicant is not aware of any current patents, trademarks or copyrights (whichever is applicable) which are infringed, nor has he any awareness of any suspected or anticipated infringements of any patent(s), trademark(s) or copyright(s) (whichever is applicable), except as noted above.

5. Applicant understands that while the insurer, its agents, servants and employees will endeavor to keep this information confidential, this Application is not a privileged document and its contents may be required to be disclosed during litigation, or as a result of statutory or regulatory action.

6. The Applicant understands that the Intellectual Property Infringement Defense Cost Reimbursement Insurance Policy only applies to those CLAIMS that are first reported to the Company during the POLICY PERIOD relating to COVERED LITIGATION brought during the POLICY PERIOD and with respect to which the Named Insured's first knowledge that he may be committing an INFRINGING act arises during the POLICY PERIOD. Applicant further understands that there is a ninety (90) day waiting period from the Effective Date of the Policy within which, if a CIVIL PROCEEDING(S) (as defined in the Policy) is initiated against Named Insured, it will not be covered, and that should there be no renewal of this Policy, Applicant will have ninety (90) days after the expiration date of the POLICY PERIOD in which if a CIVIL PROCEEDING(S) is initiated against Named Insured a CLAIM(S) thereon will be considered.

**WARNING**

THE APPLICANT REPRESENTS THAT THE ABOVE STATEMENTS AND FACTS ARE TRUE AND THAT NO MATERIAL FACTS HAVE BEEN SUPPRESSED OR MISSTATED.

**NOTICE TO ARKANSAS APPLICANTS:** Any person who knowingly presets a false or fraudulent claim for payment for a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**NOTICE TO D.C. APPLICANTS:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**NOTICE TO FLORIDA APPLICANTS:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**NOTICE TO KENTUCKY APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**NOTICE TO LOUISIANA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MICHIGAN APPLICANTS:** A person who submits an application or files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**NOTICE TO MINNESOTA APPLICANTS:** A person who submits an application or files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**NOTICE TO NEW JERSEY APPLICANTS:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**NOTICE TO NEW MEXICO APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**NOTICE TO NEW YORK APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, and shall be also subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**NOTICE TO OHIO APPLICANTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO OKLAHOMA APPLICANTS:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO PENNSYLVANIA APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**NOTICE TO ALL OTHER STATE APPLICANTS:** Any person who knowingly includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

I am aware that wilfull false statements are punishable by various state and federal laws including but not limited to 18 U.SC. Section 1001.

**Applicant's Signature** _____   Date: 12-8-2009

**Applicant's Name & Title**   Calvin Keltendarch, CEO & Managing Member

4-7-2010

@Intellectual Property Insurance Services Corporation (1997 – 2007)
9720 Bunsen Parkway, Louisville, KY 40299
Phone 502.491.1144; Fax 502.491.4558; Email: info@IPISC.com

**NOTICE TO NEW YORK APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, and shall be also subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**NOTICE TO OHIO APPLICANTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO OKLAHOMA APPLICANTS:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO PENNSYLVANIA APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**NOTICE TO ALL OTHER STATE APPLICANTS:** Any person who knowingly includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

I am aware that wilfull false statements are punishable by various state and federal laws including but not limited to 18 U.SC. Section 1001.                                    4-7-2010

Applicant's Signature _____ Date:   12-3-2008

Applicant's Name & Title      Calvin Knickerbocker, CEO & Managing Member

©Intellectual Property Insurance Services Corporation (1997 – 2007)
9720 Bunsen Parkway, Louisville, KY 40299
Phone 502.491.1144; Fax 502.491.4688; Email: info@IPISC.com

(DefApp 12/30/07)
Page -21-

# INTELLECTUAL PROPERTY INFRINGEMENT DEFENSE COST REIMBURSEMENT INSURANCE

- Acceptance Form -

IP100705-D
5-20-10

**Page 2 of 3**

Shasta Technologies, LLC

**DATE:** 4/14/2010

**INVOICE NO.:** 03582-041410-01

**Policy Form:** [Policy 2005-100104]

**Applicant is:** INDIVIDUAL ☐  CORPORATION ☐  PARTNERSHIP/OTHER [X]

**ITEM 3.  MANUFACTURED PRODUCTS to be Insured and Premium**

| Product(s) Description | | | | Annual Amount Charged | |
|---|---|---|---|---|---|
| Coverage Includes CIVIL PROCEEDINGS for Infringement of: | | | | $31,065.00 | Premium |
| Patents: | Yes [X] | No | | | |
| Trademarks: | Yes | No [X] | | $637.70 | State Tax |
| Copyrights: | Yes | No [X] | | $500.00 | Policy Process Fee |
| | | | | $5.00 | S/L Service Fee |
| | | | | $320.00 | S/L Tax Filing Fee |
| | | | | $32,527.70 | |

**ITEM 4.  Limits Liability & Damages (if indicated in Item 5); Copayment, & Self Insured Retention:**

| | |
|---|---|
| LITIGATION EXPENSE/DAMAGES (if applicable) per CLAIM............. | $ 2,000,000 |
| LITIGATION EXPENSE/DAMAGES (if applicable) Policy Aggregate.......... | $ 2,000,000 |
| Copayment Percentage.......................................................... | 10% |
| Self Insured Retention per CLAIM................................................ | $100,000 |

**ITEM 5.  Other Coverages:**

| | | | | |
|---|---|---|---|---|
| Reimbursement for Damages: | Yes [X] | No: | | |
| Multi-Peril (MP) Rider Coverage Included? | Yes: | No: [X] | (If Yes, see separate MP Quotation Form) | |

**ITEM 6.  Forms and Endorsements:**

| | | | | | |
|---|---|---|---|---|---|
| Schedule of Manufactured Products | [X] | Service of Process | [X] | Offer of Terrorism Coverage | [X] |
| Additional Insured | [X] | Renewal | [X] | Special SIR | [X] |
| Policy Terms | [X] | | | | |

BY EXECUTION OF THIS ACCEPTANCE FORM, APPLICANT AFFIRMS THAT ALL STATEMENTS MADE IN THE APPLICATION FOR INSURANCE ARE TRUE AND CORRECT AS OF THIS DATE. FURTHERMORE, this Acceptance Form is based upon said statements provided to the Program Manager (hereafter "IPISC") in the application. Should Applicant become aware of a material change or omission relative to the information provided in the application, Applicant must submit to IPISC supplementary information specifying such material change or omission. Further, IPISC reserves the right to cause this Acceptance Form to be revised or withdrawn or any policy to be modified or cancelled in view of any supplementary information or other information which may come to its attention from Applicant or any other source.

Applicant further affirms that by execution below that he/she has read and understands the attached Addendum to this Acceptance Form which clarifies the coverage above and indicates other coverage that may or may not apply and may be available for additional premium. Further, by execution of this form, Applicant understands that no "Claim" will be accepted and/or considered on any CIVIL PROCEEDING or any part thereof, actually commenced on or before the Effective Date of this Policy or commenced within the FIRST NINETY (90) DAYS after the Effective Date of this Policy.

**AGREED AND ACCEPTED:**

Shasta Technologies, LLC

Authorized Signature

Date: 4-29-2010

**INTELLECTUAL PROPERTY INSURANCE SERVICES CORPORATION**

Authorized Signature

Date: 4/14/10

# INTELLECTUAL PROPERTY INFRINGEMENT DEFENSE COST REIMBURSEMENT INSURANCE

## - Acceptance Form -

### ADDENDUM

| | |
|---|---|
| Shasta Technologies, LLC | **DATE:** 4/14/2010 |
| **Policy Form:** (Policy 2005-100104) | **INVOICE NO.:** 03582-041410-01 |

The previous pages of this Form indicates the details of coverage you are being offered by the indicated Insurance Company through the above Program Manager. There are certain details of this Form that may apply to your coverage and of which you need to be aware in case you have missed the information in your procurement of coverage. We have outlined these details below. *This Addendum is not intended to be a modification, amendment or addition to the Policy but merely advice clarifying certain endorsements and/or coverages.*

**Item 3. Schedule of MANUFACTURED PRODUCTS to be insured** - With this Quote/Acceptance Form there is a Schedule of insured MANUFACTURED PRODUCTS and requires your signature before coverage can be bound. Please read this Schedule carefully and understand that if improvements or changes are subsequently made to the insured Manufactured Product(s), coverage may not apply unless you add these improved or changed MANUFACTURED PRODUCTS to the policy. To add them may require a new search and opinion. Your account representative will be able to assist you in determining the insurability of the improved or changed MANUFACTURED PRODUCTS.

Also note, if your Schedule of insured MANUFACTURED PRODUCT(S) provides coverage for allegation of INFRINGEMENT for specifically identified intellectual property, then, this coverage is limited to CIVIL PROCEEDINGS alleging INFRINGEMENT of those specified intellectual property(ies) ONLY. Specifically, CIVIL PROCEEDINGS alleging INFRINGEMENT of continuations, continuations-in-part, divisions, extensions, renewals, or reissues of the Schedule's specified intellectual property, or any other intellectual property, will NOT be covered.

Broader coverage may be available. Please check with your Account Representative or Agent to see how broader coverage can be obtained.

**Item 4. - Limits of Coverage** - If you have chosen limits below $5,000,000, please be aware that higher limits may be available for purchase. You may have the option to increase your limits in the future but you should be aware that you will be required to reapply for coverage and obtain underwriting approval.

**Other - Damages.** If this coverage is not checked "Yes" in Item 5, it is available for an additional premium. The coverage includes reimbursement of damages (to be included within the policy limits of Litigation Expenses) should you be found guilty of infringement

**Other - Infringement Claims in the First 90 Days.** Please note that unless this is a renewal policy, no CLAIM will be accepted and/or considered on any CIVIL PROCEEDING or any part thereof, actually commenced on or before the Effective Date of this policy or commenced within the first ninety (90) days after the Effective Date of this Policy.

**Other - Infringement Claims 90 Days After Policy Terminated.** If this policy is not renewed and is allowed to expire, then the carrier will consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT, which CIVIL PROCEEDINGS are commenced within ninety (90) days after the end of the POLICY PERIOD. This ninety (90) day extension, however, does not apply to cancellations.

**Other - Multi-Peril Infringement Coverage** - If this coverage is not checked "Yes" in Item 5, it is available to the Insured for additional premium to cover business losses (LOSS/COSTS) when you or your company is charged with an IP infringement suit and your company is issued a preliminary injunction or your company loses the CIVIL PROCEEDING which validates the IP or finds infringement. Losses paid include business income, license fees & royalties lost, and costs of redesigning, retooling or disposal of insured patented products, including shipping, restocking, renaming, etc., depending upon the Named Peril coverage(s) taken. This coverage requires that you carry a Defense Cost Reimbursement Policy with limits sufficient to assist you through the Civil Proceeding.

We appreciate your considering us for this coverage. Litigation can be very expensive and with the aid of this insurance we hope you can avoid using a major portion of your cash reserves for legal costs and thus leave you negotiating a license from a position of financial weakness.

**Named Insured:** Shasta Technologies, LLC
**Policy Number:** IP100705-D
**Effective Date:** May 20, 2010                    at 12:01a.m. Eastern Standard Time

---

### SIGNATURE ENDORSEMENT

The Policy to which this Endorsement is attached is insured by the:

Gotham Insurance Company

IN WITNESS WHEREOF, this Issuing Company has caused this Policy to be executed below, but this Policy shall not be valid unless countersigned by Mutual Marine Office, Inc., or by a duly authorized agent of the Company.

Executed in New York 10/26/2006

**MUTUAL MARINE OFFICE, INC.**
Attorney-in-fact for the Company designated above By

# INTELLECTUAL PROPERTY INSURANCE

## INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE POLICY

© (1991 - 2004)  *Intellectual Property Insurance Services Corporation, Inc.*

---

THIS IS A CLAIMS MADE AND REPORTED POLICY. This Policy applies only to those CLAIMS that are made to the Company during the POLICY PERIOD for reimbursement of LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) arising out of COVERED LITIGATION. Coverage under this Policy does not include payment or reimbursement of any fines, or penalties including but not limited to punitive, exemplary, treble or multiple damages of any kind, non-pecuniary relief and taxes assessed against the Named Insured. PLEASE NOTE THIS IS A DEFENSE COST AND DAMAGES REIMBURSEMENT POLICY ONLY. UNLESS SPECIFICALLY ASSUMED BY THE COMPANY IN WRITING, THE DEFENSE OF THE NAMED INSURED IN ANY ACTION, ADMINISTRATIVE PROCEEDING(S) OR CIVIL PROCEEDING(S) OF WHATEVER NATURE IS AT ALL TIMES THE RESPONSIBILITY OF THE NAMED INSURED. Words and phrases appearing in capital letters have special meaning while the same words and phrases in lower case type have their ordinary and customary meanings; please refer to the DEFINITIONS (SECTION II) below. Please also read the Terms, Conditions, and Exclusions of this Policy carefully and discuss its coverage with your professional advisor.

The Company will only accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced no sooner than ninety (90) days after the effective date of coverage, and thereafter. Unless this Policy has been renewed or terminated, the Company will accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced within ninety (90) days after the expiration date of the Policy.

After a period of one year from the expiration of the Policy the Company will not reimburse LITIGATION EXPENSES or DAMAGES arising from any unauthorized, but not withdrawn or denied CLAIM (i.e. delayed CLAIM) in existence at the expiration of the Policy irrespective of the reasons for such delay and regardless of blame or fault.

NOTICE: THE LIMIT OF INDEMNITY AVAILABLE TO PAY DAMAGES (IF SUCH DAMAGES ARE DESIGNATED ON THE DECLARATIONS PAGE) SHALL BE REDUCED BY AMOUNTS REIMBURSED FOR LITIGATION EXPENSE. AMOUNTS INCURRED FOR LITIGATION EXPENSE AND DAMAGES SHALL BE APPLIED AGAINST THE SELF INSURED RETENTION AMOUNT.

## I.    INSURING AGREEMENTS

### A.   Insurance Coverage

In reliance on the statements contained in any required FAVORABLE INFRINGEMENT OPINION and statements in the insurance application, which application shall include the Quotation/Acceptance Form executed by Named Insured, said application being attached hereto and made a part of this Policy, and in

(DefPolicy 2005-100104)

consideration of the payment of the premium specified on the Declarations Page hereof, the Company agrees with the Named Insured as follows:

Subject to the Copayment Percentage, Self Insured Retention per CLAIM and Limits of Reimbursement (i.e. Indemnification) of Liability (and Damages if indicated) stated on the Declarations Page for each of the patent, copyright, trademark or trade dress coverages indicated on the Declarations Page, the Company shall reimburse the Named Insured only for LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) for which the Named Insured is liable and has paid to a third party arising out of COVERED LITIGATION, even if such COVERED LITIGATION is groundless, false or fraudulent. All reimbursement of LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) payable under this Policy shall be subject to all the terms, conditions, limitations, and exclusions stated herein.  Reimbursements payable under this Policy will be made based upon receipts for LITIGATION EXPENSES paid by Named Insured and submitted to the Company.

**B.     Territory**
The insurance provided under this Policy applies to COVERED LITIGATION that is brought in the United States of America, its territories or possessions.

**C.     Limits of Liability**
1.     Subject to the Copayment Percentage / Self Insured Retention per CLAIM shown on the Declarations Page, the Limits of Reimbursement (Indemnification) Liability and Damages (if indicated) shown on the Declarations Page is the most that the Company shall pay for reimbursement or indemnification of all LITIGATION EXPENSES and DAMAGES (if DAMAGES are designated on the Declarations Page) for:
a: any single CLAIM; or
b: all CLAIMS in the aggregate made during the POLICY PERIOD.

2.     The inclusion herein of more than one Named Insured or the making of more than one CLAIM or the bringing of more than one CIVIL PROCEEDING(S), by a single or more than one person or organization shall not operate to increase the Company's limit of liability.

3.     The Company will not be obligated to continue to reimburse the Named Insured under this Policy after the applicable limits of Reimbursement Liability (Indemnification) and Damages (if indicated) of the Company have been exhausted by reimbursement of LITIGATION EXPENSES. and/or DAMAGES (if DAMAGES are designated on the Declarations Page).

**D.     Allocation**
The Company shall reimburse the Named Insured only for LITIGATION EXPENSES and DAMAGES arising out of that portion of a CIVIL PROCEEDING which has been determined to be COVERED LITIGATION, and not for any other costs arising from the CIVIL PROCEEDING(S).  If a CIVIL PROCEEDING includes COVERED LITIGATION and allegations that are not COVERED LITIGATION, the Policy shall conclusively allocate reimbursable LITIGATION EXPENSES and DAMAGES pro-rata as follows:
1.     If the CIVIL PROCEEDING includes counts or causes of action ("Count(s)") which are not COVERED LITIGATION, reimbursable LITIGATION EXPENSES shall be determined by multiplying the reasonable and customary attorney's fees, costs and disbursements arising from the CIVIL PROCEEDING by a fraction whose numerator is the number of Counts which are COVERED LITIGATION present in the suit at the time those costs arose, and whose denominator is the total number of Counts in the CIVIL PROCEEDING at that time.

2.     If a Count includes allegations of INFRINGEMENT by both insured and uninsured MANUFACTURED PRODUCTS, the reimbursable LITIGATION EXPENSES arising from that

(DefPolicy 2005-100104)

Count shall be determined by the proportion of the insured to total MANUFACTURED PRODUCTS accused therein.

3. If a Count includes allegations that both insured-against and uninsured-against patents, trademarks, copyrights or portions thereof (including individual claims of a patent) are INFRINGED by an insured MANUFACTURED PRODUCT, the LITIGATION EXPENSES arising from that Count shall be determined by the proportion of the insured-against to total patents, trademarks, copyrights or portions thereof asserted in that Count.

4. If DAMAGES are itemized by a Court, such itemization shall determine the reimbursable portion of DAMAGES. If DAMAGES are not itemized by a Court, the pro-rata calculation controlling LITIGATION EXPENSES shall also apply to DAMAGES.

5. The allocation(s) under each applicable subpart of this Section shall be read in conjunction with each other, and the resulting cumulative allocation shall apply to determine reimbursable LITIGATION EXPENSES and DAMAGES prior to application of any Self Insured Retention or Copayment.

E. **Copayment Percentage**
The Named Insured shall be obligated to pay the percentage of copayment stated in Item 4 of the Declarations for all LITIGATION EXPENSES, including DEFENSE EXPENSES for INVALIDITY COUNTERCLAIM and RE-EXAMINATION PROCEEDINGS and DAMAGES, until reimbursements by the Company have reached the Limits of Reimbursement (Indemnification) Liability and Damages (if indicated) shown in the Declarations. Thereafter all LITIGATION EXPENSES and DAMAGES shall become the responsibility of the Named Insured.

F. **The Named Insured**
1. "Named Insured" whenever used in this Policy means:
    a. The individual, partnership, joint venture or corporation designated in Item 1. of the Declarations Page including any partner, member, executive officer, employee or director of such designated entity solely while acting within the scope of their duties as such but only with respect to MANUFACTURED PRODUCT(S); or

    b. Any legal representative or trustee of a Named Insured listed in Item 1 above in the event of the Named Insured's incompetency, insolvency or bankruptcy; or

    c. Additional Insured(s) which is:
        i. Any Third Party which an individual, partnership, joint venture or corporation designated in Item 1 of the Declarations Page has undertaken in writing, to indemnify for LITIGATION EXPENSES and/or DAMAGES arising out of patent, trademark or copyright INFRINGEMENT proceedings where such Third Party is licensed under one or more of the Named Insured's PATENTS, TRADEMARKS and/or COPYRIGHTS covering MANUFACTURED PRODUCT(S); and such Third Party has manufactured, used, sold or offered for sale such MANUFACTURED PRODUCT(S) during the POLICY PERIOD, provided such Third Party and license were disclosed to the Company in the application for insurance or subsequently under this Policy and such Third party is added to this Policy as an Additional Insured by Endorsement; or,
        ii. A Third Party who is a Bonafide Purchaser of MANUFACTURED PRODUCTS during the POLICY PERIOD where such purchase is governed by the Uniform Commercial Code (UCC) Section 2.312(3) or its subsequent replacement section, provided such Bonafide Purchaser is entitled to the warranty benefits under the UCC.

(DefPolicy 2005-100104)

2.  Only the first Named Insured has the right to receive notifications from the Company and control the Policy including but not limited to adding or removing insureds, canceling the Policy or agreeing to modifications to the Policy.  Also, only those Named Insureds whose names actually appear in Item 1 of the Declarations Page (or their legal representatives or trustees) have the right to make CLAIMS against the Company and receive reimbursement under this Policy.

3.  No person or entity is a Named Insured under this Policy with respect to the conduct of any current or past partnership or joint venture if that entity or person is not named in Item 1. of the Declarations Page of this Policy.

## II.   DEFINITIONS

A.  **ASBESTOS** includes but is not limited to Asbestos, Asbestos Products, Asbestos Fibers, Asbestos Particles, Asbestos Dust, or any product or goods containing Asbestos in any form.

B.  **ASBESTOS LIABILITY** means any liability arising directly or indirectly from loss, injury or damage caused by the HANDLING, USE, MISUSE or EXISTENCE of ASBESTOS.

C.  **BODILY INJURY or PROPERTY DAMAGE** includes but is not limited to (1) Bodily injury, sickness, disease, occupational disease, death, shock, disability, mental anguish, mental injury, emotional upset, asbestosis, any trauma, suffered or alleged to be suffered by any person or entity; (2) Damage to tangible or intangible property; (3) Loss of, or loss of use of, tangible or intangible property; (4) Loss of, loss of use of, or interference with property rights; (5) All forms of radioactive contamination of property.

D.  **CIVIL PROCEEDING(S)** means any legal or administrative proceeding, suit, cause of action or alternative dispute resolution proceeding or the threat thereof, including but not limited to, cease and desist letter(s) and the like, directed to or brought against the Named Insured by one or more parties, where applicable, in a State Court, a Federal District Court or United States Appellate Court, or if an alternative dispute resolution, in a proper forum.

E.  **CLAIM** means a demand on the Company by a Named Insured on the Company's properly completed and executed "Infringement Defense Claim" form to have a CIVIL PROCEEDING alleging INFRINGEMENT or any part thereof deemed COVERED LITIGATION and for written acknowledgement that LITIGATION EXPENSE and DAMAGES (if designated on the Declarations Page) resulting from the COVERED LITIGATION will be reimbursed under this Policy.  CLAIM does not refer to the actual CIVIL PROCEEDING brought against the Named Insured.

Demands on the Company relating to CIVIL PROCEEDINGS arising out of the same act or a duplication of an act or out of a series of interrelated acts irrespective of the time period over which the acts occurred shall be considered as giving rise to a single CLAIM covered by a single policy irrespective of the number of CIVIL PROCEEDING(S), Plaintiffs, Defendants, or the number of MANUFACTURED PRODUCTS, or the year or policy under which the CLAIM is made.

Two or more CLAIMS arising out of related allegations of INFRINGEMENT or any series of related allegations of INFRINGEMENT, whether those allegations assert INFRINGEMENT of single or multiple patents, copyrights or trademarks or any combination thereof, will be considered a single CLAIM.  These provisions apply regardless of the number of Named Insureds, patents, copyrights, trademarks, MANUFACTURED PRODUCTS, plaintiffs, defendants, or organizations that are involved in such CIVIL PROCEEDINGS.

F.  **COPYRIGHT** means the rights in original WORKS OF AUTHORSHIP fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise

(DefPolicy 2005-100104)

communicated, either directly or with the aid of a machine or device as conferred by 17 USCA 106 provided such WORKS OF AUTHORSHIP have been registered by the Named Insured in the U.S. Copyright office under 17 USCA 408 or have been licensed-in by the Named Insured. The term copyright in lower case type means the rights in original WORKS OF AUTHORSHIP fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device as conferred by 17 USCA 106 provided such WORKS OF AUTHORSHIP having been licensed-in by or registered by another in the U.S. Copyright office under 17 USCA 408.

G. **COVERED LITIGATION** means any part of a CIVIL PROCEEDING, brought during the POLICY PERIOD and reported to the Company within the POLICY PERIOD or an EXTENDED REPORTING PERIOD, in which the Named Insured is acting in a defensive or Defendant's role:

1. Which alleges INFRINGEMENT by the Named Insured, including INJUNCTION PROCEEDINGS; or

2. Which alleges INFRINGEMENT by the Named Insured's licensee, provided that such licensee has been added as an Additional Insured by Endorsement under this Policy; or

3. Which alleges INFRINGEMENT to which the Named Insured is responding on behalf of an Additional Insured, pursuant to a manufacturer's warranty of non-infringement under Section 2.312(3) of the Uniform Commercial Code;

provided that the allegations of INFRINGEMENT (i.e., patent, trademark, copyright or trade dress INFRINGEMENT) correspond to an indicated coverage (i.e., patent, trademark, copyright or trade dress defense LITIGATION EXPENSE indemnification coverage) on the Declarations Page and the Company, in response to a CLAIM, has stated in writing to the Named Insured that LITIGATION EXPENSE arising from such CIVIL PROCEEDING will be reimbursed by this Policy; except:

COVERED LITIGATION does not include any CIVIL PROCEEDING brought as a counterclaim or retaliatory suit in or to a legal proceeding, suit, cause of action or alternative dispute resolution proceeding brought by the Named Insured or a third party acting in concert with the Named Insured. A suit shall be deemed to be retaliatory if it is brought within ninety (90) days of a legal proceeding, suit, cause of action or alternative dispute resolution proceeding brought by the Named Insured or a third party acting in concert with the Named Insured or the suit in question is of the same subject matter or based on the same facts or transactions as the a legal proceeding, suit, cause of action or alternative dispute resolution proceeding brought by the Named Insured or a third party acting in concert with the Named Insured.

COVERED LITIGATION does not include any legal proceeding, suit, cause of action or alternative dispute resolution (ADR) proceeding which is formally commenced more than one year after the date of the Named Insured's submission of a CLAIM which legal proceeding, suit, cause of action or ADR arises out of the same act or a duplication of the same act or series of interrelated acts which is the basis for that CLAIM.

Authorization to appeal is required to be obtained by Named Insured if the Named Insured does not prevail in the COVERED LITIGATION and wishes to appeal such decision. However, authorization is not required to be obtained again by the Named Insured if the Named Insured is the prevailing party in the COVERED LITIGATION and the opposing party appeals such decision.

H. **DAMAGES** means monetary sums arising out of COVERED LITIGATION paid by the Named Insured to a claimant pursuant to either judgments, awards or settlements negotiated with the written consent of the Company, whichever is applicable, as lost profits and/or royalties for past infringement, and/or reasonable attorneys fees assessed by the Court against the Named Insured provided, however, that DAMAGES shall not include fines, penalties, (including but not limited to punitive, exemplary or multiplied damages), non-pecuniary relief and taxes assessed against the Named Insured. DAMAGES also does not include any amount

(DefPolicy 2005-100104)

for which the Named Insured is not financially liable or any amount as to which there is no legal recourse by the person who is awarded such relief against the Named Insured.   Also excluded from DAMAGES is any loss, cost, expense or award arising from any such matters which are uninsurable under the law pursuant to which this Policy shall be construed.

I.   **DEFENSE EXPENSES** means sums of money which the Named Insured shall have paid upon incurring as reasonable and customary attorney's fees, costs, and disbursements, including, but not limited to, court costs, costs of depositions, transcripts, fees and expenses of expert witnesses, appeals authorized under this Policy, but only to the extent that those sums arise out of COVERED LITIGATION.

DEFENSE EXPENSES includes the actual costs and expenses incurred in asserting any INVALIDITY COUNTERCLAIM or initiating any RE-EXAMINATION PROCEEDING which is a direct consequence of COVERED LITIGATION. DEFENSE EXPENSES shall further include: expenses incurred by the Company in any COVERED LITIGATION defended by the Company; costs levied against the Named Insured in any such COVERED LITIGATION defended by the Company; premiums on appeal bonds and bonds to release attachments, to the extent that the face amount of such bonds do not exceed the Company's then remaining applicable limit of indemnity and are required in any COVERED LITIGATION defended by the Company, provided however, neither this provision nor any other in this policy shall be construed as requiring the Company to defend any Named Insured, commence or prosecute any appeal or to apply for or furnish any bonds.

Expenses incurred in obtaining a FAVORABLE INFRINGEMENT OPINION are not included in DEFENSE EXPENSES. Also not included in DEFENSE EXPENSES are loss of earnings, expenses and costs incurred by the Named Insured for salaries and expenses of its officers, staff, in-house attorneys, directors, employees (and outside attorneys or consultants functioning in the capacity of any of the foregoing).

All DEFENSE EXPENSES shall consume and not be in addition to the limits set forth in Item 4 of the Declarations Page.

J.   **FAVORABLE INFRINGEMENT OPINION** means an opinion by an intellectual property attorney who is selected by the Named Insured, approved by the Company and compensated by the Named Insured, or who is selected and compensated by the Company under Section IV.A.1.b.i. of this Policy, which opines that more likely than not a properly advised trier of fact or law or both would conclude that there is no INFRINGEMENT of any unexpired U.S. patent, trademark or copyright vis-à-vis a MANUFACTURED PRODUCT based upon a search of the records and prior art compiled in the United States Patent & Trademark Office or Copyright Office which opinion has been accepted by the Company applying reasonable standards.

K.   **HANDLING, USE, MISUSE, or EXISTENCE** includes, but is not limited to, the manufacture, mining, use, sale, installation, distribution, removal, encapsulation, transportation, or presence of ASBESTOS. It includes the inspection for and exposure to ASBESTOS. It includes the failure to perform, or inadequate performance in said HANDLING, USE, MISUSE or EXISTENCE.

L.   **INFRINGEMENT** means the specific allegation that the making, use, sale or offer for sale of particularly identified MANUFACTURED PRODUCT(S) by the Named Insured, within the United States of America, its territories or possessions during the POLICY PERIOD is unauthorized and in violation of specifically identified enforceable and valid rights of another arising from the grant by the United States Patent & Trademark Office and/or the U.S. Registrar of Copyrights of any unexpired patent, trademark or copyright excluding rights arising under or enforceable by virtue of a Treaty with one or more foreign governments. INFRINGEMENT shall not include in its meaning inducement to infringe, but shall include contributory infringement and in the case of copyrights, vicarious infringement.

M.   **INJUNCTION EXPENSE(S)** means sums of money which the Named Insured shall have paid upon incurring as reasonable and customary attorney's fees, costs and disbursements including but not limited to, court costs,

costs of depositions, transcripts, fees and expenses of expert witnesses, appeals authorized under this Policy, but only to the extent those sums arise out of an INJUNCTION PROCEEDING(S), and only if such INJUNCTION PROCEEDING is brought during the POLICY PERIOD and is solely in respect to the regular, ordinary and usual course of the business of the Named Insured as that business existed on the first date of the POLICY PERIOD and as described in the application for insurance attached hereto and made a part hereof.

INJUNCTION EXPENSES shall further include:

> Expenses incurred by the Company in any INJUNCTION PROCEEDING defended by the Company;
>
> Costs levied against the Named Insured in any such INJUNCTION PROCEEDING defended by the Company;
>
> Premiums on appeal bonds and bonds to release attachments, to the extent that the face amount of such bonds do not exceed the Company's then remaining applicable limit of indemnity and are required in any INJUNCTION PROCEEDING defended by the Company, provided however, neither this provision nor any other in this policy shall be construed as requiring the Company to defend any Named Insured, commence or prosecute any appeal or to apply for or furnish any bonds.

Not included in INJUNCTION EXPENSES are loss of earnings, expenses and costs incurred by the Named Insured for salaries and expenses of its officers, staff, in-house attorneys, directors, employees (and outside attorneys or consultants functioning in the capacity of any of the foregoing).

All INJUNCTION EXPENSES shall consume and not be in addition to the limits set forth in Item 4 of the Declarations Page.

N. **INJUNCTION PROCEEDING(S)** means any CIVIL PROCEEDING brought during the POLICY PERIOD alleging INFRINGEMENT against the Named Insured and thereby seeking to limit or cease Named Insured's specific activities with regard to MANUFACTURED PRODUCTS on the ground that the activities result in INFRINGEMENT, and which could result in a legally enforceable order against the Named Insured to limit or cease the specific activities in question.

O. **INVALIDITY COUNTERCLAIM** means any legal action taken by the Named Insured in the course of and as part of COVERED LITIGATION which seeks invalidation of a copyright, a trademark or one or more claims of a patent under which INFRINGEMENT is being asserted.

P. **LIMIT(S) OF LIABILITY** means the maximum amount the Company will reimburse (indemnify) for LITIGATION EXPENSES and/or DAMAGES, either for each CLAIM or in the aggregate under the Policy for CLAIMS authorized by the Company as indicated on the Declarations Page and as set forth in Section I.C.

Q. **LITIGATION EXPENSES** (INCLUDED IN THE LIMITS OF REIMBURSEMENT (Indemnification) LIABILITY and DAMAGES ( if indicated)) means:
   1. DEFENSE EXPENSES and/or
   2. INJUNCTION EXPENSES and/or
   3. Costs and expenses of any unsuccessful pursuit of any other Insurer or Indemnitor, which the Company has required (requested) under Section IV. M. of this Policy on Excess Insurance or under Section IV. N. on Excess Indemnity.

R. **MANUFACTURED PRODUCT(S)** means any COPYRIGHT, TRADEMARK, TRADE DRESS, WORK OF AUTHORSHIP, word, slogan, symbol, design, process, machine, article of manufacture or composition of matter specifically enumerated on the Declarations Page of this Policy which is reproduced, applied or manufactured in the United States or abroad by or for a Named Insured during the POLICY PERIOD and used, sold or offered for sale by or for the Named Insured in the United States during the POLICY PERIOD.

S. **PATENT** means any unexpired U.S. Patent of the Named Insured. The term patent in lower case type shall mean any U.S. patent of another.

(DefPolicy 2005-100104)

T. **POLICY PERIOD** means the period from the Effective Date shown in Item 2 of the Declarations Page of this Policy to the expiration date shown in that Item; or in the case of an expiration due to nonrenewal, or cancellation or termination by the Company for any reason other than fraud, material misrepresentation or nonpayment of premium, for an additional period of ninety (90) days after such expiration date; or in the case of cancellation or termination by an Insured, or cancellation by the Company for reasons of fraud, material misrepresentation or nonpayment of premium, as of the Effective Date of cancellation or termination of this Policy.

U. **RECOVERED COSTS** means any monies received by the Named Insured by way of penalty, indemnification (other than by this policy), or punitive award, or the like, arising in connection with a COVERED LITIGATION.

V. **RE-EXAMINATION PROCEEDING** means a proceeding brought in the United States Patent and Trademark Office requesting re-examination of one or more claims of a patent under which claim(s), INFRINGEMENT is being asserted.

W. **SELF INSURED RETENTION** means the amount of unreimbursed LITIGATION EXPENSES and/or DAMAGES for each CLAIM that the Named Insured shall be obligated to pay before the Company shall reimburse any CLAIM amounts. The Self Insured Retention is measured by the amounts that would otherwise be LITIGATION EXPENSES and/or DAMAGES, but shall not reduce the Limits of Liability.

X. **TRADE DRESS** means the appearance and image of a MANUFACTURED PRODUCT of the Named Insured taken as a whole, including but not limited to the features of size, texture, shape, color or color combinations and graphics. TRADE DRESS does not include the particular advertising or marketing techniques used to promote the product's sale. The term trade dress in lower case type means the appearance and image of the manufactured product of another taken as a whole, including but not limited to the features of size, texture, shape, color or color combinations and graphics. It does not include the particular advertising or marketing techniques used to promote the manufactured products of that other.

Y. **TRADEMARK** means a word, slogan, design or other symbol used to identify and distinguish goods or services which is licensed-in by or registered by the Named Insured, under state or federal law, as a trademark, service mark, collective mark, certification mark or TRADE DRESS. The term trademark in lower case type means a word, slogan, design or other symbol used to identify and distinguish goods or services which is registered by or licensed-in by another, under state or federal law, as a trademark, service mark, collective mark, certification mark or trade dress. Federally Registered Mark(s) is any TRADEMARK/trademark which is registered on the Principal Trademark Register pursuant to 15 USC 1051(a). Federally Registered Marks shall also include any TRADEMARK/trademark registered on the Supplemental Register pursuant to 15 USC 1091.

Z. **WILLFUL INFRINGEMENT** means a specific determination by the Federal District court(s) and/or administrative tribunal(s) in which the CIVIL PROCEEDING was heard that regarding the Named Insured's INFRINGEMENT of the patent, copyright or trademark in question was "willful" or that the Named Insured proceeded in a deliberate fashion in disregard of the intellectual property of others. Notwithstanding the determination of such court(s) or tribunal(s), such INFRINGEMENT will not be considered WILLFUL INFRINGEMENT under this Policy where the Named Insured has first obtained a FAVORABLE INFRINGEMENT OPINION with respect to the insured MANUFACTURED PRODUCT which actually discusses the patent, copyright or trademark under which INFRINGEMENT was found.

AA. **WORK(S) OF AUTHORSHIP** shall include the following:
                1. Literary Works; and/or
                2. Musical works, including any accompanying words; and/or
                3. Dramatic works, including any accompanying music; and/or
                4. Pantomimes and choreographic works; and/or

(DefPolicy 2005-100104)

5. Pictorial, graphic and sculptural works; and/or
6. Motion pictures and other audiovisual works; and/or
7. Sound recordings; and/or
8. Architectural works; and/or
9. Computer programs.

## III.   EXCLUSIONS

A. Coverage under this policy does not include reimbursement of:

1.   Any loss, costs or expenses arising from any liability of the Named Insured for fines, or penalties, including but not limited to punitive, exemplary, treble, or multiple damages of any kind.

2.   Any loss, costs or expenses arising from BODILY INJURY or PROPERTY DAMAGE.

3.   Any loss, costs or expenses arising from any litigation, adjudicatory action or CIVIL PROCEEDING, or part thereof, other than COVERED LITIGATION.

4.   Any loss, costs or expenses arising from any CLAIM not submitted to the Company during the POLICY PERIOD or any Extended Reporting Period under Section IV.B. of this Policy.

5.   Any loss, costs, expenses or professional fees arising from or incurred by the Named Insured prior to the commencement of the COVERED LITIGATION.

6.   Any LITIGATION EXPENSE or DAMAGES arising out of a CIVIL PROCEEDING where such CIVIL PROCEEDING was commenced, served or delivered prior to the beginning of the POLICY PERIOD and whether or not the pleadings of such CIVIL PROCEEDING (if any) are amended subsequent to the beginning of the POLICY PERIOD to allege INFRINGEMENT.

7.   Any loss, costs or expenses arising from or incurred by the Named Insured for salaries, expenses and/or fees of its officers, staff, in-house attorneys, directors, and employees and outside attorneys or consultants functioning in the capacity of any of the foregoing.

8.   Any loss, costs or expenses arising from the defense of, or any liability arising from, any criminal act or omission of Named Insured.

9.   Any loss, costs or expenses arising from WILLFUL INFRINGEMENT.

10.   Any loss, costs or expenses arising from a CIVIL PROCEEDING alleging INFRINGEMENT where the/a Named Insured or any of the Named Insured's officers, directors, employees, licensees, assignees, lessees, transferees, agents, sales agents, distributors, affiliates, parents, subsidiaries, predecessors or successors in interest (collectively, "Commercially Related Party/Parties") had knowledge prior to the Effective Date of this Policy of any patents, trademarks, copyrights, or applications for patents or trademarks or copyrights which are or could be the basis for the allegation of INFRINGEMENT other than those disclosed to the Company and discussed or noted in a FAVORABLE INFRINGEMENT OPINION or where the/a Named Insured or a Commercially Related Party knew or reasonably should have known that the manufacture, use, sale, offer for sale, application or reproduction of a MANUFACTURED PRODUCT(S) would result in the Named Insured being charged with INFRINGEMENT.

(DefPolicy 2005-100104)

11.     Any loss, costs or expenses incurred in or arising out of the defense of any allegations of anti-trust or anti-competitive conduct or unfair trade practices.

12.     Any loss, costs or expenses arising from any Declaratory Actions of any nature whether Named Insured is Plaintiff or Defendant.

13.     Any loss, costs or expenses arising from any Administrative Proceeding of any nature including but not limited to International Trade Commission Proceedings, except RE-EXAMINATION PROCEEDINGS.

14.     Any loss, costs or expenses arising out of allegations of INFRINGEMENT by a MANUFACTURED PRODUCT(S) which is the same as or substantially similar to a WORK OF AUTHORSHIP, word, slogan, symbol, design, TRADEMARK, COPYRIGHT, process, machine, article of manufacture or composition of matter specified on the Declarations page of this policy produced within the three years preceding the Effective Date of this Policy by any former employer of a Named Insured.

15.     LITIGATION EXPENSES or DAMAGES arising from any COVERED LITIGATION in which the Named Insured or any parent, subsidiary or affiliate of a Named Insured or any officer, director, employee or holder of more than five percent (5%) of the stock of any of the foregoing has any direct or indirect interest in any recoveries, injunctions or the like arising from such COVERED LITIGATION.

16.     Any loss, costs or expenses based upon or arising out of any circumstances or activities of which a Named Insured or any of the Named Insured's officers, directors, employees, licensees, assignees, lessees, transferees, agents, sales agents, distributors, affiliates, parents, subsidiaries, predecessors or successors in interest suspects or has knowledge, at a time prior to the Effective Date of this Policy is/are likely to give rise to a CLAIM. This exclusion includes, but is not limited to, any prior CIVIL PROCEEDING or possible CIVIL PROCEEDING, activity or circumstance whether or not referenced in the Named Insured's Application for this Policy.

17.     Any loss, costs and expenses based upon or arising out of any CIVIL PROCEEDING(S) if, on the Effective Date of this Policy, Named Insured had/has any knowledge of any event or circumstance which he knows (or could reasonably believe) may result in such CIVIL PROCEEDING alleging INFRINGEMENT, irrespective of when such CIVIL PROCEEDING is/was actually initiated.

18.     Any loss, costs or expenses including but not limited to LITIGATION EXPENSES or DAMAGES based upon or arising out of any CIVIL PROCEEDING alleging INFRINGEMENT by virtue of any party's breach or termination of any contract, license or agreement or suspension of performance thereunder or the expiration of the license or the expiration of the contract, license or agreement.

19.     Any loss, costs or expenses relating to circumstances involving fraud, material misrepresentation or omission by the Named Insured.

20.     Any loss, costs or expenses arising from any CLAIM made by any Named Insured under this Policy against any other Named Insured under this Policy.

21.     Any loss, cost or expenses based upon or arising out of discrimination by a Named Insured on the basis of race, creed, national origin, disability, age or sex, or sexual preference. Any loss, cost or expenses based upon or arising out of the actual or threatened, discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any

-10-                              (DefPolicy 2005-100104)

course or body of water, whether below or above ground. The intent and effect of this exclusion is to delete from any and all coverage afforded by this Policy any claim, judgment, liability, settlement, defense or expenses (including any loss, cost or expense arising out of any government cost, or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the Insured's activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and wherever such occurs.

22. Any loss, cost or expenses arising out of BODILY INJURY or PROPERTY DAMAGE as it relates to Nuclear Energy:

a. With respect to which a Named Insured is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be a Named Insured under any such policy but for its termination upon exhaustion of its limit of liability; or resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Named Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. resulting from the "hazardous properties" of "nuclear material" if:
(1) the "nuclear material" (a) is at any "nuclear facility" owned by the Named Insured or operated by the Named Insured or on the Named Insured's behalf, or (b) has been discharged or dispersed therefrom;
(2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by the Named Insured or on the Named Insured's behalf; or
(3) the BODILY INJURY or PROPERTY DAMAGE arises out of the furnishing by a Named Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion applies only to PROPERTY DAMAGE to such "nuclear facility" and any property thereat.

c. as used in this exclusion:
"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means source material, special "nuclear material" or by product material;

"source material", special "nuclear material" and by-"product material" have the meanings given them by the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

-11-                                    (DefPolicy 2005-100104)

"waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization and of a "nuclear facility" included under the first two paragraphs within the definition of "nuclear facility" below;

"nuclear facility" means:
1.   any "nuclear reactor";
2.   any equipment or device designed or used for (a) separating isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "wastes."
3.   any equipment or device used for the processing, fabricating, or alloy-ing of "special nuclear material" if at any time the total amount of such material in the custody of the Named Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
4.   any structure, basin, excavation, premises or place prepared or used for storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

23.   ASBESTOS Exclusion:
   a.   This insurance does not apply to ASBESTOS LIABILITY. This Policy does not cover any obligation on Named Insured's part to indemnify any party for ASBESTOS LIABILITY; or, to indemnify any ASBESTOS LIABILITY assumed under contract;
   b.   nor does it apply to any loss, claim or suit directly or indirectly resulting from, caused by or alleged to be caused by, ASBESTOS or ASBESTOS LIABILITY;
   c.   Further, there is no obligation or duty on Company's part to investigate or indemnify CLAIMS or suits relating to ASBESTOS LIABILITY.

## IV.   CONDITIONS

### A. Company's Authorization of a CIVIL PROCEEDING to establish COVERED LITIGATION

1.   As a condition precedent to the Company's review of the Named Insured's CLAIM, the Named Insured shall:
   a.   Submit to the Company in writing a properly completed and executed "Infringement Defense Claim" form provided by the Company. The CLAIM shall include the MANUFACTURED PRODUCTS involved, a brief statement of the nature of the action brought against the Named Insured including the patents, copyrights, trademarks and/or trade dress alleged to be INFRINGED and the expected result; an explanation of how and when the alleged INFRINGING acts occurred and when the possibility of being involved in a CIVIL PROCEEDING was first discovered by the Named Insured; and a projection quantifying the negative impact to the Named Insured if the CIVIL PROCEEDING alleging INFRINGEMENT is successful.

b.   Supply to the Company, no later than sixty (60) days from the date of the initial request for authorization, or any extension of time granted by the Company, the following:

i.   A current FAVORABLE INFRINGEMENT OPINION letter written to the standards of the profession which sets forth the relevant claim, claims or protected rights of the patent, trademark, or copyright alleged to be INFRINGED and rendering an opinion of noninfringement favorable to the Named Insured. Such FAVORABLE INFRINGEMENT OPINION letter must be signed by independent, outside counsel selected from a list of firms, such list of firms provided by the Company, who will not be selected as litigation counsel and whose opinion was not considered by the Company when issuing this or a previous Policy for the Named Insured. Such FAVORABLE INFRINGEMENT OPINION letter must be obtained at the Named Insured's expense, or may at the Company's sole discretion be obtained from counsel selected and paid for by the Company. Regardless of the source of payment or choosing party, the Named Insured and the Company shall be joint clients of the opining counsel. The opinion letter should discuss validity of the patent, trademark, or copyright, the INFRINGEMENT thereof by the accused, insured MANUFATURED PRODUCTS, and should conclude either there is no INFRINGEMENT, or the patent, trademark, or copyright is invalid, or there is no right of trade dress if trade dress is an issue;

ii.   A description of the Named Insured's MANUFACTURED PROD-UCT(S), including TRADEMARKS, TRADE DRESS and/or COPYRIGHTS and the trademark, trade dress, copyright or in the case of a patent the claims which are alleged to be INFRINGED and whether the INFRINGEMENT is in the manufacture, sale, offer for sale, application, reproduction or use of the MANUFACTURED PRODUCT(S) or which, if any, combination thereof;

iii.   Identification of the Plaintiff, together with all information Named Insured may have concerning such Plaintiff including a credit report, if available;

iv.   Identification of the Federal District court(s) having jurisdiction over the CIVIL PROCEEDING;

v.   The Named Insured's preference for litigation counsel, who shall not have been prosecuting counsel for any intellectual property involved in the CIVIL PROCEEDING, nor whose opinion was considered by the Company when issuing this or a previous Policy for the Named Insured or as a FAVORABLE INFRINGEMENT OPINION, nor who may act as coverage counsel for the Named Insured regarding this Policy, provided that such counsel must be admitted to practice and a member in good standing in at least one state or Federal judicial district. The Company reserves the right to approve or disapprove counsel at its sole discretion.

vi.   A budget projection for LITIGATION EXPENSE, including, but not limited to, proposed attorney's fee arrangements, and estimated costs and expenses for expert witnesses, collection of evidence and items of proof, depositions, interrogatories, and discovery. The Company, however, reserves the right to approve the budget.

(DefPolicy 2005-100104)

vii.    A statement of any other relevant facts and circumstances relating to each patent, trademark, trade dress, copyright or CIVIL or INJUNCTIVE PROCEEDING;

viii.   A photostatic copy of the complete prosecution file maintained by the U.S. Patent & Trademark Office and any summary or brief history of such file prepared by or on behalf of the Insured relating to each patent or trademark if applicable.

2.    The Company will only accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT commenced no sooner than ninety (90) days after the beginning of the POLICY PERIOD, and thereafter until the expiration of the Policy or, unless this Policy has been renewed or terminated, on CIVIL PROCEEDINGS alleging INFRINGEMENT commenced within ninety (90) days after the expiration of the Policy.

3.    The Company shall promptly acknowledge receipt of all material submitted under Paragraph A.1. of this Article IV. The Company will, except as set forth in Paragraph A.4. below, as soon as practicable, after receipt of all material required under Paragraph A.1. of this Article IV, give its decision in writing on authorization of the CIVIL or INJUNCTIVE PROCEEDING in whole or in part to the Named Insured whereupon, if authorized, such authorized whole or part shall become COVERED LITIGATION. The Company's approval must be obtained in writing concerning the selection of litigation counsel and the budget for LITIGATION EXPENSE.

4.    The Company may deny authorization of a CLAIM only under the following circumstances:

a.    Fraud or material misrepresentation by the Named Insured.

b.    Inability of the Named Insured to supply an opinion of noninfringement from the independent outside counsel concerning validity and/or INFRINGEMENT as required in IV.A.1.b.i. above.

c.    Disapproval by the Company of the litigation counsel, or the budget for LITIGATION EXPENSE. In the event of such disapproval, the choice of counsel and/or the budget, may be submitted to arbitration as provided in IV.E. below. The decision of the arbitrator as to appropriateness of counsel and/or reasonableness of the budget shall be binding on both parties.

d.    The CLAIM is not covered by the terms and conditions of this Policy.

5.    The Insured must notify the party(s) bringing the COVERED LITIGATION within sixty (60) days after authorization of a CLAIM that the MANUFACTURED PRODUCTS being charged with INFRINGEMENT are Insured under an Infringement Defense Cost and Damages Reimbursement Insurance Policy, unless such notice is waived in writing by the Company.

6.    The Company reserves the right to investigate the facts and circumstances surrounding Named Insured's CLAIM prior to and after authorization has been given by the Company. If authorization of a CLAIM has been given, the Company reserves the right to investigate the facts and circumstances surrounding Named Insured's CLAIM, should the need arise, but only with the knowledge of the Named Insured and his litigation counsel.

B.    **Claims Made and Reported Coverage with Extended Reporting Period**

1.    This is a claims made and reported policy. A CLAIM, on the appropriate Claim Form, must be reported to and received by the Company within the same POLICY PERIOD in

which the CIVIL PROCEEDING giving rise to the CLAIM incepted for that CIVIL PROCEEDING to be considered for COVERED LITIGATION status.

2.  Notwithstanding paragraph IV.B.1. above, an Extended Reporting Period may apply, during which CLAIMS may be submitted based upon CIVIL PROCEEDINGS incepted during the POLICY PERIOD.

    a.  If the Named Insured maintains coverage with the Company immediately subsequent to the Expiration Date shown on the Declarations Page, or if this Policy terminates by non-renewal, or if this Policy is cancelled or terminated by the Company for any reason other than nonpayment of premium or fraud or misrepresentation, the Company will accept for consideration CLAIMS on this Policy submitted to it within sixty (60) days following the expiration of the POLICY PERIOD provided that the CIVIL PROCEEDING is incepted no earlier than ninety (90) days prior to the expiration of the POLICY PERIOD.

    b.  If this policy is cancelled by the Named Insured for any reason, or cancelled by the Company for nonpayment of premium, fraud or misrepresentation, there is no Extended Reporting Period and the Named Insured may not submit any CLAIM after the effective date of cancellation.

3.  Compliance with the requirements for submission of a CLAIM in this Section is a strict condition precedent to coverage under the Policy. Any CLAIM submitted during an Extended Reporting Period is governed by this Policy, and any LIMITS OF LIABILITY applicable to such CLAIM will be a part of and not in addition to the LIMITS OF LIABILITY set forth on the Declarations Page of this Policy.

**C.  Company's Right To Assume Named Insured's Defense**

1.  The Company shall have the right but not the duty to assume the defense of any COVERED LITIGATION against the Named Insured and, in such event, the Named Insured shall provide the Company with full cooperation and such information as the Company shall reasonably require. In the event the Company does not assume the defense of the Named Insured, the Company shall, nevertheless, have the right to effectively associate with the Named Insured in the defense and settlement of any matter that appears reasonably likely to involve the Company, including, but not limited to, exercising the right to effectively and meaningfully associate in the negotiation of a settlement and having its attorney made of record in the COVERED LITIGATION.

2.  The Company shall have no obligation to reimburse the Named Insured for LITIGATION EXPENSES or to continue the defense (if the Company has assumed the defense) of the Named Insured after the then remaining applicable limit of indemnity in Item 4 of the Declarations Page has been exhausted.

3.  The Named Insured shall not admit liability for or settle any COVERED LITIGATION, stipulate to any judgment without the Company's prior written consent, which consent shall not be unreasonably withheld.

4.  If the Named Insured refuses or fails, within 30 days of mailing or delivering to the Named Insured a written recommendation from the Company, to consent to any settlement of COVERED LITIGATION within the policy limits recommended by the Company and acceptable to the claimant and such failure or refusal disadvantages or prejudices the Company, then:

(DefPolicy 2005-100104)

a. The Company may withdraw from the defense of the Named Insured (if it has assumed the defense) by tendering control of the defense to the Named Insured, but irrespective thereof the Named Insured shall thereafter, at its own expense, negotiate or defend such COVERED LITIGATION independently of the Company; and

b. The Company's liability shall not exceed the smaller of (i) the then remaining applicable limit of indemnity, or (ii) the amount for which the COVERED LITIGATION could have been settled if such recommendation had been consented to, plus LITIGATION EXPENSES incurred by the Company, and LITIGATION EXPENSES incurred by the Named Insured prior to the date of such refusal.

D. **False and Fraudulent Claims**

If the Named Insured shall submit any CLAIM knowing the same to be false or fraudulent, this Policy shall become void and all insurance hereunder shall be forfeited and all LITIGATION EXPENSES incurred or reimbursed by the Company shall be returned.

E. **Delayed Claims**

After a period of one year from the expiration of the Policy the Company will not reimburse LITIGATION EXPENSES or DAMAGES arising from any unauthorized, but not withdrawn or denied CLAIM (i.e. delayed CLAIM) in existence at the expiration of the Policy irrespective of the reasons for such delay and regardless of blame or fault.

F. **Cooperation of Named Insured**

Throughout the course of any COVERED LITIGATION, the Named Insured shall fully cooperate with the Company in providing full information concerning the conduct of COVERED LITIGATION, including the selection and briefing of counsel, choice of forum, if any, the general and specific conduct of COVERED LITIGATION, and any in or out of court settlement negotiations. Named Insured shall cooperate with Company in providing other documents and material as Company may request from time to time.

G. **Arbitration and Choice of Law**

1. This Policy shall be interpreted according to the law of the state and federal judicial district of New York notwithstanding any rules for conflict of laws of that jurisdiction.

2. Any dispute between the Named Insured and the Company arising out of this Policy shall be promptly referred to Arbitration for final determination. Such arbitration shall be held in New York unless waived by both parties.

3. No arbitration under this policy upon any CLAIM or any other action relating to any CLAIM shall be sustainable unless all the requirements of this Policy shall have been complied with, and unless commenced within twelve months after the Company's authorization or denial of such CLAIM or part thereof.

4. Matters referred to Arbitration under this policy shall be heard by a single Arbitrator which shall be selected by the Company and the Named Insured from an arbitration service mutually agreed upon by the parties. In the event the Company and the Named Insured are unable to agree upon an arbitration service or choice of Arbitrator, the arbitration service or Arbitrator will be selected by the Federal District Court having jurisdiction to hear allegations of INFRINGEMENT in the underlying CIVIL PROCEEDING.

5. For any dispute arising out of Section IV, Part A of this Policy, the Arbitrator shall be admitted to practice before the US Patent & Trademark Office. The Arbitrator shall

-16-

apply the Federal Rules of Evidence which Rules may be modified by agreement of the parties. The proceedings shall be informal.

6. The decision, in writing, of the Arbitrator, when filed with the parties, shall be final and binding on both parties. The Arbitrator must follow the law of the state and federal judicial district of New York notwithstanding any rules for conflict of laws of that jurisdiction. Judgment upon the Arbitration award may be entered in any court having jurisdiction. However, the Arbitrator may not make binding decisions concerning the validity of a patent, trademark or copyright, or the INFRINGEMENT thereof.

7. The cost of Arbitration shall be shared equally between the Named Insured and the Company including filing fees, costs and Arbitrator's charges.

H. **Recovery of Costs**
In the event that any COVERED LITIGATION results in the Named Insured receiving:
1. RECOVERED COSTS, such recovery shall be shared between the Company and the Named Insured pro rata in proportion to their respective contributions to LITIGATION EXPENSE; and/or
2. an award, if any, of court costs and/or attorneys' fees, the same shall be shared between the Company and the Named Insured pro rata in proportion to their respective contributions to LITIGATION EXPENSE; provided that, in no event shall the Company be entitled to recover, under the above Provision 1 and this Provision 2 combined, a sum greater than the total of all its reimbursements in respect to the COVERED LITIGATION.

I. **Subrogation**
In the event of any payment under this Policy, the Company shall be subrogated to all of any Named Insured's rights of recovery therefor against any person or organization, and such Named Insured shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights for the Company. The Named Insured shall do nothing to prejudice such rights either before or after a CLAIM. Any amount recovered in excess of the Company's total payment shall be restored to the Named Insured, less the cost to the Company of recovery.

J. **Termination of Coverage**
1. Cancellation by Named Insured:
This Policy may be cancelled at any time by Named Insured upon prior written notice to the Company stating the effective date of cancellation and return of the Policy to the Company.

2. Cancellation by the Company
This Policy may be cancelled by the Company at any time by the giving of not less than thirty (30) days' written notice to the Named Insured at the last known address; provided, however, that not less than ten (10) days' written notice shall be given for non-payment of premium.

3. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

4. If the Company cancels, earned premium shall be computed pro rata. If the Named Insured cancels, earned premium shall be computed in accordance with customary short rate tables and procedures.

-17- (DefPolicy 2005-100104)

20.     In the event that this Policy expires or is cancelled by the Company in accordance with Item 2 of this Subsection, except for cancellation for fraud, material misrepresentation or nonpayment of premium, such cancellation or expiration shall not terminate the Company's obligation to continue to reimburse the Named Insured for LITIGATION EXPENSE and DAMAGES (if included on the Declarations Page) incurred in respect to any CLAIMS existing at the time of expiration or cancellation; moreover, such cancellation or expiration shall not affect the Company's right to recovery of costs, as provided in Section IV.F.

K.     **Minimum Earned Premium**

1.     The minimum earned premium for this policy is twenty percent (20%) of the premium stated in Item 3 of the Declarations and is not subject to short rate or pro rata adjustment in the event of cancellation by the Named Insured. In the case of multiple year policies, the minimum earned premium is twenty percent (20%) of the first year's premium.

2.     Cancellation for nonpayment of premium after the effective date of this policy shall be deemed a request by the Named Insured for cancellation of this policy, thereby activating the foregoing minimum earned premium provision.

L.     **Transfer or Assignment**
This Policy may not be transferred, sold, or assigned by the Named Insured. The Company may transfer, sell or assign this Policy only with the sale of substantially all of its assets.

M.     **Excess Insurance**

1.     The insurance provided under this Policy shall apply only as excess insurance over any other valid and collectible insurance available to the Named Insured unless such other insurance specifically applies as excess insurance over the Limits of Liability provided herein.

2.     In the event any other Insurer, including but not limited to, any Professional Liability Insurer or any General Liability Insurer, denies coverage or indemnification as the case may be for any reason whatsoever for an INFRINGEMENT which may be covered under a policy issued by such Insurer and also covered hereunder, written notice shall immediately be given by or on behalf of the Named Insured to the Company. Such notice shall contain the reason for such denial as stated by such other Insurer. As a condition precedent to making a CLAIM under this Policy, the Named Insured, upon the Company's request, shall initiate legal proceedings against said other Insurer to determine by final judgment the legality of its position. If such legal proceedings described above are unsuccessful, expense incurred by the Named Insured with the prior approval of the Company shall be considered LITIGATION EXPENSE.

N.     **Excess Indemnity**
The insurance provided under this policy shall also apply only as excess indemnification over any other indemnification available to the Named Insured from whatever source. In the event any Indemnitor denies indemnification for any reason whatsoever for an INFRINGEMENT which may be covered under an indemnification provision of an agreement between itself and Named Insured or legal obligation of indemnification for the benefit of the Named Insured including but not limited to provisions under the UCC, and also covered hereunder, written notice shall immediately be given by or on behalf of the Named Insured to the Company. Such notice shall contain the reason for such denial as stated by the Indemnitor. As a condition precedent to making a CLAIM under this policy, the Named Insured, upon the Company's request, shall initiate legal proceedings against the said Indemnitor to determine by final judgment the legality of its position.

-18-         (DefPolicy 2005-100104)

If such legal proceedings described above are unsuccessful, expense incurred by the Named Insured with prior approval of the Company shall be considered LITIGATION EXPENSE.

O.  **Conformity to Statute**

In the event that any terms of this Policy are found to be in conflict with any terms mandated by the statutes of the jurisdiction in which this Policy is issued, such terms shall be deemed to be reformed to conform with those mandatory terms. The provisions of this Policy are severable, and the voiding of any provision by operation of law shall not void the entire Policy, but only such provision or provisions.

IN WITNESS WHEREOF, the Company has caused this Policy and the forms and endorsements attached thereto to be executed according to law.

(DefPolicy 2005-100104)



**INTELLECTUAL PROPERTY**
Insurance Services Corporation

May 30, 2012

Shasta Technologies, LLC
C/O Calvin Knickerbocker
3257 Highway 128
Calistoga, CA 94515

Keith Berman
Decision Diagnostics Corp.
Pharma Tech Solutions, Inc.
PDA Services, Inc.
2660 Townsgate Road #300
Westlake Village, CA 91361

Instacare Corp
C/O Michael Belcher
2660 Townsgate Road
Suite 300
Westlake Village, CA 91361

*Via UPS and e-mail attachment*

**RE:** **Lifescan Scotland, Ltd vs. Shasta Technologies, LLC, Instacare Corp., Pharma Tech Solutions, Inc. & Conductive Technologies, Inc. Case No. 3:11 CV11-04494 MEJ**

Gentlemen:

We formally acknowledge receipt of a claim form sent by Calvin Knickerbocker on behalf of Shasta Technologies, LLC ("Shasta"), Instacare Corp. ("Instacare"), and Pharma Tech Solutions, Inc. ("PharmaTech") (collectively the "Insured Defendants") to Intellectual Property Insurance Services Corporation ("IPISC") on August 17, 2011 which requests authorization for reimbursement of LITIGATION EXPENSES arising from allegations of infringement of one or more patents by Plaintiff Lifescan Scotland, LTD. ("Lifescan").

The complaint asserts that the Defendants "offer to sell, sell, or use or threaten to offer to sell, sell or use Shasta Genstrips within the United States." The complaint also asserts "the Defendants have actively induced infringement, taken substantial steps in preparation to make Shasta Genstrips or have Shasta Genstrips made, including, but not limited to designing the Shasta Genstrip, applying for FDA approval of the Shasta Genstrip, arranging for distribution of the Shasta Genstrip, and stockpiling Shasta Genstrips in the United States for distribution upon regulatory approval." The complaint also refers to an April 18, 2011 press release by Instacare alleging that the "platform manufacturer" is Lifescan, and the "existing diagnostic provided by the platform manufacturer is the One Touch Ultra test strip".

We write on behalf of Gotham Insurance Company ("Gotham") to express its coverage position in regard to this Claim.

**HISTORY**

On April 7, 2010, Cal Knickerbocker, in his position as the "Managing Member" of Shasta, signed a Defense Infringement Insurance renewal application. Gotham issued an Intellectual Property Infringement Defense Cost Reimbursement Policy with Endorsements to Shasta, Policy No. IP 100705-D, for the Policy Period from May 20, 2010 to May 20, 2011. On September 10, 2010, at the request of Shasta and after

receiving underwriting approval, Endorsement No. IPI-DEF 843-02a, entitled "ADDITIONAL INSURED(S) was revised with "ADDITIONAL INSURED(S) – Revision 1)"(attached) which included PharmaTech and Instacare added as Additional Insured.

The policy provides for LIMITS OF LIABILITY of $2,000,000 per Claim and in the aggregate. The SELF INSURED RETENTION per Claim is $100,000 with a 10% Copayment. However, effective May 2, 2010, Endorsement # IPI-DEF 843-10B entitled SPECIAL SELF-INSURED RETENTION ENDORSEMENT FOR SELECTED COVERAGES indicates that regardless of whether the COVERED LITIGATION asserts INFRINGEMENT of other patents, if the COVERED LITIGATION also asserts INFRINGEMENT of US Patent Nos. 5,708,247 and/or 6,733,655 or any patents related to the above referenced intellectual property including, but not limited to continuations, continuations-in-part, divisionals, reissues, etc., then the Self-Insured Retention shall be that of $250,000 per CLAIM. (For reference, Defense Policy 2009-022309 with the relevant endorsements is attached to this letter.)

## THE CLAIM

The policy defines a CIVIL PROCEEDING (See DEFINITIONS II. D.) as "any legal or administrative proceeding, suit, cause of action or alternative dispute resolution proceeding or the threat thereof, including but not limited to, cease and desist letter(s) and the like, directed to or brought against the Named Insured ...".

On June 24, 2011, which was within the additional ninety (90) days after the policy expiration date, therefore during the POLICY PERIOD, (See DEFINITIONS II. T.) it was reported that you received the first letter from Lifescan that alleged it is likely the current and future activities of Shasta, Instacare, PharmaTech and the uninsured Conductive Technologies, Inc. in manufacturing, selling and offering for sale the Shasta Genstrip constitute infringement of the 247 and 862 patents.

On August 17, 2011, which was also within the POLICY PERIOD, IPISC received a completed Claim Form. The Claim Form stated that the Defendants were first noticed of the controversy and infringement allegations upon receipt of the earlier referenced June 24, 2011 letter which was sent on behalf of LifeScan. Gotham has determined that this letter, as a whole, falls under the definition of and therefore constituted a CIVIL PROCEEDING (See DEFINITIONS II. D.) where the policy provides COVERAGE for defense against the allegations. As such, the defense thereof brought after the expiration date of the policy but within the POLICY PERIOD is deemed COVERED LITIGATION if the allegations correspond to an indicated coverage.

Mr. Knickerbocker, on behalf of Shasta, requested that Rob Andris of Ropers, Majeski, Kohn, & Bentley PC be retained as pre-litigation counsel for the insured and non-insured Defendants. After investigation, Mr. Andris was authorized as lead counsel subject to the identification of an acceptable litigation team, the team's agreement and adherence to Gotham's Billing and Litigation Procedures, and the submission of a pre-litigation budget. Thereafter, IPISC was contacted by Jura Zibas of Wilson Elser Moskowitz Edelman & Dicker LLP who alleged a long term relationship with the additional insured and the knowledge of the history of this dispute. Based on those representations, Ms. Zibas was added to the proposed pre-litigation team as 2nd chair. Prior to the proposed team's authorization, Ms. Zibas contacted Mr. Andris on October 9, 2011 and stated that instead of working on the Andris litigation team, at the request of Instacare and PharmaTech, her firm was handling their defense separately.

Case No. 3:11 CV11-04494 MEJ was filed in the United States District Court for the Northern District of California, San Jose Division ("San Jose Action") on September 9, 2011 by Lifescan against Shasta, Instacare, PharmaTech, and Conductive Technologies, Inc., (Defendants). We note that Conductive Technologies, Inc. is not a Named Insured. We further note that the Complaint was not filed until after the POLICY PERIOD had expired.

Per the earlier defined CIVIL PROCEEDING, the allegations against the Insured Defendants contained in the September 9, 2011 complaint were determined to be a separate CIVIL PROCEEDING. As such, the

2

defense thereof brought after the expiration of POLICY PERIOD, is likely not within the scope of COVERED LITIGATION even if the allegations correspond to an indicated coverage.

The policy defines these actions as two separate CIVIL PROCEEDINGS, one of which was within the POLICY PERIOD and one which occurred after the expiration of the POLICY PERIOD. Nevertheless, as of this date, the carrier has decided to treat each of these 2 separate CIVIL PROCEEDING as if they were one continuing CIVIL PROCEEDING, but at the discretion of the carrier its rights are reserved to later treat these two CIVIL PROCEEDINGS as separate with authorization provided only to the non-litigation proceeding which occurred within the POLICY PERIOD.

On November 14, 2011 Michael Belcher of Hunter, Molloy & Salcido, LLP ,coverage counsel for the additionally insured Instacare and PharmaTech, contacted IPISC and demanded that Gotham recognize the Wilson Elser as their counsel whose fees should be paid by Gotham. He further stated that a defense of these parties was owed by Shasta due to an indemnification agreement which had been provided by Shasta to the Defendants.

Shasta objected to separate counsel and demanded control of the Policy and all aspects of The San Jose Action, including control of the defense of Instacare and PharmaTech.  Shasta instructed IPISC to not reimburse any Wilson Elser fees or expenses.  No separate Claim Form has been submitted by Instacare or PharmaTech.  IPISC has provided Gotham's Billing and Litigation Guidelines and attorney minimum experience requirement documents to Wilson Elser but has not yet received a response.

Count I "Declaratory Judgment Action for Infringement..." by Defendants of US Patent No. 5,708,247 ("247") entitled "Disposable Glucose Test Strips, and Methods and Compositions for Making Same" (Allegation I) alleges that the Defendants have actively induced infringement and threaten to actively induce infringement of one or more claims of the '247 patent.

Count II "Declaratory Judgment Action for Infringement..." by Defendants of US Patent No. 6,241,862 ("862") entitled "Disposable Test Strips with Integrated Reagent/Blood Separation Layer" (Allegation II) alleges that the Defendants have actively induced infringement and threaten to actively induce infringement of one or more claims of the '862 patent.

The Lifescan Complaint demanded an order that Defendants provide information and samples requested in the June 24 and July 15, 2011 letters, preliminarily and permanently enjoin the Defendants and their officers, agents, employees and all other in concert or participation with them from further acts of infringement of the patents-in-suit, an award of Lifescan's attorney fees, costs, finding of an exceptional case, and damages with interest and trebled pursuant to 35 U.S.C. § 284.

In addition to the Claim Form, Shasta also provided a copy of the prosecution history for both the 247 and 862 patents. The requirement of a Favorable Infringement Opinion was met upon review of Shasta's November 30, 2007 Freedom to Operate letter which was written by Malcolm B. Wittenberg of Dergosits & Noah LLP and submitted at the time of Shasta's application for its initial policy. Mr. Andris (Majeski Kohn) was authorized by IPISC as litigation counsel subject to his signed agreement and adherence to Gotham's Litigation Management Program Procedures and the update of his preliminary pre-litigation budget.

Gotham reserves all rights available under the policy with respect to its provisions and issues, and all rights available at law and in equity.

## COVERAGE POSITION

The Policy provides that Gotham reimburse the insured for LITIGATION EXPENSES incurred by Named Insured arising out of COVERED LITIGATION with respect to Patent INFRINGEMENT subject to the terms of the Policy. Gotham will not consider as LITIGATION EXPENSES, nor reimburse the insured, for any loss, cost, or expenses incurred in or arising out of counts of a complaint or aspects of the litigation that

have not been authorized.  Payments by any other insurer will be applied according to the portion of the claim which it covers.

COVERED LITIGATION is defined in Section II DEFINITIONS G of the policy as

<p align="center">***</p>

>  any part of a CIVIL PROCEEDING …which alleges INFRINGEMENT by the Named Insured, including INJUNCTION PROCEEDINGS; provided that the allegations of INFRINGEMENT (i.e., patent, trademark, copyright or trade dress infringement) correspond to the specifically indicated coverage on the Declarations Page.

<p align="center">***</p>

INFRINGEMENT is defined in Section II DEFINITIONS L of the policy as

<p align="center">***</p>

>  the specific allegation that the making, use, sale or offer for sale of MANUFACTURED PRODUCT(S) by the Named Insured… is unauthorized and in violation of specifically identified enforceable and valid rights of another arising from the grant by the United States Patent & Trademark Office and/or the U.S. Registrar of Copyrights…of any unexpired patent, trademark or copyright excluding rights arising under or enforceable by virtue of a Treaty with one or more foreign governments. INFRINGEMENT shall not include in its meaning inducement to infringe, but shall include contributory infringement and in the case of copyrights, vicarious infringement.

<p align="center">***</p>

Based at least upon the reasons stated above, in reliance upon the Policy, Claim Form, its supplemental materials and a Freedom to Operate opinion, as to the infringement risk associated with the manufacture and sale of generic glucose test strips designed to operate with the One Touch Ultra glucose meter, as well as your representations of additional factual considerations, the following determination was made.

1.  The alleged Patent INFRINGEMENT in Count 1 of the 247 patent is **COVERED LITIGATION** (see Policy II DEFINITIONS G. COVERED LITIGATION).

Gotham hereby **approves as AUTHORIZED LITIGATION** the Shasta action in **"Count I"** which seeks to enforce the 247 patent  "Disposable Glucose Test Strips, and Methods and Compositions for Making Same" with a reservation of rights which are covered by the policy as further set forth below.

2   The alleged Patent INFRINGEMENT in Count II of the 862 patent is **COVERED LITIGATION** (see Policy II DEFINITIONS G. COVERED LITIGATION).

Gotham hereby **approves as AUTHORIZED LITIGATION** the Shasta action in **"Count II"** which seeks to enforce the 862 patent "Disposable test strips with integrated reagent/blood separation layer"  with a reservation of rights which are covered by the policy as further set forth below.

The complaint's allegations include active inducement of one or more claims of the 247 and 862 Patents. II DEFINITIONS L. INFRINGEMENT states, "…,INFRINGEMENT shall not include in its meaning

<p align="center">4</p>

inducement to infringe..." Should it be determined that Defendants have induced infringement Gotham fully reserves its rights to decrease its authorized pro-rated percentage.

Plaintiff further alleges that Defendants' infringement of its intellectual property rights is willful. "Any loss, costs or expenses arising from... punitive, exemplary, treble or multiple damages of any kind" are excluded from coverage (See Policy Section III. EXCLUSIONS A.1.).

Until the plaintiff clarifies the allegations, we assume that only those products covered within the parameters of the SCHEDULE OF INSURED MANUFACTURED PRODUCTS are at issue in the suit. We have not been provided samples of the alleged infringing products so should it later become evident that Lifescan is alleging that products falling outside the scope of the SCHEDULE OF INSURED MANUFACTURED PRODUCTS are at issue this authorization of the CLAIM would be rescinded. Should it become clear that Lifescan is alleging that products other than those SCHEDULED have INFRINGED, Gotham fully reserves its right to retroactively and prospectively pro-rate or withdraw its Authorization as appropriate under the Policy terms.

Reimbursable authorized LITIGATION EXPENSES (II. DEFINITIONS Q.) are those which arise from defense of patent infringement allegations which have exceeded any other source of payment on behalf of the insured, including General Liability Policy responsibilities, the SELF INSURED RETENTION of $250,000 per CLAIM and subject to the 10% Coinsurance Percentage.

Referring to the Gotham policy Section IV Conditions M. Excess Insurance and N. Excess Indemnity of the insurance contract, the Gotham Policy is excess over other valid and collectible insurance, and any other source of indemnification available to the Named Insured. IPISC's current information is that no CGL or additional policy defenses apply at this time. We reserve all rights under the Policy and at law in this regard.

## CONCLUSION

Gotham will not consider as LITIGATION EXPENSES, nor reimburse the insured, for any loss, cost, or expenses incurred in or arising out of counts of a complaint or aspects of the litigation that have not been authorized. Gotham reserves all rights with respect to all provisions of the policy under law. This statement of Gotham's position is without prejudice to Gotham or its representatives, insured, additional insured or their respective representatives, or any other person. This position is based upon the information provided to date. Gotham may continue to investigate the facts and circumstances surrounding this Claim. Gotham does, as a condition of its contract with the insured, expect certain information and cooperation either directly from the Insured, Additional Insured(s) or their counsel.

If another CIVIL PROCEEDING regarding Lifescan arises within the course of this or another POLICY PERIOD, to the extent that LITIGATION EXPENSES arise therefrom, those expenses may fall within the scope of this, a single CLAIM under the above-referenced Policy.

The Company may have other defenses or arguments regarding the above issues not mentioned herein, but nevertheless reserved. There may be other reasons why coverage of specific allegations does or does not apply, not mentioned herein, including but not limited to fraud or material misrepresentation. If you believe this determination is in error, we invite you to provide additional information which you believe would weigh in favor of coverage. However, Gotham reserves the right to request further information or to raise or supplement any grounds for determining coverage under the referenced policy should grounds become known at a later time.

Please note the provisions of the policy regarding the obligation of the insured(s) and Litigating Counsel to keep Gotham, through communications with IPISC, informed of the status of the litigation. Litigating Counsel is to provide status reports to IPISC every ninety (90) days, or more frequently with regard to any significant developments.

This letter does not constitute, nor should it be construed by Defendants as a waiver of any terms or conditions of the policy, or any party's rights there under, all of which remain in full force and effect. If you have any questions regarding this determination of authorization, please let us know. Thank you for your assistance in the management of this Claim.

Sincerely,

Sandra Walker
IPISC Claims Dept.

cc: Gotham Insurance Company w/attachments

## IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this Policy for any reason please contact your agent. If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

> Gotham Insurance Company
> 919 Third Avenue, 10th Floor
> New York, NY 10022
> 1-212-551-0600

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

> California Department of Insurance
> Consumer Communications Bureau
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> 1-800-927-8291 (if calling from within the Los Angeles Area)
> 1-800-482-4833 (TDD Number)

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

**Gotham Insurance Company**
919 Third Avenue, New York, NY 10022

Endorsement No.: IPL-DEF 843-10B

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

This endorsement, effective May 5, 2010 at 12:01 a.m., Eastern Standard Time, forms a part of Policy No. _IPL0705-D_ issued to Shasta Technologies, LLC by Gotham Insurance Company. This endorsement modifies insurance provided under the following:

Infringement Defense Cost & Damages Reimbursement Insurance

### SPECIAL SELF-INSURED RETENTION ENDORSEMENT FOR SELECTED COVERAGES

If COVERED LITIGATION is brought against Named Insured for alleged INFRINGEMENT of US Patent Nos. 5,708,247 and/or 6,723,666 or any patent related to the above referenced intellectual property including but not limited to continuation, continuation-in-part, divisionals, reissues, etc. by the Insured MANUFACTURED PRODUCT(S), then irrespective of whether or not such COVERED LITIGATION included any other intellectual property assests or other counts of any nature, then Item 4., SelfIn.sured Retention listed on the Declarations page is amended to read as follows:

Self Insured Retention per CLAIM.....................................................    $250,000

Specifically, regardless of whether the COVERED LITIGATION asserts INFRINGEMENT of other patents, if the COVERED LITIGATION also asserts INFRINGEMENT of US Patent Nos. 5,708,247 and/or 6,723,666 or any patents related to the above referenced intellectual property including but not limited to continuations, continuations-in-part, divisionals, reissues, etc., then the Self-Insured Retention shall be that shown above.

All other terms & conditions of this policy remain unchanged.

_(signature)_
Authorized Representative of Insured

*Gotham Insurance Company*
*919 Third Avenue, New York, NY 10022*

## INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE - ENDORSEMENT

*Endorsement No. IPI-DEF 843-02a*

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

| POLICY NO.: | POLICY CHANGES EFFECTIVE: | COMPANY |
|---|---|---|
| IP180705-D | September 10, 2010 | Gotham Insurance Company |
| NAMED INSURED: | | AUTHORIZED REPRESENTATIVE |
| Shasta Technologies, LLC | | Shella A. VanMeter |

### ADDITIONAL INSURED(S) – Revision 1

In consideration of the premium charged, it is understood and agreed that Item 1 of the Declarations includes the following Additional Insured(s):

Broadtree, Inc.
Pharma Tech Solutions, Inc.
Instacare Corp.
Pharmatech Direct Corp.

It is further understood and agreed that coverage under this Policy for the above-identified Additional Insured(s) shall be no greater than coverage would be if such Additional Insured(s) were the first Named Insured. It is further understood and agreed that coverage under this Policy is limited solely to the Insured MANUFACTURED PRODUCTS identified in Endorsement No. IPI-DEF-843-11.

All other terms and conditions remain unchanged.

8

# INTELLECTUAL PROPERTY INSURANCE

## INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE POLICY

© (1991 - 2004) *Intellectual Property Insurance Services Corporation, Inc.*

---

THIS IS A CLAIMS MADE AND REPORTED POLICY. This Policy applies only to those CLAIMS that are made to the Company during the POLICY PERIOD for reimbursement of LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) arising out of COVERED LITIGATION. Coverage under this Policy does not include payment or reimbursement of any fines, or penalties including but not limited to punitive, exemplary, treble or multiple damages of any kind, non-pecuniary relief and taxes assessed against the Named Insured. PLEASE NOTE THIS IS A DEFENSE COST AND DAMAGES REIMBURSEMENT POLICY ONLY. UNLESS SPECIFICALLY ASSUMED BY THE COMPANY IN WRITING, THE DEFENSE OF THE NAMED INSURED IN ANY ACTION, ADMINISTRATIVE PROCEEDING(S) OR CIVIL PROCEEDING(S) OF WHATEVER NATURE IS AT ALL TIMES THE RESPONSIBILITY OF THE NAMED INSURED. Words and phrases appearing in capital letters have special meaning while the same words and phrases in lower case type have their ordinary and customary meanings; please refer to the DEFINITIONS (SECTION II) below. Please also read the Terms, Conditions, and Exclusions of this Policy carefully and discuss its coverage with your professional advisor.

The Company will only accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced no sooner than ninety (90) days after the effective date of coverage, and thereafter. Unless this Policy has been renewed or terminated, the Company will accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced within ninety (90) days after the expiration date of the Policy.

After a period of one year from the expiration of the Policy the Company will not reimburse LITIGATION EXPENSES or DAMAGES arising from any unauthorized, but not withdrawn or denied CLAIM (i.e. delayed CLAIM) in existence at the expiration of the POLICY PERIOD irrespective of the reasons for such delay and regardless of blame or fault.

NOTICE: THE LIMIT OF INDEMNITY AVAILABLE TO PAY DAMAGES (IF SUCH DAMAGES ARE DESIGNATED ON THE DECLARATIONS PAGE) SHALL BE REDUCED BY AMOUNTS REIMBURSED FOR LITIGATION EXPENSE. AMOUNTS INCURRED FOR LITIGATION EXPENSE AND DAMAGES SHALL BE APPLIED AGAINST THE SELF INSURED RETENTION AMOUNT.

(DefPolicy 2005-100104)

## I.    INSURING AGREEMENTS

### A.   Insurance Coverage

In reliance on the statements contained in any required FAVORABLE INFRINGEMENT OPINION and statements in the insurance application, which application shall include the Quotation/Acceptance Form executed by Named Insured, said application being attached hereto and made a part of this Policy, and in consideration of the payment of the premium specified on the Declarations Page hereof, the Company agrees with the Named Insured as follows:

Subject to the Copayment Percentage, Self Insured Retention per CLAIM and Limits of Reimbursement (i.e. Indemnification) of Liability (and Damages if indicated) stated on the Declarations Page for each of the patent, copyright, trademark or trade dress coverages indicated on the Declarations Page, the Company shall reimburse the Named Insured only for LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) for which the Named Insured is liable and has paid to a third party arising out of COVERED LITIGATION, even if such COVERED LITIGATION is groundless, false or fraudulent. All reimbursement of LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) payable under this Policy shall be subject to all the terms, conditions, limitations, and exclusions stated herein. Reimbursements payable under this Policy will be made based upon receipts for LITIGATION EXPENSES paid by Named Insured and submitted to the Company.

### B.   Territory

The insurance provided under this Policy applies to COVERED LITIGATION that is brought in the United States of America, its territories or possessions.

### C.   Limits of Liability

1.   Subject to the Copayment Percentage / Self Insured Retention per CLAIM shown on the Declarations Page, the Limits of Reimbursement (Indemnification) Liability and Damages (if indicated) shown on the Declarations Page is the most that the Company shall pay for reimbursement or indemnification of all LITIGATION EXPENSES and DAMAGES (if DAMAGES are designated on the Declarations Page) for:
a: any single CLAIM; or
b: all CLAIMS in the aggregate made during the POLICY PERIOD.

2.   The inclusion herein of more than one Named Insured or the making of more than one CLAIM or the bringing of more than one CIVIL PROCEEDING(S), by a single or more than one person or organization shall not operate to increase the Company's limit of liability.

3.   The Company will not be obligated to continue to reimburse the Named Insured under this Policy after the applicable limits of Reimbursement Liability (Indemnification) and Damages (if indicated) of the Company have been exhausted by reimbursement of LITIGATION EXPENSES and/or DAMAGES (if DAMAGES are designated on the Declarations Page).

### D.   Allocation

The Company shall reimburse the Named Insured only for LITIGATION EXPENSES and DAMAGES arising out of that portion of a CIVIL PROCEEDING which has been determined to be COVERED LITIGATION, and not for any other costs arising from the CIVIL PROCEEDING(S). If a CIVIL PROCEEDING includes COVERED LITIGATION and allegations that are not COVERED LITIGATION, the Policy shall conclusively allocate reimbursable LITIGATION EXPENSES and DAMAGES pro-rata as follows:

1. If the CIVIL PROCEEDING includes counts or causes of action ("Count(s)") which are not COVERED LITIGATION, reimbursable LITIGATION EXPENSES shall be determined by multiplying the reasonable and customary attorney's fees, costs and disbursements arising from the CIVIL PROCEEDING by a fraction whose numerator is the number of Counts which are COVERED LITIGATION present in the suit at the time those costs arose, and whose denominator is the total number of Counts in the CIVIL PROCEEDING at that time.

2. If a Count includes allegations of INFRINGEMENT by both insured and uninsured MANUFACTURED PRODUCTS, the reimbursable LITIGATION EXPENSES arising from that Count shall be determined  by the proportion of the insured to total MANUFACTURED PRODUCTS accused therein.

3. If a Count includes allegations that both insured-against and uninsured-against patents, trademarks, copyrights or portions thereof (including individual claims of a patent) are INFRINGED by an insured MANUFACTURED PRODUCT, the LITIGATION EXPENSES arising from that Count shall be determined by the proportion of the insured-against to total patents, trademarks, copyrights or portions thereof asserted in that Count.

4. If DAMAGES are itemized by a Court, such itemization shall determine the reimbursable portion of DAMAGES.  If DAMAGES are not itemized by a Court, the pro-rata calculation controlling LITIGATION EXPENSES shall also apply to DAMAGES.

5. The allocation(s) under each applicable subpart of this Section shall be read in conjunction with each other, and the resulting cumulative allocation shall apply to determine reimbursable LITIGATION EXPENSES and DAMAGES prior to application of any Self Insured Retention or Copayment.

E.   **Copayment Percentage**
The Named Insured shall be obligated to pay the percentage of copayment stated in Item 4 of the Declarations for all LITIGATION EXPENSES, including DEFENSE EXPENSES for INVALIDITY COUNTERCLAIM and RE-EXAMINATION PROCEEDINGS and DAMAGES, until reimbursements by the Company have reached the Limits of Reimbursement (Indemnification) Liability and Damages (if indicated) shown in the Declarations. Thereafter all LITIGATION EXPENSES and DAMAGES shall become the responsibility of the Named Insured.

F.   **The Named Insured**
1.   "Named Insured" whenever used in this Policy means:
   a.   The individual, partnership, joint venture or corporation designated in Item 1. of the Declarations Page including any partner, member, executive officer, employee or director of such designated entity solely while acting within the scope of their duties as such but only with respect to MANUFACTURED PRODUCT(S); or

   b.   Any legal representative or trustee of a Named Insured listed in Item 1 above in the event of the Named Insured's incompetency, insolvency or bankruptcy; or

   c.   Additional Insured(s) which is:
      i.   Any Third Party which an individual, partnership, joint venture or corporation designated in Item 1 of the Declarations Page has undertaken in writing, to indemnify for LITIGATION EXPENSES and/or DAMAGES arising out of patent, trademark or copyright INFRINGEMENT proceedings where such Third Party is licensed under one or more of the Named Insured's PATENTS, TRADEMARKS and/or COPYRIGHTS covering MANUFACTURED

11

PRODUCT(S); and such Third Party has manufactured, used, sold or offered for sale such MANUFACTURED PRODUCT(S) during the POLICY PERIOD, provided such Third Party and license were disclosed to the Company in the application for insurance or subsequently under this Policy and such Third party is added to this Policy as an Additional Insured by Endorsement; or,

ii. A Third Party who is a Bonafide Purchaser of MANUFACTURED PRODUCTS during the POLICY PERIOD where such purchase is governed by the Uniform Commercial Code (UCC) Section 2.312(3) or its subsequent replacement section, provided such Bonafide Purchaser is entitled to the warranty benefits under the UCC.

2. Only the first Named Insured has the right to receive notifications from the Company and control the Policy including but not limited to adding or removing insureds, canceling the Policy or agreeing to modifications to the Policy. Also, only those Named Insureds whose names actually appear in Item 1 of the Declarations Page (or their legal representatives or trustees) have the right to make CLAIMS against the Company and receive reimbursement under this Policy.

3. No person or entity is a Named Insured under this Policy with respect to the conduct of any current or past partnership or joint venture if that entity or person is not named in Item 1 of the Declarations Page of this Policy.

## II. DEFINITIONS

A. **ASBESTOS** includes but is not limited to Asbestos, Asbestos Products, Asbestos Fibers, Asbestos Particles, Asbestos Dust, or any product or goods containing Asbestos in any form.

B. **ASBESTOS LIABILITY** means any liability arising directly or indirectly from loss, injury or damage caused by the HANDLING, USE, MISUSE or EXISTENCE of ASBESTOS.

C. **BODILY INJURY** or **PROPERTY DAMAGE** includes but is not limited to (1) Bodily injury, sickness, disease, occupational disease, death, shock, disability, mental anguish, mental injury, emotional upset, asbestosis, any trauma, suffered or alleged to be suffered by any person or entity; (2) Damage to tangible or intangible property; (3) Loss of, or loss of use of, tangible or intangible property; (4) Loss of, loss of use of, or interference with property rights; (5) All forms of radioactive contamination of property.

D. **CIVIL PROCEEDING(S)** means any legal or administrative proceeding, suit, cause of action or alternative dispute resolution proceeding or the threat thereof, including but not limited to, cease and desist letter(s) and the like, directed to or brought against the Named Insured by one or more parties, where applicable, in a State Court, a Federal District Court or United States Appellate Court, or if an alternative dispute resolution, in a proper forum.

E. **CLAIM** means a demand on the Company by a Named Insured on the Company's properly completed and executed "Infringement Defense Claim" form to have a CIVIL PROCEEDING alleging INFRINGEMENT or any part thereof deemed COVERED LITIGATION and for written acknowledgement that LITIGATION EXPENSE and DAMAGES (if designated on the Declarations Page) resulting from the COVERED LITIGATION will be reimbursed under this Policy. CLAIM does not refer to the actual CIVIL PROCEEDING brought against the Named Insured.

Demands on the Company relating to CIVIL PROCEEDINGS arising out of the same act or a duplication of an act or out of a series of interrelated acts irrespective of the time period over which the

12

acts occurred shall be considered as giving rise to a single CLAIM covered by a single policy irrespective of the number of CIVIL PROCEEDING(S), Plaintiffs, Defendants, or the number of MANUFACTURED PRODUCTS, or the year or policy under which the CLAIM is made.

Two or more CLAIMS arising out of related allegations of INFRINGEMENT or any series of related allegations of INFRINGEMENT, whether those allegations assert INFRINGEMENT of single or multiple patents, copyrights or trademarks or any combination thereof, will be considered a single CLAIM. These provisions apply regardless of the number of Named Insureds, patents, copyrights, trademarks, MANUFACTURED PRODUCTS, plaintiffs, defendants, or organizations that are involved in such CIVIL PROCEEDINGS.

F.   **COPYRIGHT** means the rights in original WORKS OF AUTHORSHIP fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device as conferred by 17 USCA 106 provided such WORKS OF AUTHORSHIP have been registered by the Named Insured in the U.S. Copyright office under 17 USCA 408 or have been licensed-in by the Named Insured. The term copyright in lower case type means the rights in original WORKS OF AUTHORSHIP fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device as conferred by 17 USCA 106 provided such WORKS OF AUTHORSHIP having been licensed-in by or registered by another in the U.S. Copyright office under 17 USCA 408.

G.   **COVERED LITIGATION** means any part of a CIVIL PROCEEDING, brought during the POLICY PERIOD and reported to the Company within the POLICY PERIOD or an EXTENDED REPORTING PERIOD, in which the Named Insured is acting in a defensive or Defendant's role:

1.   Which alleges INFRINGEMENT by the Named Insured, including INJUNCTION PROCEEDINGS; or

2.   Which alleges INFRINGEMENT by the Named Insured's licensee, provided that such licensee has been added as an Additional Insured by Endorsement under this Policy; or

3.   Which alleges INFRINGEMENT to which the Named Insured is responding on behalf of an Additional Insured, pursuant to a manufacturer's warranty of non-infringement under Section 2.312(3) of the Uniform Commercial Code;

provided that the allegations of INFRINGEMENT (i.e., patent, trademark, copyright or trade dress INFRINGEMENT) correspond to an indicated coverage (i.e., patent, trademark, copyright or trade dress defense LITIGATION EXPENSE indemnification coverage) on the Declarations Page and the Company, in response to a CLAIM, has stated in writing to the Named Insured that LITIGATION EXPENSE arising from such CIVIL PROCEEDING will be reimbursed by this Policy; except:

COVERED LITIGATION does not include any CIVIL PROCEEDING brought as a counterclaim or retaliatory suit in or to a legal proceeding, suit, cause of action or alternative dispute resolution proceeding brought by the Named Insured or a third party acting in concert with the Named Insured. A suit shall be deemed to be retaliatory if it is brought within ninety (90) days of a legal proceeding, suit, cause of action or alternative dispute resolution proceeding brought by the Named Insured or a third party acting in concert with the Named Insured or the suit in question is of the same subject matter or based on the same facts or transactions as the a legal proceeding, suit, cause of action or alternative dispute resolution proceeding brought by the Named Insured or a third party acting in concert with the Named Insured.

COVERED LITIGATION does not include any legal proceeding, suit, cause of action or alternative dispute resolution (ADR) proceeding which is formally commenced more than one year after the date

13

of the Named Insured's submission of a CLAIM which legal proceeding, suit, cause of action or ADR arises out of the same act or a duplication of the same act or series of interrelated acts which is the basis for that CLAIM.

Authorization to appeal is required to be obtained by Named Insured if the Named Insured does not prevail in the COVERED LITIGATION and wishes to appeal such decision. However, authorization is not required to be obtained again by the Named Insured if the Named Insured is the prevailing party in the COVERED LITIGATION and the opposing party appeals such decision.

H. **DAMAGES** means monetary sums arising out of COVERED LITIGATION paid by the Named Insured to a claimant pursuant to either judgments, awards or settlements negotiated with the written consent of the Company, whichever is applicable, as lost profits and/or royalties for past infringement, and/or reasonable attorneys fees assessed by the Court against the Named Insured provided, however, that DAMAGES shall not include fines, penalties, (including but not limited to punitive, exemplary or multiplied damages), non-pecuniary relief and taxes assessed against the Named Insured. DAMAGES also does not include any amount for which the Named Insured is not financially liable or any amount as to which there is no legal recourse by the person who is awarded such relief against the Named Insured. Also excluded from DAMAGES is any loss, cost, expense or award arising from any such matters which are uninsurable under the law pursuant to which this Policy shall be construed.

I. **DEFENSE EXPENSES** means sums of money which the Named Insured shall have paid upon incurring as reasonable and customary attorney's fees, costs, and disbursements, including, but not limited to, court costs, costs of depositions, transcripts, fees and expenses of expert witnesses, appeals authorized under this Policy, but only to the extent that those sums arise out of COVERED LITIGATION.

DEFENSE EXPENSES includes the actual costs and expenses incurred in asserting any INVALIDITY COUNTERCLAIM or initiating any RE-EXAMINATION PROCEEDING which is a direct consequence of COVERED LITIGATION. DEFENSE EXPENSES shall further include: expenses incurred by the Company in any COVERED LITIGATION defended by the Company; costs levied against the Named Insured in any such COVERED LITIGATION defended by the Company; premiums on appeal bonds and bonds to release attachments, to the extent that the face amount of such bonds do not exceed the Company's then remaining applicable limit of indemnity and are required in any COVERED LITIGATION defended by the Company, provided however, neither this provision nor any other in this policy shall be construed as requiring the Company to defend any Named Insured, commence or prosecute any appeal or to apply for or furnish any bonds.

Expenses incurred in obtaining a FAVORABLE INFRINGEMENT OPINION are not included in DEFENSE EXPENSES. Also not included in DEFENSE EXPENSES are loss of earnings, expenses and costs incurred by the Named Insured for salaries and expenses of its officers, staff, in-house attorneys, directors, employees (and outside attorneys or consultants functioning in the capacity of any of the foregoing).

All DEFENSE EXPENSES shall consume and not be in addition to the limits set forth in Item 4 of the Declarations Page.

J. **FAVORABLE INFRINGEMENT OPINION** means an opinion by an intellectual property attorney who is selected by the Named Insured, approved by the Company and compensated by the Named Insured, or who is selected and compensated by the Company under Section IV.A.1.b.i. of this Policy, which opines that more likely than not a properly advised trier of fact or law or both would conclude that there is no INFRINGEMENT of any unexpired U.S. patent, trademark or copyright vis-à-vis a MANUFACTURED PRODUCT based upon a search of the records and prior art compiled in the United States Patent & Trademark Office or Copyright Office which opinion has been accepted by the Company applying reasonable standards.

14

K. **HANDLING, USE, MISUSE,** or **EXISTENCE** includes, but is not limited to, the manufacture, mining, use, sale, installation, distribution, removal, encapsulation, transportation, or presence of ASBESTOS. It includes the inspection for and exposure to ASBESTOS. It includes the failure to perform, or inadequate performance in said HANDLING, USE, MISUSE or EXISTENCE.

L. **INFRINGEMENT** means the specific allegation that the making, use, sale or offer for sale of particularly identified MANUFACTURED PRODUCT(S) by the Named Insured, within the United States of America, its territories or possessions during the POLICY PERIOD is unauthorized and in violation of specifically identified enforceable and valid rights of another arising from the grant by the United States Patent & Trademark Office and/or the U.S. Registrar of Copyrights of any unexpired patent, trademark or copyright excluding rights arising under or enforceable by virtue of a Treaty with one or more foreign governments. INFRINGEMENT shall not include in its meaning inducement to infringe, but shall include contributory infringement and in the case of copyrights, vicarious infringement.

M. **INJUNCTION EXPENSE(S)** means sums of money which the Named Insured shall have paid upon incurring as reasonable and customary attorney's fees, costs and disbursements including but not limited to, court costs, costs of depositions, transcripts, fees and expenses of expert witnesses, appeals authorized under this Policy, but only to the extent those sums arise out of an INJUNCTION PROCEEDING(S), and only if such INJUNCTION PROCEEDING is brought during the POLICY PERIOD and is solely in respect to the regular, ordinary and usual course of the business of the Named Insured as that business existed on the first date of the POLICY PERIOD and as described in the application for insurance attached hereto and made a part hereof.

INJUNCTION EXPENSES shall further include:

Expenses incurred by the Company in any INJUNCTION PROCEEDING defended by the Company;

Costs levied against the Named Insured in any such INJUNCTION PROCEEDING defended by the Company;

Premiums on appeal bonds and bonds to release attachments, to the extent that the face amount of such bonds do not exceed the Company's then remaining applicable limit of indemnity and are required in any INJUNCTION PROCEEDING defended by the Company, provided however, neither this provision nor any other in this policy shall be construed as requiring the Company to defend any Named Insured, commence or prosecute any appeal or to apply for or furnish any bonds.

Not included in INJUNCTION EXPENSES are loss of earnings, expenses and costs incurred by the Named Insured for salaries and expenses of its officers, staff, in-house attorneys, directors, employees (and outside attorneys or consultants functioning in the capacity of any of the foregoing).

All INJUNCTION EXPENSES shall consume and not be in addition to the limits set forth in Item 4 of the Declarations Page.

N. **INJUNCTION PROCEEDING(S)** means any CIVIL PROCEEDING brought during the POLICY PERIOD alleging INFRINGEMENT against the Named Insured and thereby seeking to limit or cease Named Insured's specific activities with regard to MANUFACTURED PRODUCTS on the ground that the activities result in INFRINGEMENT, and which could result in a legally enforceable order against the Named Insured to limit or cease the specific activities in question.

O. **INVALIDITY COUNTERCLAIM** means any legal action taken by the Named Insured in the course of and as part of COVERED LITIGATION which seeks invalidation of a copyright, a trademark or one or more claims of a patent under which INFRINGEMENT is being asserted.

15

P. **LIMIT(S) OF LIABILITY** means the maximum amount the Company will reimburse (indemnify) for LITIGATION EXPENSES and/or DAMAGES, either for each CLAIM or in the aggregate under the Policy for CLAIMS authorized by the Company as indicated on the Declarations Page and as set forth in Section I.C.

Q. **LITIGATION EXPENSES** (INCLUDED IN THE LIMITS OF REIMBURSEMENT (Indemnification) LIABILITY and DAMAGES ( if indicated)) means:
        1. DEFENSE EXPENSES and/or
        2. INJUNCTION EXPENSES and/or
Costs and expenses of any unsuccessful pursuit of any other Insurer or Indemnitor, which the Company has required (requested) under Section IV. M. of this Policy on Excess Insurance or under Section IV. N. on Excess Indemnity.

R. **MANUFACTURED PRODUCT(S)** means any COPYRIGHT, TRADEMARK, TRADE DRESS, WORK OF AUTHORSHIP, word, slogan, symbol, design, process, machine, article of manufacture or composition of matter specifically enumerated on the Declarations Page of this Policy which is reproduced, applied or manufactured in the United States or abroad by or for a Named Insured during the POLICY PERIOD and used, sold or offered for sale by or for the Named Insured in the United States during the POLICY PERIOD.

S. **PATENT** means any unexpired U.S. Patent of the Named Insured. The term patent in lower case type shall mean any U.S. patent of another.

T. **POLICY PERIOD** means the period from the Effective Date shown in Item 2 of the Declarations Page of this Policy to the expiration date shown in that Item; or in the case of an expiration due to nonrenewal, or cancellation or termination by the Company for any reason other than fraud, material misrepresentation or nonpayment of premium, for an additional period of ninety (90) days after such expiration date; or in the case of cancellation or termination by an Insured, or cancellation by the Company for reasons of fraud, material misrepresentation or nonpayment of premium, as of the Effective Date of cancellation or termination of this Policy.

U. **RECOVERED COSTS** means any monies received by the Named Insured by way of penalty, indemnification (other than by this policy), or punitive award, or the like, arising in connection with a COVERED LITIGATION.

V. **RE-EXAMINATION PROCEEDING** means a proceeding brought in the United States Patent and Trademark Office requesting re-examination of one or more claims of a patent under which claim(s), INFRINGEMENT is being asserted.

W. **SELF INSURED RETENTION** means the amount of unreimbursed LITIGATION EXPENSES and/or DAMAGES for each CLAIM that the Named Insured shall be obligated to pay before the Company shall reimburse any CLAIM amounts. The Self Insured Retention is measured by the amounts that would otherwise be LITIGATION EXPENSES and/or DAMAGES, but shall not reduce the Limits of Liability.

X. **TRADE DRESS** means the appearance and image of a MANUFACTURED PRODUCT of the Named Insured taken as a whole, including but not limited to the features of size, texture, shape, color or color combinations and graphics. TRADE DRESS does not include the particular advertising or marketing techniques used to promote the product's sale. The term trade dress in lower case type means the appearance and image of the manufactured product of another taken as a whole, including but not limited to the features of size, texture, shape, color or color combinations and graphics. It does not include the particular advertising or marketing techniques used to promote the manufactured products of that other.

16

Y. **TRADEMARK** means a word, slogan, design or other symbol used to identify and distinguish goods or services which is licensed-in by or registered by the Named Insured, under state or federal law, as a trademark, service mark, collective mark, certification mark or TRADE DRESS. The term trademark in lower case type means a word, slogan, design or other symbol used to identify and distinguish goods or services which is registered by or licensed-in by another, under state or federal law, as a trademark, service mark, collective mark, certification mark or trade dress. Federally Registered Mark(s) is any TRADEMARK/trademark which is registered on the Principal Trademark Register pursuant to 15 USC 1051(a). Federally Registered Marks shall also include any TRADEMARK/trademark registered on the Supplemental Register pursuant to 15 USC 1091.

Z. **WILLFUL INFRINGEMENT** means a specific determination by the Federal District court(s) and/or administrative tribunal(s) in which the CIVIL PROCEEDING was heard that regarding the Named Insured's INFRINGEMENT of the patent, copyright or trademark in question was "willful" or that the Named Insured proceeded in a deliberate fashion in disregard of the intellectual property of others. Notwithstanding the determination of such court(s) or tribunal(s), such INFRINGEMENT will not be considered WILLFUL INFRINGEMENT under this Policy where the Named Insured has first obtained a FAVORABLE INFRINGEMENT OPINION with respect to the insured MANUFACTURED PRODUCT which actually discusses the patent, copyright or trademark under which INFRINGEMENT was found.

AA. **WORK(S) OF AUTHORSHIP** shall include the following:

    1. Literary Works; and/or
    2. Musical works, including any accompanying words; and/or
    3. Dramatic works, including any accompanying music; and/or
    4. Pantomimes and choreographic works; and/or
    5. Pictorial, graphic and sculptural works; and/or
    6. Motion pictures and other audiovisual works; and/or
    7. Sound recordings; and/or
    8. Architectural works; and/or
    9. Computer programs.

## III.   EXCLUSIONS

A. Coverage under this policy does not include reimbursement of:

1.   Any loss, costs or expenses arising from any liability of the Named Insured for fines, or penalties, including but not limited to punitive, exemplary, treble, or multiple damages of any kind.

2.   Any loss, costs or expenses arising from BODILY INJURY or PROPERTY DAMAGE.

3.   Any loss, costs or expenses arising from any litigation, adjudicatory action or CIVIL PROCEEDING, or part thereof, other than COVERED LITIGATION.

4.   Any loss, costs or expenses arising from any CLAIM not submitted to the Company during the POLICY PERIOD or any Extended Reporting Period under Section IV.B. of this Policy.

5.   Any loss, costs, expenses or professional fees arising from or incurred by the Named Insured prior to the commencement of the COVERED LITIGATION.

6. Any LITIGATION EXPENSE or DAMAGES arising out of a CIVIL PROCEEDING where such CIVIL PROCEEDING was commenced, served or delivered prior to the beginning of the POLICY PERIOD and whether or not the pleadings of such CIVIL PROCEEDING (if any) are amended subsequent to the beginning of the POLICY PERIOD to allege INFRINGEMENT.

7. Any loss, costs or expenses arising from or incurred by the Named Insured for salaries, expenses and/or fees of its officers, staff, in-house attorneys, directors, and employees and outside attorneys or consultants functioning in the capacity of any of the foregoing.

8. Any loss, costs or expenses arising from the defense of, or any liability arising from, any criminal act or omission of Named Insured.

9. Any loss, costs or expenses arising from WILLFUL INFRINGEMENT.

10. Any loss, costs or expenses arising from a CIVIL PROCEEDING alleging INFRINGEMENT where the/a Named Insured or any of the Named Insured's officers, directors, employees, licensees, assignees, lessees, transferees, agents, sales agents, distributors, affiliates, parents, subsidiaries, predecessors or successors in interest (collectively, "Commercially Related Party/Parties") had knowledge prior to the Effective Date of this Policy of any patents, trademarks, copyrights, or applications for patents or trademarks or copyrights which are or could be the basis for the allegation of INFRINGEMENT other than those disclosed to the Company and discussed or noted in a FAVORABLE INFRINGEMENT OPINION or where the/a Named Insured or a Commercially Related Party knew or reasonably should have known that the manufacture, use, sale, offer for sale, application or reproduction of a MANUFACTURED PRODUCT(S) would result in the Named Insured being charged with INFRINGEMENT.

11. Any loss, costs or expenses incurred in or arising out of the defense of any allegations of anti-trust or anti-competitive conduct or unfair trade practices.

12. Any loss, costs or expenses arising from any Declaratory Actions of any nature whether Named Insured is Plaintiff or Defendant.

13. Any loss, costs or expenses arising from any Administrative Proceeding of any nature including but not limited to International Trade Commission Proceedings, except RE-EXAMINATION PROCEEDINGS.

14. Any loss, costs or expenses arising out of allegations of INFRINGEMENT by a MANUFACTURED PRODUCT(S) which is the same as or substantially similar to a WORK OF AUTHORSHIP, word, slogan, symbol, design, TRADEMARK, COPYRIGHT, process, machine, article of manufacture or composition of matter specified on the Declarations page of this policy produced within the three years preceding the Effective Date of this Policy by any former employer of a Named Insured.

15. LITIGATION EXPENSES or DAMAGES arising from any COVERED LITIGATION in which the Named Insured or any parent, subsidiary or affiliate of a Named Insured or any officer, director, employee or holder of more than five percent (5%) of the stock of any of the foregoing has any direct or indirect interest in any recoveries, injunctions or the like arising from such COVERED LITIGATION.

16. Any loss, costs or expenses based upon or arising out of any circumstances or activities of which a Named Insured or any of the Named Insured's officers, directors, employees,

18

licensees, assignees, lessees, transferees, agents, sales agents, distributors, affiliates, parents, subsidiaries, predecessors or successors in interest suspects or has knowledge, at a time prior to the Effective Date of this Policy is/are likely to give rise to a CLAIM. This exclusion includes, but is not limited to, any prior CIVIL PROCEEDING or possible CIVIL PROCEEDING, activity or circumstance whether or not referenced in the Named Insured's Application for this Policy.

17. Any loss, costs and expenses based upon or arising out of any CIVIL PROCEEDING(S) if, on the Effective Date of this Policy, Named Insured had/has any knowledge of any event or circumstance which he knows (or could reasonably believe) may result in such CIVIL PROCEEDING alleging INFRINGEMENT, irrespective of when such CIVIL PROCEEDING is/was actually initiated.

18. Any loss, costs or expenses including but not limited to LITIGATION EXPENSES or DAMAGES based upon or arising out of any CIVIL PROCEEDING alleging INFRINGEMENT by virtue of any party's breach or termination of any contract, license or agreement or suspension of performance thereunder or the expiration of the contract, license or agreement.

19. Any loss, costs or expenses relating to circumstances involving fraud, material misrepresentation or omission by the Named Insured.

20. Any loss, costs or expenses arising from any CLAIM made by any Named Insured under this Policy against any other Named Insured under this Policy.

21. Any loss, cost or expenses based upon or arising out of discrimination by a Named Insured on the basis of race, creed, national origin, disability, age or sex, or sexual preference.Any loss, cost or expenses based upon or arising out of the actual or threatened, discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether below or above ground. The intent and effect of this exclusion is to delete from any and all coverage afforded by this Policy any claim, judgment, liability, settlement, defense or expenses (including any loss, cost or expense arising out of any government cost, or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the Insured's activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and wherever such occurs.

22. Any loss, cost or expenses arising out of BODILY INJURY or PROPERTY DAMAGE as it relates to Nuclear Energy:

a. With respect to which a Named Insured is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be a Named Insured under any such policy but for its termination upon exhaustion of its limit of liability; or resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Named Insured is, or had this policy

19

not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b.  resulting from the "hazardous properties" of "nuclear material" if:

(1) the "nuclear material" (a) is at any "nuclear facility" owned by the Named Insured or operated by the Named Insured or on the Named Insured's behalf, or (b) has been discharged or dispersed therefrom;

(2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by the Named Insured or on the Named Insured's behalf; or

(3) the BODILY INJURY or PROPERTY DAMAGE arises out of the furnishing by a Named Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion applies only to PROPERTY DAMAGE to such "nuclear facility" and any property thereat.

c.  as used in this exclusion:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means source material, special "nuclear material" or by product material;

"source material", special "nuclear material" and by-"product material" have the meanings given them by the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization and of a "nuclear facility" included under the first two paragraphs within the definition of "nuclear facility" below;

"nuclear facility" means:

1.  any "nuclear reactor";

2.  any equipment or device designed or used for (a) separating isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "wastes."

3.  any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the Named Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4.      any structure, basin, excavation, premises or place prepared or used for storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

23.   ASBESTOS Exclusion:

a.      This insurance does not apply to ASBESTOS LIABILITY. This Policy does not cover any obligation on Named Insured's part to indemnify any party for ASBESTOS LIABILITY; or, to indemnify any ASBESTOS LIABILITY assumed under contract;

b.      nor does it apply to any loss, claim or suit directly or indirectly resulting from, caused by or alleged to be caused by, ASBESTOS or ASBESTOS LIABILITY;

c.      Further, there is no obligation or duty on Company's part to investigate or indemnify CLAIMS or suits relating to ASBESTOS LIABILITY.

## IV.   CONDITIONS

A. Company's Authorization of a CIVIL PROCEEDING to establish COVERED LITIGATION

1.   As a condition precedent to the Company's review of the Named Insured's CLAIM, the Named Insured shall:

a.      Submit to the Company in writing a properly completed and executed "Infringement Defense Claim" form provided by the Company. The CLAIM shall include the MANUFACTURED PRODUCTS involved, a brief statement of the nature of the action brought against the Named Insured including the patents, copyrights, trademarks and/or trade dress alleged to be INFRINGED and the expected result; an explanation of how and when the alleged INFRINGING acts occurred and when the possibility of being involved in a CIVIL PROCEEDING was first discovered by the Named Insured; and a projection quantifying the negative impact to the Named Insured if the CIVIL PROCEEDING alleging INFRINGEMENT is successful.

b.      Supply to the Company, no later than sixty (60) days from the date of the initial request for authorization, or any extension of time granted by the Company, the following:

i.      A current FAVORABLE INFRINGEMENT OPINION letter written to the standards of the profession which sets forth the relevant claim, claims or protected rights of the patent, trademark, or copyright alleged to be INFRINGED and rendering an opinion of noninfringement favorable to the Named Insured. Such FAVORABLE INFRINGEMENT OPINION letter must be signed by independent, outside counsel selected from a list of firms, such list of firms provided by the Company, who will not be selected as litigation counsel and whose opinion was not considered by

21

the Company when issuing this or a previous Policy for the Named Insured. Such FAVORABLE INFRINGEMENT OPINION letter must be obtained at the Named Insured's expense, or may at the Company's sole discretion be obtained from counsel selected and paid for by the Company. Regardless of the source of payment or choosing party, the Named Insured and the Company shall be joint clients of the opining counsel. The opinion letter should discuss validity of the patent, trademark, or copyright, the INFRINGEMENT thereof by the accused, insured MANUFATURED PRODUCTS, and should conclude either there is no INFRINGEMENT, or the patent, trademark, or copyright is invalid, or there is no right of trade dress if trade dress is an issue;

ii.    A description of the Named Insured's MANUFACTURED PRODUCT(S), including TRADEMARKS, TRADE DRESS and/or COPYRIGHTS and the trademark, trade dress, copyright or in the case of a patent the claims which are alleged to be INFRINGED and whether the INFRINGEMENT is in the manufacture, sale, offer for sale, application, reproduction or use of the MANUFACTURED PRODUCT(S) or which, if any, combination thereof;

iii.    Identification of the Plaintiff, together with all information Named Insured may have concerning such Plaintiff including a credit report, if available;

iv.    Identification of the Federal District court(s) having jurisdiction over the CIVIL PROCEEDING;

v.    The Named Insured's preference for litigation counsel, who shall not have been prosecuting counsel for any intellectual property involved in the CIVIL PROCEEDING, nor whose opinion was considered by the Company when issuing this or a previous Policy for the Named Insured or as a FAVORABLE INFRINGEMENT OPINION, nor who may act as coverage counsel for the Named Insured regarding this Policy, provided that such counsel must be admitted to practice and a member in good standing in at least one state or Federal judicial district. The Company reserves the right to approve or disapprove counsel at its sole discretion.

vi.    A budget projection for LITIGATION EXPENSE, including, but not limited to, proposed attorney's fee arrangements, and estimated costs and expenses for expert witnesses, collection of evidence and items of proof, depositions, interrogatories, and discovery. The Company, however, reserves the right to approve the budget.

vii.    A statement of any other relevant facts and circumstances relating to each patent, trademark, trade dress, copyright or CIVIL or INJUNCTIVE PROCEEDING;

viii.    A photostatic copy of the complete prosecution file maintained by the U.S. Patent & Trademark Office and any summary or brief history of such file prepared by or on behalf of the Insured relating to each patent or trademark if applicable.

22

2.  The Company will only accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT commenced no sooner than ninety (90) days after the beginning of the POLICY PERIOD, and thereafter until the expiration of the Policy or, unless this Policy has been renewed or terminated, on CIVIL PROCEEDINGS alleging INFRINGEMENT commenced within ninety (90) days after the expiration of the Policy.

3.  The Company shall promptly acknowledge receipt of all material submitted under Paragraph A.1. of this Article IV. The Company will, except as set forth in Paragraph A.4. below, as soon as practicable, after receipt of all material required under Paragraph A.1. of this Article IV, give its decision in writing on authorization of the CIVIL or INJUNCTIVE PROCEEDING in whole or in part to the Named Insured whereupon, if authorized, such authorized whole or part shall become COVERED LITIGATION. The Company's approval must be obtained in writing concerning the selection of litigation counsel and the budget for LITIGATION EXPENSE.

4.  The Company may deny authorization of a CLAIM only under the following circumstances:
    a.  Fraud or material misrepresentation by the Named Insured.
    b.  Inability of the Named Insured to supply an opinion of noninfringement from the independent outside counsel concerning validity and/or INFRINGEMENT as required in IV.A.1.b.i. above.
    c.  Disapproval by the Company of the litigation counsel, or the budget for LITIGATION EXPENSE. In the event of such disapproval, the choice of counsel and/or the budget, may be submitted to arbitration as provided in IV.E. below. The decision of the arbitrator as to appropriateness of counsel and/or reasonableness of the budget shall be binding on both parties.
    d.  The CLAIM is not covered by the terms and conditions of this Policy.

5.  The Insured must notify the party(s) bringing the COVERED LITIGATION within sixty (60) days after authorization of a CLAIM that the MANUFACTURED PRODUCTS being charged with INFRINGEMENT are Insured under an Infringement Defense Cost and Damages Reimbursement Insurance Policy, unless such notice is waived in writing by the Company.

6.  The Company reserves the right to investigate the facts and circumstances surrounding Named Insured's CLAIM prior to and after authorization has been given by the Company. If authorization of a CLAIM has been given, the Company reserves the right to investigate the facts and circumstances surrounding Named Insured's CLAIM, should the need arise, but only with the knowledge of the Named Insured and his litigation counsel.

B.  **Claims Made and Reported Coverage with Extended Reporting Period**
    1.  This is a claims made and reported policy. A CLAIM, on the appropriate Claim Form, must be reported to and received by the Company within the same POLICY PERIOD in which the CIVIL PROCEEDING giving rise to the CLAIM incepted for that CIVIL PROCEEDING to be considered for COVERED LITIGATION status.

23

2.   Notwithstanding paragraph IV.B.1. above, an Extended Reporting Period may apply, during which CLAIMS may be submitted based upon CIVIL PROCEEDINGS incepted during the POLICY PERIOD.

    a.   If the Named Insured maintains coverage with the Company immediately subsequent to the Expiration Date shown on the Declarations Page, or if this Policy terminates by non-renewal, or if this Policy is cancelled or terminated by the Company for any reason other than nonpayment of premium or fraud or misrepresentation, the Company will accept for consideration CLAIMS on this Policy submitted to it within sixty (60) days following the expiration of the POLICY PERIOD provided that the CIVIL PROCEEDING is incepted no earlier than ninety (90) days prior to the expiration of the POLICY PERIOD.

    b.   If this policy is cancelled by the Named Insured for any reason, or cancelled by the Company for nonpayment of premium, fraud or misrepresentation, there is no Extended Reporting Period and the Named Insured may not submit any CLAIM after the effective date of cancellation.

3.   Compliance with the requirements for submission of a CLAIM in this Section is a strict condition precedent to coverage under the Policy. Any CLAIM submitted during an Extended Reporting Period is governed by this Policy, and any LIMITS OF LIABILITY applicable to such CLAIM will be a part of and not in addition to the LIMITS OF LIABILITY set forth on the Declarations Page of this Policy.

C.   **Company's Right To Assume Named Insured's Defense**

1.   The Company shall have the right but not the duty to assume the defense of any COVERED LITIGATION against the Named Insured and, in such event, the Named Insured shall provide the Company with full cooperation and such information as the Company shall reasonably require. In the event the Company does not assume the defense of the Named Insured, the Company shall, nevertheless, have the right to effectively associate with the Named Insured in the defense and settlement of any matter that appears reasonably likely to involve the Company, including, but not limited to, exercising the right to effectively and meaningfully associate in the negotiation of a settlement and having its attorney made of record in the COVERED LITIGATION.

2.   The Company shall have no obligation to reimburse the Named Insured for LITIGATION EXPENSES or to continue the defense (if the Company has assumed the defense) of the Named Insured after the then remaining applicable limit of indemnity in Item 4 of the Declarations Page has been exhausted.

3.   The Named Insured shall not admit liability for or settle any COVERED LITIGATION, stipulate to any judgment without the Company's prior written consent, which consent shall not be unreasonably withheld.

4.   If the Named Insured refuses or fails, within 30 days of mailing or delivering to the Named Insured a written recommendation from the Company, to consent to any settlement of COVERED LITIGATION within the policy limits recommended by the Company and acceptable to the claimant and such failure or refusal disadvantages or prejudices the Company, then:

24

a. The Company may withdraw from the defense of the Named Insured (if it has assumed the defense) by tendering control of the defense to the Named Insured, but irrespective thereof the Named Insured shall thereafter, at its own expense, negotiate or defend such COVERED LITIGATION independently of the Company; and

b. The Company's liability shall not exceed the smaller of (i) the then remaining applicable limit of indemnity, or (ii) the amount for which the COVERED LITIGATION could have been settled if such recommendation had been consented to, plus LITIGATION EXPENSES incurred by the Company, and LITIGATION EXPENSES incurred by the Named Insured prior to the date of such refusal.

**D.   False and Fraudulent Claims**

If the Named Insured shall submit any CLAIM knowing the same to be false or fraudulent, this Policy shall become void and all insurance hereunder shall be forfeited and all LITIGATION EXPENSES incurred or reimbursed by the Company shall be returned.

**E.   Delayed Claims**

After a period of one year from the expiration of the Policy the Company will not reimburse LITIGATION EXPENSES or DAMAGES arising from any unauthorized, but not withdrawn or denied CLAIM (i.e. delayed CLAIM) in existence at the expiration of the Policy irrespective of the reasons for such delay and regardless of blame or fault.

**F.   Cooperation of Named Insured**

Throughout the course of any COVERED LITIGATION, the Named Insured shall fully cooperate with the Company in providing full information concerning the conduct of COVERED LITIGATION, including the selection and briefing of counsel, choice of forum, if any, the general and specific conduct of COVERED LITIGATION, and any in or out of court settlement negotiations. Named Insured shall cooperate with Company in providing other documents and material as Company may request from time to time.

**G.   Arbitration and Choice of Law**

1.   This Policy shall be interpreted according to the law of the state and federal judicial district of New York notwithstanding any rules for conflict of laws of that jurisdiction.

2.   Any dispute between the Named Insured and the Company arising out of this Policy shall be promptly referred to Arbitration for final determination. Such arbitration shall be held in New York unless waived by both parties.

3.   No arbitration under this policy upon any CLAIM or any other action relating to any CLAIM shall be sustainable unless all the requirements of this Policy shall have been complied with, and unless commenced within twelve months after the Company's authorization or denial of such CLAIM or part thereof.

4.   Matters referred to Arbitration under this policy shall be heard by a single Arbitrator which shall be selected by the Company and the Named Insured from an arbitration service mutually agreed upon by the parties. In the event the Company and the Named Insured are unable to agree upon an arbitration service or choice of Arbitrator, the arbitration service or Arbitrator will be selected by the Federal District Court having jurisdiction to hear allegations of INFRINGEMENT in the underlying CIVIL PROCEEDING.

25

5. For any dispute arising out of Section IV, Part A of this Policy, the Arbitrator shall be admitted to practice before the US Patent & Trademark Office. The Arbitrator shall apply the Federal Rules of Evidence which Rules may be modified by agreement of the parties. The proceedings shall be informal.

6. The decision, in writing, of the Arbitrator, when filed with the parties, shall be final and binding on both parties. The Arbitrator must follow the law of the state and federal judicial district of New York notwithstanding any rules for conflict of laws of that jurisdiction. Judgment upon the Arbitration award may be entered in any court having jurisdiction. However, the Arbitrator may not make binding decisions concerning the validity of a patent, trademark or copyright, or the INFRINGEMENT thereof.

7. The cost of Arbitration shall be shared equally between the Named Insured and the Company including filing fees, costs and Arbitrator's charges.

H. **Recovery of Costs**
In the event that any COVERED LITIGATION results in the Named Insured receiving:
1. RECOVERED COSTS, such recovery shall be shared between the Company and the Named Insured pro rata in proportion to their respective contributions to LITIGATION EXPENSE; and/or
2. an award, if any, of court costs and/or attorneys' fees, the same shall be shared between the Company and the Named Insured pro rata in proportion to their respective contributions to LITIGATION EXPENSE; provided that, in no event shall the Company be entitled to recover, under the above Provision 1 and this Provision 2 combined, a sum greater than the total of all its reimbursements in respect to the COVERED LITIGATION.

I. **Subrogation**
In the event of any payment under this Policy, the Company shall be subrogated to all of any Named Insured's rights of recovery therefor against any person or organization, and such Named Insured shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights for the Company. The Named Insured shall do nothing to prejudice such rights either before or after a CLAIM. Any amount recovered in excess of the Company's total payment shall be restored to the Named Insured, less the cost to the Company of recovery.

J. **Termination of Coverage**
1. Cancellation by Named Insured:
This Policy may be cancelled at any time by Named Insured upon prior written notice to the Company stating the effective date of cancellation and return of the Policy to the Company.

2. Cancellation by the Company
This Policy may be cancelled by the Company at any time by the giving of not less than thirty (30) days' written notice to the Named Insured at the last known address; provided, however, that not less than ten (10) days' written notice shall be given for non-payment of premium.

3. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

4.    If the Company cancels, earned premium shall be computed pro rata.  If the Named Insured cancels, earned premium shall be computed in accordance with customary short rate tables and procedures.

20.   In the event that this Policy expires or is cancelled by the Company in accordance with Item 2 of this Subsection, except for cancellation for fraud, material misrepresentation or nonpayment of premium, such cancellation or expiration shall not terminate the Company's obligation to continue to reimburse the Named Insured for LITIGATION EXPENSE and DAMAGES (if included on the Declarations Page) incurred in respect to any CLAIMS existing at the time of expiration or cancellation; moreover, such cancellation or expiration shall not affect the Company's right to recovery of costs, as provided in Section IV.F.

K.    **Minimum Earned Premium**

1.    The minimum earned premium for this policy is twenty percent (20%) of the premium stated in Item 3 of the Declarations and is not subject to short rate or pro rata adjustment in the event of cancellation by the Named Insured.  In the case of multiple year policies, the minimum earned premium is twenty percent (20%) of the first year's premium.

2.    Cancellation for nonpayment of premium after the effective date of this policy shall be deemed a request by the Named Insured for cancellation of this policy, thereby activating the foregoing minimum earned premium provision.

L.    **Transfer or Assignment**

This Policy may not be transferred, sold, or assigned by the Named Insured.   The Company may transfer, sell or assign this Policy only with the sale of substantially all of its assets.

M.    **Excess Insurance**

1.    The insurance provided under this Policy shall apply only as excess insurance over any other valid and collectible insurance available to the Named Insured unless such other insurance specifically applies as excess insurance over the Limits of Liability provided herein.

2.    In the event any other Insurer, including but not limited to, any Professional Liability Insurer or any General Liability Insurer, denies coverage or indemnification as the case may be for any reason whatsoever for an IN-FRINGEMENT which may be covered under a policy issued by such Insurer and also covered hereunder, written notice shall immediately be given by or on behalf of the Named Insured to the Company.  Such notice shall contain the reason for such denial as stated by such other Insurer.  As a condition precedent to making a CLAIM under this Policy, the Named Insured, upon the Company's request, shall initiate legal proceedings against said other Insurer to determine by final judgment the legality of its position.  If such legal proceedings described above are unsuccessful, expense incurred by the Named Insured with the prior approval of the Company shall be considered LITIGATION EXPENSE.

N.    **Excess Indemnity**

The insurance provided under this policy shall also apply only as excess indemnification over any other indemnification available to the Named Insured from whatever source.  In the event any Indemnitor denies any indemnification for any reason whatsoever for an

27

INFRINGEMENT which may be covered under an indemnification provision of an agreement between itself and Named Insured or legal obligation of indemnification for the benefit of the Named Insured including but not limited to provisions under the UCC, and also covered hereunder, written notice shall immediately be given by or on behalf of the Named Insured to the Company. Such notice shall contain the reason for such denial as stated by the Indemnitor. As a condition precedent to making a CLAIM under this policy, the Named Insured, upon the Company's request, shall initiate legal proceedings against the said Indemnitor to determine by final judgment the legality of its position. If such legal proceedings described above are unsuccessful, expense incurred by the Named Insured with prior approval of the Company shall be considered LITIGATION EXPENSE.

O. **Conformity to Statute**
In the event that any terms of this Policy are found to be in conflict with any terms mandated by the statutes of the jurisdiction in which this Policy is issued, such terms shall be deemed to be reformed to conform with those mandatory terms. The provisions of this Policy are severable, and the voiding of any provision by operation of law shall not void the entire Policy, but only such provision or provisions.

IN WITNESS WHEREOF, the Company has caused this Policy and the forms and endorsements attached thereto to be executed according to law.

Secretary                                    President

## SETTLEMENT AND JOINT DEFENSE AGREEMENT

### Parties:

Shasta Technologies, LLC
1500 nw Bethany Boulevard, Suite 200
Beaverton, OR 97006                                   (Hereinafter, AShasta@)

Pharma Tech Solutions, Inc.
InstaCare Corp.
2260 Townsgate Road
Suite 300
Westlake Village, CA 91361                    (Hereinafter, collectively APharma
                                                        Tech@)

Gotham Insurance Company                    (Hereinafter, AGotham@)
c/o IPISC
9720 Bunsen Pkwy.
Louisville, KY 40299
Attn: Sandra Walker

**Place:**      Ventura, California

**Date:**       August 30, 2012

## RECITALS

Whereas, Shasta holds certain exclusive rights to develop, manufacture and sell an alternative diabetic test strip, known as GenStrip (hereinafter, AProduct@); and

Whereas, on or about June 30, 2011, Shasta entered into an Exclusive Retail Distribution Agreement for the sale of the Product with Pharma Tech; and

Whereas, subsequent to the execution by Shasta and Pharma Tech of the Exclusive Retail Distribution Agreement, LifeScan Scotland, LTD, filed a lawsuit in the Federal District Court, entitled *LifeScan Scotland LTD v. Shasta Technologies, et al., CV11-04494-MEJ* (hereinafter the ALifeScan Litigation@); and

Whereas, prior to the instigation of the LifeScan Litigation, Shasta purchased a policy of Insurance issued by Gotham Insurance, providing coverage for claims of alleged patent infringement; and

Whereas, Gotham has issued to Shasta Technologies, LLC, a policy of insurance, bearing Policy No. IPI00705-D, providing coverage for claims of Patent Infringement, naming PharmaTech Solutions, Inc. and InstaCare Corp. as Additional Insureds, with policy limits of $2,000,000 over a $250,000 Self Insured Retention and in addition to a 10% co-pay requirement (hereinafter the APolicy@); and

Whereas, a dispute has arisen amongst the parties concerning their respective rights to the benefits and proceeds from the Policy of Insurance; and

Whereas, Gotham Insurance Co. has filed a Complaint in Interpleader in the United States District Court, for the Northern District of California, San Jose Division, Case No. CV-12-02823 (hereinafter the AGotham Action@), seeking to interplead the proceeds of the Policy and for declaratory relief; and

Settlement and Joint Defense Agreement
August $\underline{3/}$ , 2012
Page 3

Whereas, the Parties hereto wish to resolve their differences concerning the respective rights of the insureds under the Gotham policy to the benefits and proceeds from the Policy of Insurance

Now, Therefore, the Parties do agree as follows:

## AGREEMENT

CONSIDERATION. In consideration for the promises and agreements set forth herein, the parties do agree as follows:

1.    **Limitations of Agreement.** This Agreement is not intended to supplant the existing Exclusive Retail Distribution Agreement between Pharma Tech and Shasta, nor constitute a release of any claims thereunder. Likewise, this Agreement is not intended to replace the Policy, but rather clarify the same with regard to the administration of the benefits.

2.    **Separate Counsel.** The Parties agree that the PharmaTech defendants shall have counsel which is separate from the Shasta defendants' counsel.

3.    **Lead Counsel.** The Parties agree that the attorneys for InstaCare and Pharma Tech, William Rudy of Lathrop & Page LLP, shall assume the position of lead counsel in the LifeScan Litigation, to the extent that it is consistent with a positive outcome for all the defendants in that action. Lead counsel must meet the Gotham litigation counsel requirements.

4.    **Funding Costs of Defense.** The proceeds available for reimbursement of attorney fees and costs through the Gotham Insurance Defense Policy shall be paid by Gotham, or its agents, to the respective counsel for PharmaTech defendants and Shasta

Settlement and Joint Defense Agreement

August 3|, 2012

Page 4

defendants, subject to the terms and conditions of the Gotham Insurance policy and the billing guidelines. The policy shall continue to be administered by IPISC.

A.   Gotham does hereby agree that the insureds need not meet the requirement that they actually pay the costs and expenses of the Self Insured Retention, before the insureds are entitled to any proceeds or benefits under the Policy. Each group of insureds (PharmaTech on the one hand and Shasta on the other hand) shall be responsible for $125,000 of the $250,000 Self Insured Retention. Once a group of insureds has incurred costs or expenses equal to $125,000, it shall be entitled to receive reimbursement benefits under the Policy, over and above the $125,000 SIR..

B.   Gotham does hereby agree that the insureds need not actually pay the costs and expenses for the defense of the LifeScan litigation, and then subsequently seek reimbursement from Gotham. All such payments shall be made by Gotham, or its agent, and made directly to the attorney=s rendering such services, and not the insured parties hereunder.

C   No monies from the Gotham insurance policy shall be expended to reimburse either party=s counsel>s costs or fee incurred, which do not exceed the Self Insured Retention.

D.   Counsel for the respective insureds shall submit their invoices for services rendered directly to IPISC, which invoices shall comply with the Gotham Billing Guidelines.

E.   Each group of defendants shall be solely responsible for the co-pay

Settlement and Joint Defense Agreement
August 3 1 , 2012
Page 5

requirement for costs and expenses incurred in connection with their defense in
the LifeScan litigation.

F.      Subject to Section IV of the Gotham Policy, paragraph H thereof, should
the LifeScan Litigation be tried to conclusion, and the matter result in a verdict
in favor of the insureds, the insureds shall be entitled to be reimbursed from
any sums recovered from LifeScan, for the obligations incurred under the Self
Insured Retention and the co-pay provisions.

5.      <u>Joint Defense Agreement</u>.  PharmaTech and Shasta do hereby enter into a
Joint Defense Agreement, as set forth as Exhibit A hereto. Execution of this Settlement and
Joint Defense Agreement shall constitute execution of Exhibit A.

6       <u>No Release</u>. Subject to the provisions of paragraph 8 here of, this agreement
does not constitute a release between Shasta and PharmaTech.  Each of the parties shall
retain whatever claims it may have against the others. The ATolling Agreement,@ tolling the
statute of limitations on their claims, *inter se,* attached hereto as Exhibit B is incorporated
herein by this reference, and the execution of this Agreement shall constitute execution of the
Tolling Agreement.

7       <u>Notices</u>: For all purposes of this Agreement, all communications, including without
limitation notices, consents, requests or approvals, required or permitted to be given hereunder
will be in writing and will be deemed to have been duly given when hand delivered, dispatched
by electronic facsimile transmission (with receipt thereof confirmed) or e-mail, or five business
days after having been mailed by United States registered or certified mail, return receipt
requested, postage prepaid, or three business days after having been sent by a nationally

Settlement and Joint Defense Agreement

August 31, 2012

Page 6

recognized overnight courier service such as Federal Express or UPS, addressed to the addresses set forth below, or to such other address as any Party may have furnished to the other in writing and in accordance herewith, provided, however, that notices of changes of address will be effective only upon receipt.

i. To Shasta:      Mr. Calvin A. Knickerbocker Jr,

          Managing Member

          1500 nw Bethany Boulevard, Suite 200

          Beaverton, OR 97006

          calnick@gmail.com

ii. To Gotham      Gotham Insurance Company

          c/o IPISC

          9720 Bunsen Pkwy.

          Louisville, KY 40299

          Attn: Sandra Walker

iii. To Pharma Tech:      Keith M. Berman, President,

          2660 Townsgate Road, Suite 300,

          Westlake Village, CA 91361

          Intermania@aol.com

      8      **The Gotham Litigation.** The Gotham Litigation, including the Complaint, counterclaims and cross claims shall be dismissed, each party to bear its own costs, expenses and fees. As to all claims between InstaCare and Pharma Tech, such dismissal

Settlement and Joint Defense Agreement

August 3 | , 2012

Page 7

shall be without prejudice.

As to all claims asserted by or against Gotham or its agent IPISC, such dismissal shall be with prejudice for any causes of action accrued prior to the effective date of this Agreement, but shall not affect any causes of action which may accrue after the date of this Agreement.

In dismissing with prejudice their respective counterclaims against Gotham, the defendants herein do hereby waive any rights under Section 1542 of the California Civil Code. Section 1542 provides as follows:

1.

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

9    **Miscellaneous Provisions:**

A.    **Binding on Successors.** This Agreement will be binding upon and inure to the benefit of the Parties hereto, and each of their respective successors, assigns, personal and legal representatives, executors, administrators, heirs, distributees, devisees, and legatees, as applicable.

B.    **Severability.** Any provision of this Agreement that is deemed invalid, illegal or unenforceable in any jurisdiction will, as to that jurisdiction be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provisions of this Agreement invalid, illegal, or unenforceable in any other jurisdiction. If any covenant should be deemed invalid, illegal or unenforceable because its scope is considered

Settlement and Joint Defense Agreement

August 3 1 , 2012

Page 8

excessive, such covenant will be modified so that the scope of the covenant is reduced only to the minimum extent necessary to render the modified covenant valid, legal and enforceable.

           C.    **Entire Agreement**. Except as otherwise provided herein, the terms of this Agreement are intended by the Parties to be the final expression of their agreement with respect to the purchase and sale of the Product, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement will constitute the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial, administrative or other legal proceeding to vary the terms of this Agreement.

        This Agreement is not, however, intended to supplant the Exclusive Retail Distribution Agreement between Shasta and Pharma Tech Solutions, nor the Gotham policy of insurance, both of which remains in full force and effect, in their original terms.

           D.    **Amendments; Waivers**. This Agreement may not be modified, amended, or terminated except by an instrument in writing, executed by the parties hereto. Failure on the part of any Party to complain of any action or omission, breach or default on the part of any other Party, no matter how long the same may continue, will never be deemed to be a waiver of any rights or remedies hereunder, at law or in equity. Each Party may waive compliance by any other Party with any provision of this Agreement that such other Party was or is obligated to comply with or perform only through an executed writing; provided, however, that such waiver will not operate as a waiver of, or estoppel with respect to, any other or subsequent failure, breach or default.

           E.    **No Inconsistent Actions**. The Parties will not voluntarily undertake or

Settlement and Joint Defense Agreement

August 3 1, 2012

Page 9

fail to undertake any action or course of action that is inconsistent with the provisions or intent of this Agreement. Furthermore, it is the intent of the Parties hereto to act in good faith and a fair and reasonable manner with respect to the interpretation and application of the provisions of this Agreement to achieve the intent of the parties hereto.

    F.  **Headings and Section References**. The headings used in this Agreement are intended for convenience or reference only and will not in any manner amplify, limit, modify or otherwise be used in the construction or interpretation of any provision of this Agreement. All section references are to sections of this Agreement, unless otherwise noted.

    G.  **Damages**. Subject to the terms, conditions and limitations of this Agreement, any non-breaching party may seek damages against any breaching party as provided by law.

    H.  **Effective Date**. The Effective Date of this agreement is August 23, 2012.

    I.  **Counterparts**. This Agreement may be executed in several counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same Agreement. Transmission and receipt of this agreement signed in counterpart by facsimile shall be deemed a signed original.

  IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date and year below stated.

Settlement and Joint Defense Agreement

August ___, 2012

Page 10

For Shasta Technologies LLC.

By: _Cecl Munuh_ Pr___ Date _9/4/12_ .

Title: President .

For Pharma Tech Solutions, Inc.

By: _____ Date  08/31/2012

Title: President and Director

For InstaCare Corp.

By: _____ Date  08/31/2012

Title:  CFO and Director

Settlement and Joint Defense Agreement

August 31, 2012

Page 11

By: _Jordan Vo_ _____ Date _August 31 2012_

Title: Vice President Litigation Management IPVC