UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GOTHAM INSURANCE COMPANY,

        Plaintiff,

    v.

SHASTA TECHNOLOGIES, LLC, et al.,

        Defendants.

_____/

No. C 13-3810 PJH

**ORDER DENYING MOTION TO STRIKE, DENYING MOTION TO DISMISS**

**BACKGROUND**

    Plaintiff's motion to dismiss and/or strike defendant's counterclaims came on for hearing before this court on January 22, 2014.  Plaintiff Gotham Insurance Company ("plaintiff" or "Gotham") appeared through its counsel, Michael Schack.  Defendant Shasta Technologies, LLC ("defendant" or "Shasta") appeared through its counsel, Nicole Hess and Randy Hess.  Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES plaintiff's motion as follows.

    This case arises out of a dispute over insurance coverage.  Plaintiff Gotham originally filed this suit against its insured (defendant Shasta), seeking a declaratory judgment regarding the scope of its coverage obligations.  The coverage dispute relates to a patent infringement suit (which is not before this court) brought against Shasta and three other companies (Instacare Corp.[1] ("Instacare"), Pharmatech Solutions, Inc. ("Pharmatech"), and Conductive Technologies, Inc. ("CTI")).  The facts of that patent

---

    [1]According to Gotham's motion, Instacare is now known as "Decision Diagnostics," but the parties' papers refer to it as "Instacare," so this order will do the same.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1  infringement case are as follows: Lifescan, Inc. (a company which makes glucose

2  monitoring systems for use by people with diabetes) filed suit against Shasta, Instacare,

3  Pharmatech, and CTI in this district. Shasta has an insurance policy with Gotham, under

4  which Gotham is obligated to reimburse Shasta up to $2 million in legal expenses for

5  defense against intellectual property claims. At some point, Pharmatech and Instacare

6  were added to Shasta's policy (but notably, CTI was not added to the policy). However,

7  after Pharmatech and Instacare were added to the policy, a dispute developed between

8  Shasta and Pharmatech/Instacare as to whether Pharmatech/Instacare would be entitled to

9  their own separate counsel, which would be paid from the policy. Shasta and

10  Pharmatech/Instacare submitted conflicting insurance claims to Gotham, so Gotham filed

11  an interpleader suit against all three, seeking an order requiring the parties to litigate their

12  claims regarding the insurance proceeds, and seeking a declaratory judgment as to how

13  much money was owed to each of the three insureds. That interpleader suit (referred to as

14  "Gotham I") was settled on September 6, 2012, and while the parties do not clearly explain

15  the terms of the settlement, it does appear that Pharmatech/Instacare were permitted to

16  proceed with their own separate legal counsel, with their expenses paid by Gotham.

17      After the Gotham I settlement, there arose a new dispute between Gotham and

18  Shasta (which is the subject of the present suit). In the Lifescan case, Shasta's counsel is

19  also representing CTI. Because CTI is not insured under the Gotham policy, Gotham has

20  taken the position that it is not obligated to reimburse CTI's defense costs, and thus,

21  whenever Shasta submits invoices for reimbursement, Gotham has paid only 50% of the

22  invoices (on the theory that 50% of the costs are attributable to insured Shasta, while the

23  other 50% are attributable to non-insured CTI). Shasta disputed this 50% reduction, which

24  led to this lawsuit.

25      On August 16, 2013, Gotham filed this action, naming Shasta, Pharmatech, and

26  Instacare as defendants. The complaint asserts two causes of action: (1) an interpleader

27  claim, seeking an order requiring the parties to interplead and litigate their claims regarding

28  the insurance proceeds, and (2) a claim for declaratory relief, seeking an order regarding

2

1   the proceeds owed by Gotham under the policy.  Shasta filed an answer on October 14,

2   2013, but also included two counterclaims: (1) breach of contract, and (2) breach of the

3   implied covenant of good faith and fair dealing.  Pharmatech and Instacare filed their own

4   separate answer on October 16, 2013, and did not assert counterclaims.

5       On November 4, 2013, Gotham filed the present motion to dismiss/strike Shasta's

6   counterclaims.  Gotham argues first that Shasta's counterclaims should be struck under

7   California's anti-SLAPP statute (arguing that Shasta accuses Gotham of having breached

8   the contract by filing this interpleader suit, and thus is attempting to interfere with Gotham's

9   protected activity), and separately argues that Shasta's counterclaims fail to state a claim.

10                                          **DISCUSSION**

11  A.    Legal Standards

12        1.    Motion to strike under anti-SLAPP

13        The anti-SLAPP statute prohibits the filing of legal actions based on the defendant's

14  lawful pursuit of a right to petition, or a right to free speech, where such speech or

15  petitioning activity is in connection with a public issue.  It may be applied in federal court in

16  diversity actions and to actions with pendent state law claims.  Globetrotter Software, Inc.

17  v. Elan Computer Group, Inc., 63 F.Supp. 2d 1127, 1130 (N.D. Cal. 1999).

18        The anti-SLAPP statute authorizes a special motion to strike certain pleadings in a

19  cause of action based on any act of the defendant in furtherance of his or her right to

20  petition or free speech, under the federal or state constitutions, in connection with a public

21  issue, as defined by the statute.  Cal. Code. Civ. P. § 425.16.  Once the defendant has

22  made out a prima facie case, the burden shifts to the plaintiff to demonstrate a probability

23  of prevailing on the challenged claims for those claims to survive dismissal.  Id.  To meet

24  this burden, the plaintiff must demonstrate that the complaint is legally sufficient and

25  supported by a prima facie showing of facts to sustain a favorable judgment if the evidence

26  submitted by the plaintiff is credited.  Wilcox v. Superior Court, 27 Cal. App. 4th 809, 823-

27  25 (1994).

28        The anti-SLAPP statute authorizes a motion to strike meritless lawsuits filed to chill

                                                3

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    the defendant's exercise of First Amendment rights.  Subdivision (b)(1) of the statute

2    provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

7    Cal. Civ. P. Code § 425.16(b)(1).

8          The statute requires the court to engage in a two-step process in ruling on an anti-

9    SLAPP motion.  "First, the court decides whether the defendant has made a threshold

10   showing that the challenged cause of action is one arising from protected activity.. . . If the

11   court finds such a showing has been made, it then determines whether the plaintiff has

12   demonstrated a probability of prevailing on the claim."  Equilon Enterprises v. Consumer

13   Cause, Inc., 29 Cal. 4th 53, 67 (2000); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d

14   1097, 1110 (9th Cir. 2003).

15         2.    Motion to dismiss

16         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

17   sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

18   1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

19   Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

20   a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

21   minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

22   that a complaint include a "short and plain statement of the claim showing that the pleader

23   is entitled to relief." Fed. R. Civ. P. 8(a)(2).

24         A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

25   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

26   a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

27   1990).  The court is to "accept all factual allegations in the complaint as true and construe

28   the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group,

4

United States District Court
For the Northern District of California

1   Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

2        However, legally conclusory statements, not supported by actual factual allegations,

3   need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The allegations in

4   the complaint "must be enough to raise a right to relief above the speculative level."  Bell

5   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  A

6   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

7   draw the reasonable inference that the defendant is liable for the misconduct alleged."

8   Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the

9   court to infer more than the mere possibility of misconduct, the complaint has alleged – but

10  it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  In the event

11  dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

12  cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

13  2005).

14       In addition, while the court generally may not consider material outside the pleadings

15  when resolving a motion to dismiss for failure to state a claim, the court may consider

16  matters that are properly the subject of judicial notice.  Lee v. City of Los Angeles, 250 F.3d

17  668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279,

18  1282 (9th Cir. 1986).  Additionally, the court may consider exhibits attached to the

19  complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555

20  n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and

21  documents that form the basis of a the plaintiff's claims.  See No. 84 Employer–Teamster

22  Joint Counsel Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2

23  (9th Cir. 2003).

24  B.    Legal Analysis

25       Because Gotham's motion focuses on the anti-SLAPP standard, the court will

26  address that argument first.  As discussed above, the anti-SLAPP statute prohibits the filing

27  of legal actions based on the lawful pursuit of a right to petition, or a right to free speech,

28  where such speech or petitioning activity is in connection with a public issue.  Courts use a

1    two-part test when determining whether the anti-SLAPP statute applies.  "First, the court

2    decides whether the defendant has made a threshold showing that the challenged cause of

3    action is one arising from protected activity.. . . If the court finds such a showing has been

4    made, it then determines whether the plaintiff has demonstrated a probability of prevailing

5    on the claim."  Equilon, 29 Cal. 4th at 67.

6         Regarding the first anti-SLAPP prong, Gotham argues that Shasta's counterclaims

7    "arise out of Gotham's filing of the interpleader complaints which are communications in the

8    course of a judicial proceeding and are therefore protected activity."  Gotham primarily

9    points to paragraph 15 of Shasta's counterclaims, which allege that "Gotham has breached

10   its contract with Shasta by filing an interpleader action when the Policy clearly indicates that

11   Shasta, and only Shasta, is entitled to control the Policy."  Dkt. 11 at 13.  Gotham further

12   points to paragraphs 16, 19, and 24 of the counterclaims, which similarly allege that

13   Gotham breached the contract between the parties by filing this interpleader action.

14        Shasta responds by arguing that the gravamen of its suit arises from "Gotham's

15   unilateral and unsupported 50% reduction in payment of benefits owed to Shasta,

16   Gotham's months-long refusal to pay Shasta's fees and expenses incurred in an underlying

17   action, and Gotham's total disregard of Shasta's interests in obtaining the benefits of the

18   policy for which it paid."

19        As an initial matter, the court finds that Gotham's filing of this lawsuit was indeed

20   "protected activity" for purposes of the anti-SLAPP statute.  The statute provides protection

21   for "any act of that person in furtherance of the person's right of petition or free speech

22   under the United States or California Constitution in connection with a public issue."  See

23   Cal. Civ. P. Code § 425.16(b)(1).  The statute provides examples of such protected activity,

24   which includes "any written or oral statement or writing made before a legislative,

25   executive, or judicial proceeding" as well as "any written or oral statement or writing made

26   in connection with an issue under consideration or review by a legislative, executive, or

27   judicial body."  Cal. Civ. P. Code § 425.16(e).

28        The next question is whether Shasta's counterclaims "arise from" Gotham's

6

United States District Court

For the Northern District of California

1   protected activity.  Here, the court notes that Gotham is correct in arguing that the

2   counterclaims themselves allege that "Gotham has breached its contract with Shasta by

3   filing an interpleader action," but at the same time, Shasta is correct in arguing that the

4   counterclaims also allege that Gotham breached the insurance contract by, among other

5   things, refusing to reimburse Shasta for all of its litigation expenses.  Courts have

6   developed a test to analyze suits such as this, where a party's claims reference both

7   protected and unprotected activity.  See Scott v. Metabolife Int'l, Inc., 115 Cal. App. 4th

8   404, 414 (2004).  The Scott court held as follows:

> [W]hen allegations of nonprotected activity are incidental or collateral to a
> plaintiff's claim challenging primarily the exercise of the rights of free speech
> or petition, they may be disregarded in determining whether the cause of
> action arises from protected activity.  Conversely, if the allegations of
> protected activity are only incidental to a cause of action based essentially on
> nonprotected activity, the mere mention of the protected activity does not
> subject the cause of action to an anti-SLAPP motion.

13  Id.

14      Here, the court finds that the allegations regarding protected activity are only

15  incidental to Shasta's counterclaims, which are based essentially on unprotected activity.

16  While Shasta does allege that "Gotham has breached its contract with Shasta by filing an

17  interpleader action," it also alleges that "Gotham breached the contract of insurance by

18  allocating reimbursement of litigation expenses based on the Named Insured's counsel's

19  concurrent representation of an uninsured entity."  Dkt. 11, ¶ 14.  Shasta's breach of

20  contract counterclaim then presents a longer list of alleged breaches, only a small portion

21  of which relate to the filing of this suit.  Specifically, Shasta alleges that "Gotham breached

22  the policy by, among other things, refusing and failing to fully reimburse Shasta for litigation

23  expenses incurred in the underlying action," "failing adequately to investigate or evaluate

24  Shasta's claims for benefits under the policy, refusing and failing to timely reconsider and

25  reverse its erroneous reductions of benefits owed to Shasta under the policy, failing to

26  explain and/or misrepresenting policy provisions to Shasta, failing to consider facts and

27  evidence supporting coverage, [and] succumbing to threats made by additional insureds

28  instead of adhering to policy provisions clearly articulating the duties owed to" Shasta.  Id.,

¶ 18.  Shasta then includes a bullet-pointed list of 19 other acts/omissions that constitute breaches of the insurance contract, only three (or at most, four) of which relate to the filing of the interpleader action.  Id., ¶ 19.

While Gotham is correct in noting that Shasta's counterclaims do reference Gotham's filing of its complaint, the California Supreme Court has held that "the trial court must focus on the substance of the lawsuit to determine whether it arose from [a party's] protected activities."  See Scott, 115 Cal. App. 4th at 413-14 (citing City of Cotati v. Cashman, 29 Cal.4th 69, 76-77 (2002)).  Scott went on to hold that "it is the principal thrust or gravamen of the [] cause of action that determines whether the anti-SLAPP statute applies."  Scott, 115 Cal. App. 4th at 414.  As applied to this case, the court finds that the 50% reduction in expense reimbursement is the thrust of Shasta's counterclaims, just as it is the thrust of Gotham's initial suit.  In essence, Shasta's counterclaims are the mirror image of Gotham's second cause of action for declaratory relief.  Gotham seeks a declaratory judgment regarding its obligations under the insurance contract, and in its counterclaims, Shasta seeks a ruling that Gotham breached the contract by interpreting its obligations as requiring only a 50% payment of expenses.  Accordingly, because Gotham has not shown that Shasta's counterclaims arise primarily out of protected activity, the court finds that the first anti-SLAPP prong has not been met, and thus, Gotham's motion must be DENIED.  However, the court will address the second anti-SLAPP prong in the alternative.

If Gotham had met the first anti-SLAPP prong, the court would then consider whether Shasta has demonstrated a probability of prevailing on its counterclaims.  Gotham argues that the Policy must be interpreted under New York law, and argues that Shasta's counterclaims are not viable under New York law.  Gotham only briefly addresses the possibility that California law is applicable, arguing that the result would be the same under California law because "an interpleader is justified by an insurer's good faith belief that it faces the possibility of multiple claims."  However, as discussed above, Shasta's counterclaims are not based solely or primarily on Gotham's filing of this interpleader

8

United States District Court
For the Northern District of California

1   action.  Instead, the counterclaims' allegations pertain mostly to Gotham's performance

2   under the insurance contract.  And to the extent that Shasta's counterclaims are based on

3   this unprotected activity, the court finds that Shasta has demonstrated that the complaint is

4   legally sufficient and supported by facts sufficient to show a favorable judgment if Shasta's

5   evidence is credited.

6          Shasta argues that the insurance contract allows allocation between covered and

7   uncovered counts, and between insured and uninsured products, but that it does not allow

8   allocation between covered and uncovered persons.  Gotham responds by arguing that the

9   settlement in Gotham I resolved all issues regarding the allocation provision.  However, this

10  court has not yet made any determination regarding the allocation provision, as this case is

11  still in the pleading stages.  The court notes that, at this early stage of the case, Shasta is

12  not yet required to submit evidence supporting its claims – instead, it need only allege facts

13  which would, "if proved at trial, support a judgment" in its favor.  Wilcox, 27 Cal. App. 4th at

14  823.  And the court finds that, if Shasta is able to present evidence supporting its

15  allegations that Gotham's reduction in coverage was inconsistent with the contract's

16  allocation clause (and thus constituted a breach of contract), then Shasta would be able to

17  succeed on its breach of contract counterclaim.  Shasta's second counterclaim (for breach

18  of the covenant of good faith and fair dealing) includes only one additional element, that

19  Gotham's breach was unreasonable.  Because Shasta has demonstrated a probability of

20  succeeding on its counterclaims, the court finds that Gotham's motion must be DENIED.

21         Regarding Gotham's motion to dismiss under Rule 12(b)(6), Gotham relies on the

22  arguments made in support of its motion to strike.  And the court finds that the motion to

23  dismiss must be DENIED for the same reasons that the motion to strike was denied.

24         The court also notes that Gotham filed evidentiary objections separate from its reply

25  brief, in violation of Civil Local Rule 7-3(c).  Gotham's evidentiary objections are therefore

26  STRICKEN.

27         Finally, both parties have requested attorneys' fees and costs in connection with this

28  motion, and both requests are DENIED.

**IT IS SO ORDERED.**

Dated: April 3, 2014

_____

PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California

10