**PLAGER SCHACK LLP**
Mark H. Plager (CA Bar No. 192259)
*mark@plagerschack.com*
Michael L. Schack (CA Bar No. 128784)
*michaels@plagerschack.com*
16152 Beach Boulevard, Suite 207
Huntington Beach, California 92647
(714) 698-0601 - Phone
(714) 698-0608 - Fax

Attorneys for Interpleader
Gotham Insurance Company

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GOTHAM INSURANCE COMPANY, | **CASE No.** 5:13-CV-03810-BLF |
| Plaintiff, | **FIRST AMENDED COMPLAINT IN INTERPLEADER PURSUANT TO RULE 22 OF THE FEDERAL RULES OF CIVIL PROCEDURE**, BREACH OF CONTRACT, FRAUD, PROMISE WITHOUT INTENT TO PERFORM |
| v. | |
| SHASTA TECHNOLOGIES, LLC; CALVIN A. KNICKERBOCKER, III; CALVIN A. KNICKERBOCKER, JR; INSTACARE CORP.; and PHARMATECH SOLUTIONS, INC. | |
| Defendants. | |

Plaintiff Gotham Insurance Company ("Gotham"), for its First Amended Complaint in interpleader against Defendants Shasta Technologies LLC, Instacare Corp., Pharmatech Solutions, Inc., Calvin A. Knickerbocker, III, and  Calvin A. Knickerbocker, Jr., avers as follows:

**Jurisdiction**

1.      This Court has jurisdiction pursuant to Title 28, United States Code Sections 1332, 1335, and Rule 22 of the Federal Rules of Civil Procedure.

2.      Venue is proper in this district pursuant to 28 U.S.C. §1397 because Defendants in Interpleader are subject to personal jurisdiction in this judicial district

1  and is already party to primary action in this jurisdiction captioned as *Lifescan*

2  *Scotland Ltd. v. Shasta Technologies LLC, Instacare Corp., PharmaTech Solutions,*

3  *Inc., and Conductive Technologies, Inc.*, Case No. CV11-04494 (U.S.D.C., N.D.Cal.,

4  San Jose Div.) (the "Underlying Lawsuit").

5  **Parties**

6       3.     Gotham Insurance Company is a New York corporation with its principal

7  place of business located at 919 Third Avenue, New York, New York 10022, and does

8  business in this judicial district.

9       4.     On information and belief, Defendant Shasta Technologies LLC

10  ("Shasta") is a limited liability company organized under the laws of the State of

11  Oregon, having a principal place of business at 7340 Hunziker Road, Suite 205,

12  Tigard, Oregon 97223, and Defendants Calvin A. Knickerbocker, III

13  ("Knickerbocker")  and Calvin A. Knickerbocker, Jr. ("Cal Jr") are individuals, who

14  were respectively at all relevant times the legal representatives and managing member

15  and President of Defendant Shasta, and at all relevant times had a principal place of

16  business at 3257 Hwy 128, Calistoga, California 94515, in addition to the Oregon

17  address of Shasta.

18       5.     On information and belief, Defendant in Interpleader Instacare

19  Corporation ("Instacare") is a corporation organized under the laws of the State of

20  Nevada, having a principal place of business at 2660 Townsgate Road, Suite 300,

21  Westlake Village, California 91361.

22       6.     On information and belief, Defendant in Interpleader PharmaTech

23  Solutions LLC ("PharmaTech") is a limited liability company organized under the laws

24  of the State of Nevada, having a princ

25

26  ipal place of business at 2660 Townsgate Road, Suite 300, Westlake Village,

27  California 91361.

28  ..

# FIRST CAUSE OF ACTION

## INTERPLEADER AGAINST ALL DEFENDANTS EXCEPT KNICKERBOCKER

7.     Gotham issued insurance policy No. IP00705-D to Shasta entitled Intellectual Property Infringement Defense Cost Reimbursement Insurance (the "Policy") effective May 20, 2010 to May 20, 2011.  A true and correct copy of the Policy and its Endorsements is attached hereto as Exhibit 1.

8.     The Policy provides coverage limits of $2 Million for Litigation Expenses and Damages per claim and $2 Million for Litigation Expenses and Damages in the aggregate (hereinafter the "Proceeds").  The Proceeds are payble subject a 10% co-pay, and exhaustion of $250,000 Self Insured Retention per Claim pursuant to Endorsement No. IPI-DEF 843-10B effective May 5, 2010.

9.     Effective May 20, 2010, Gotham at the request of Shasta issued Endorsement No. IPI-DEF 843-13A to the Policy which added PharmaTech and Instacare as Additional Insureds.

10.     The Policy is governed by New York law.

11.     Gotham retains an interest in and claim to the Proceeds of the Policy based upon the issuance of a reservation of rights letter on May 30, 2012 to Defendants in Interpleader Shasta, Instacare and PharmaTech on the grounds stated in that letter Gotham thus reserves its right to seek return of the proceeds paid and cease further payments upon issuance of a formal declination.  A true and correct copy of the May 30, 2012 Reservation of Rights Letter is attached hereto as Exhibit 2.

12.     The amount of the insurance proceeds available pursuant to the Policy are undisputed.  However, the total amount of the proceeds payable to the Defendants in Interpleader as defense reimbursement is currently unknown.  Gotham has deposited the entirety of the balance of the proceeds of the Policy with the Court, which may or may not be the subject of reimbursement pursuant to the terms of the Policy.  Gotham is amenable to issuing a bond covering the total insurance proceeds as set forth in

1  Paragraph 8 above.

2  13.    Defendants Shasta, PharmaTech and Instacare each seek the Proceeds

3  authorized by the Policy.

4  14.    Defendants Shasta, PharmaTech and Instacare have each made conflicting

5  claims against the Proceeds.

6  15.    On or about June 1, 2012, Gotham commenced an Interpleader Action

7  against the Defendants Shasta, Instacare and Pharmatech, in the matter stylized as

8  *Gotham Insurance Company v. Shasta Technologies LLC, et al., Case No. CV12-*

9  *02823* (hereinafter Interpleader I) to resolve the conflicting claims of the Defendants to

10  the Proceeds.

11  16.    On or about September 6, 2012, after commencing Interpleader I, the

12  parties reached a settlement of the dispute regarding the lawful and equitable

13  distribution of the Proceeds resulting in the dismissal of Interpleader I without

14  prejudice.  A true and correct copy of the Settlement Agreement resolving Interpleader

15  I is attached hereto as Exhibit 3.

16  17.    In accordance with the Policy and the Settlement Agreement of

17  Interpleader I, Gotham has paid a total of $1,421,266.42 of the Proceeds to date.  Of

18  the Proceeds paid to date, $489,111.00 was paid to Shasta on the one hand, and

19  $932,155.42 was paid to PharmaTech and Instacare on the other hand.

20  18.    Despite payment of Proceeds to date in accordance with the Settlement

21  Agreement of Interpleader I, Shasta has asserted new demands for payment of more

22  than its fair share of the Proceeds which conflicts with the rights of Defendants

23  PharmaTech and Instacare pursuant to the terms and conditions of the Settlement

24  Agreement and the Policy.

25  19.    Gotham is unable to determine the validity of the conflicting demands

26  made by Defendants, and cannot determine to whom the remaining Proceeds shall be

27  paid.

28  20.    Gotham has incurred costs and reasonable attorneys fees in connection

1 with these proceedings any may incur additional costs and fees hereafter.

2 **SECOND CAUSE OF ACTION**

3 **DECLARATORY RELIEF AGAINST ALL DEFENDANTS EXCEPT**

4 **KNICKERBOCKER**

5 21.    Gotham  restates the allegations of Paragraphs 1 through 20 herein as

6 though set forth in full in this cause of action.

7 22.    Gotham has duly investigated the Underlying Lawsuit.  As part of said

8 investigation, Gotham has requested additional information regarding the contents of

9 the Underlying Lawsuit.  Despite this additional information and Gotham's own

10 investigation, Gotham cannot determine to whom the Proceeds are payable.

11 23.    An actual case or controversy has arisen between the parties hereto with

12 respect to the Proceeds due, if any, under those portions of the Policy and the

13 Settlement Agreement of Interpleader I.  Gotham is entitled to have this Honorable

14 Court decide the obligations of Gotham and Defendants, and each of them, and to have

15 the Court render its judgement of declaratory relief regarding to whom the amounts

16 due under those provisions of the Policy and Settlement Agreement of Interpleader I

17 are payable, if any.

18 **THIRD CAUSE OF ACTION FOR**

19 **BREACH OF THE WRITTEN SETTLEMENT IN INTERPLEADER I**

20 **AGAINST DEFENDANT SHASTA ONLY**

21 24.    Gotham restates and incorporates by reference paragraphs 1 through 23,

22 above, as if fully set forth herein.

23 25.    On, or about, September 4, 2012, Shasta, PharmaTech, and Gotham

24 entered into a Settlement and Joint Defense Agreement resolving the issues in the

25 Interpleader  I Action. (Hereafter the "Interpleader I Settlement.")  Among other

26 things, Shasta and PharmaTech agreed that: (i) although PharmaTech and Shasta would

27 each have separate counsel in the Patent Litigation, PharmaTech's counsel, Lathrop &

28 Gage, would be the lead counsel in the Patent Litigation on behalf of both PharmaTech

and Shasta; (ii) PharmaTech and Shasta would pay their self retention amounts of $125,000.00, each, before seeking reimbursement of any fees and costs incurred in the Patent Litigation; (iii) PharmaTech's and Shasta's counsel would each submit their invoices for professional services rendered and costs incurred in the Patent Litigation above $125,000.00 to Gotham,  which would then pay these invoices pursuant to the Policy; (iv) the Interpleader I Action would be dismissed; (v) no party would act inconsistently with the terms of the Settlement; and (vi) as between Gotham and Shasta, the dismissal would be with prejudice as to any causes of action which accrued prior to the effective date of the Interpleader I Settlement and Shasta, Instacare and Pharmatech **expressly waived** any rights under Section 1542 of California Civil Code Section 1542 which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

26.    Almost immediately after signing the Interpleader I Settlement, Shasta breached the same, and acted inconsistently therewith, by treating its counsel, Ropers, Majeski, Kohn & Bentley (hereafter "Ropers Majeski"), as the lead counsel in the Patent Litigation, and demanding, through its counsel, to Gotham that it pay all of the funds Gotham had previously interpled with the Court to Ropers Majeski, in contravention of the terms of the Interpleader I Settlement Agreement.  In addition, Shasta breached the Interpleader I Settlement Agreement by asserting demands for allocation of policy proceeds inconsistent with the allocation that Gotham had determined appropriate under the Policy prior to execution of the Interpleader I Settlement Agreement, and which allocation had been settled in part by the Interpleader I Settlement Agreement and the release and 1542 waiver executed by Shasta.

27.    As a proximate result of this breach, Gotham was forced to institute this second Interpleader Action with this Court against Shasta and PharmaTech, i.e, the

captioned case (hereafter "the Gotham II Action), to resolve once and for all that which was to have been resolved by the Interpleader I Settlement Agreement:  how the remaining Policy funds would be distributed.    Paragraph 9(G) of the Interpleader I Settlement Agreement provides that any non-breaching party may seek damages against any breaching party as provided by law.

28.     Under the circumstances, Gotham has been damaged in having to incur attorneys' fees and costs in having to now file and prosecute the Gotham II Action, and has incurred other damage, in an amount to be proved at the time of trial.

## FOURTH CAUSE OF ACTION FOR
## PROMISE MADE WITH NO INTENTION PERFORMING AGAINST
## DEFENDANTS SHASTA, KNICKERBOCKER AND CAL JR

29.     Gotham re-alleges and incorporates by reference paragraphs 1 through 28, above, as if fully set forth herein.

30.     Gotham is informed and believes, and thereon alleges, that at the time the Interpleader I Settlement Agreement was negotiated and executed, Knickerbocker and Cal Jr. were acting as the legal and authorized representatives of Shasta in all discussions, negotiations, drafting and execution of the Interpleader I Settlement Agreement.    Knickerbocker and Cal Jr made all representations on behalf of Shasta and were the exclusive spokespersons for Shasta in such negotiations.   Cal Jr, ostensibly with the knowledge and cooperation of Knickerbocker, executed and signed the Interpleader I Settlement Agreement on behalf and as "President" of Shasta.  At the time Cal Jr. signed the Interpleader I Settlement Agreement on behalf of  Shasta, neither Shasta nor Knickerbocker nor Cal Jr had any intention of performing the promises set forth therein, and, thus, the promises to perform and abide by the terms of the Interpleader I Settlement Agreement, as made by Shasta, Knickerbocker and Cal Jr, were false.   Knickerbocker, Cal Jr and Shasta knew the promises made by Shasta in the Interpleader I Settlement Agreement were false at the time made, but made them to induce the other parties thereto into signing the Interpleader I Settlement Agreement.

31.     Gotham could not have known, in the exercise of reasonable diligence, that Shasta, Knickerbocker, and Cal Jr had no intention of performing the promises made in the Interpleader I Settlement Agreement when all parties signed the same, and, therefore, justifiably relied on Knickerbocker's and Cal Jr's representations and Shasta's promises in signing the Interpleader I Settlement Agreement.

32.     As a direct and proximate result of the misrepresentations and omissions of material facts by Knickerbocker and Cal Jr., and Shasta's tort of false promise, Gotham has been damaged in a sum to be proved at the time of trial.

33.     Moreover, as a direct and proximate result of the afore-mentioned misrepresentations and omissions, and Shasta's tort of false promise, Gotham has been forced to file this second Interpleader Action. . Consequently, under the doctrine of Tort of Another, Gotham is entitled to seek from Knickerbocker, Cal Jr., and Shasta reimbursement of all attorneys' fees and costs incurred in prosecuting and defending itself in this Action.

**FIFTH CAUSE OF ACTION FOR FRAUD**
**AGAINST DEFENDANTS SHASTA, KNICKERBOCKER AND CAL JR**

34.     Gotham re-alleges and incorporates by reference paragraphs 1 through 33, above, as if fully set forth herein.

35.     Gotham is informed and believes, and thereon alleges, that at the time the Interpleader I Settlement Agreement was negotiated and executed, Knickerbocker and Cal Jr. were acting as the legal and authorized representatives of Shasta in all discussions, negotiations, drafting and execution of the Interpleader I Settlement Agreement.   Knickerbocker and Cal Jr made all representations on behalf of Shasta and were the exclusive spokespersons for Shasta in such negotiations.   Cal Jr, ostensibly with the knowledge and cooperation of Knickerbocker, executed and signed the Interpleader I Settlement Agreement on behalf and as "President" of Shasta.   At the time Cal Jr signed Interpleader I Settlement Agreement as President and on behalf of  Shasta, neither Shasta nor Knickerbocker nor Cal Jr had any intention of

1  performing the promises set forth therein, and, thus, the promises to perform and abide
2  by the terms of the Interpleader I Settlement Agreement, as made by Shasta and
3  Knickerbocker and Cal Jr, were false.   Knickerbocker, Cal Jr and Shasta knew the
4  promises made by them in the Interpleader I Settlement Agreement were false at the
5  time made, but made them to induce the other parties thereto into signing the
6  Interpleader I Settlement Agreement.

7       36.    The insurance policy that is the subject of this lawsuit is titled an
8  "Infringement Defense Cost and Damages Reimbursement Insurance Policy". The sole
9  benefit to be received or paid under the policy is to "reimburse [the insured] for [the
10 insureds] litigation expenses should [the insured] be sued by another for infringement
11 of their patent . . ."  Page 3 of the Application). Page 1, paragraph 1 of the Policy, in
12 ALL CAPITAL LETTERS, states:

13                 PLEASE NOTE THIS IS A DEFENSE COST AND
                   DAMAGES REIMBURSEMENT POLICY ONLY. UNLESS
14                 SPECIFICALLY ASSUMED BY THE COMPANY
                   [GOTHAM] IN WRITING, THE DEFENSE OF THE NAMED
15                 INSURED IN ANY ACTION, ADMINISTRATIVE
                   PROCEEDING(S) OR CIVIL PROCEEDING(S) OF
16                 WHATEVER NATURE IS AT ALL TIMES THE
                   RESPONSIBILITY OF
17                 THE NAMED INSURED.

18       37.    Later on the first page of the Policy, the Policy states that the limit of
19 indemnity available to pay "DAMAGES (IF SUCH DAMAGES ARE DESIGNATED
20 ON THE DECLARATIONS PAGE" shall be reduced by amounts reimbursed for
21 Litigation Expense. Further stated in the same paragraph is that amounts incurred for
22 Litigation Expense and Damages shall be applied against the "Self-Insured Retention
23 Amount".

24 ..

25 ..

26 ..

27       38.    Section C - Limits of Liability on page 2 of the Policy states:

28

---

FIRST AMENDED COMPLAINT
5:13-CV-03810-BLF

Subject to the Copayment Percentage / Self Insured Retention per CLAIM . . ., the Limits of Reimbursement (Indemnification) Liability and Damages (if indicated) shown on the Declarations Page is the most that the Company shall pay for reimbursement or indemnification of all LITIGATION EXPENSES and DAMAGES . . .

39.     The term "SELF INSURED RETENTION" acts as a deductible and condition precedent to reimbursement under the Policy. This term is defined as: "The amount of unreimbursed LITIGATION EXPENSES and/or DAMAGES for each CLAIM that the Named Insured shall be obligated to pay before the Company shall reimburse any CLAIM amounts."  Thus, when these collective provisions are read together, Gotham technically is only required to reimburse the Named Insured(s) after they have exhausted the "SELF INSURED RETENTION" (in this case a total of $250,000.00 which the parties agreed in the previously executed Interpleader I Settlement Agreement would be divided 50/50 with Shasta being responsible for $125,000.00 of the Self-Insured Retention).

40.     The Self Insured Retention (deductible) was to remain in effect. However, in consideration of the terms of the Interpleader I Settlement Agreement, Gotham agreed that the actual payment of the Self Insured Retention would no longer be a pre-condition to the reimbursement obligation.  Gotham's agreement to this term was in consideration for what Gotham expected was a full and final resolution of the issues in Interpleader I, including, without limitation, the allocation issue, the release and dismissal of the bad faith claims by Shasta, and Shasta's waiver of California Civil Code 1542. At no time has Gotham ever considered the Interpleader I Settlement Agreement to be a "interim agreement".  Had Gotham known that Shasta did not consider the Interpleader I Settlement Agreement to be a full and final resolution of the issues, including allocation, Gotham would not have executed the Settlement Agreement and would have gone forth with the prosecution of the Interpleader I case.

41.     Prior to executing the Interpleader I Settlement Agreement, Shasta and Knickerbocker and Cal Jr knew about the manner in which Gotham had interpreted

1  the Policy for purposes of allocation of the Policy proceeds.  Specifically, on July
2  25, 2012, over a month before the effective date of the Interpleader I Settlement
3  Agreement, Shasta, Cal Jr and Knickerbocker had been advised that the authorized
4  charges to invoices of its legal counsel were being reduced by 50% because 50% of the
5  fees were allocated to work on behalf of an uninsured party - Conductive
6  Technologies, Inc. ("CTI").  Also, on June 14, 2012, over two months before the
7  effective date of the Interpleader I Settlement Agreement, Shasta and Knickerbocker
8  and Cal Jr had been informed that the allocation was to be 50% of the authorized
9  invoices because Shasta's counsel (Ropers) was representing both Shasta and the
10  uninsured CTI in the Underlying Lawsuit.  At all times prior to entering into the
11  Interpleader I Settlement Agreement, Knickerbocker, Cal Jr and Shasta were aware and
12  explicitly told of the allocation such that prior to the effective date of the Interpleader I
13  Settlement Agreement, the allocation issue was a known issue for Knickerbocker, Cal
14  Jr and Shasta.

15       42.     At the time that Knickerbocker, Cal Jr and Shasta entered into the
16  Interpleader I Settlement Agreement, they represented both orally and in writing that
17  they intended to "resolve their differences concerning the respective rights of the
18  insureds under the Gotham policy to the benefits and proceeds from the Policy of
19  Insurance" and that such agreement would be the "final expression of their agreement".
20  Gotham, Pharmatech and Instacare expressly intended the Interpleader I Settlement
21  Agreement to fully and finally settle all disputes as to allocation of proceeds and Policy
22  benefits.   Gotham was informed and believed by the representations of Knickerbocker,
23  Cal Jr and Shasta, as well as Cal Jr's and Shasta's execution of the Interpleader I
24  Settlement Agreement that Shasta, Cal Jr and Knickerbocker intended the Interpleader
25  I Settlement Agreement to be a final resolution.

26       43.     Unknown to Gotham or any other parties to the Interpleader I Settlement
27  Agreement, neither Shasta nor Knickerbocker nor Cal Jr intended the Interpleader I
28  Settlement Agreement to be a full and final resolution of the dispute as to allocation of

1 the Policy proceeds. It was not until Gotham filed this lawsuit and a motion to dismiss

2 the counter-claims of Shasta that Gotham learned that Shasta, Cal Jr and

3 Knickerbocker had misrepresented their intentions in executing the Interpleader I

4 Settlement Agreement. On or about November 19, 2013, Cal Jr submitted a

5 declaration in opposition to Gotham's motion to strike Shasta's counter-claims herein,

6 in which declaration Cal Jr refers to the Interpleader I Settlement Agreement as "an

7 interim agreement". Prior to the filing of the within action and prior to the execution

8 of the Interpleader I Settlement Agreement, no party nor signatory to the Interpleader I

9 Settlement Agreement had ever characterized the Interpleader I Settlement Agreement

10 as "an interim agreement." Had Gotham known Shasta's, Cal Jr's and

11 Knickerbocker's true intention that the Interpleader I Settlement Agreement was to be

12 "an interim agreement", Gotham would never have entered into that agreement nor

13 dismissed the Interpleader I lawsuit, nor agreed to pay policy proceeds before

14 expenditure of the Self-Insured Retention.

15     44.    Gotham could not have known, in the exercise of reasonable diligence,

16 that Shasta, Cal Jr and Knickerbocker had no intention of performing the promises

17 made in the Interpleader I Settlement Agreement or that Cal Jr, Knickerbocker and

18 Shasta secretly intended the Interpleader I Settlement Agreement to be "an interim

19 agreement" when all other parties signed the same intending it to be a full and final

20 resolution of all disputes, and, therefore, justifiably relied on Cal Jr's and

21 Knickerbocker's representations and Shasta's promises in signing the Interpleader I

22 Settlement Agreement.

23     45.    At all relevant times prior to execution of the Interpleader I Settlement

24 Agreement and dismissal of the Interpleader I lawsuit, Knickerbocker, Cal Jr, and

25 Shasta knew of their secret intention that the Interpleader I Settlement Agreement was

26 not a final resolution of the disputes giving rise to the Interpleader I lawsuit and that

27 the Interpleader I Settlement Agreement was to be "an interim agreement".

28

46.     At all relevant times, Knickerbocker, Cal Jr and Shasta intentionally and knowingly hid their secret intention from Gotham, Instacare and Pharatech, with the intent to deceive Gotham into (a) dismissing the Interpleader I case, (b) paying policy proceeds to Shasta's counsel to fund the defense of the Underlying Lawsuit, and (c) not requiring the Self-Insured Retention to be paid before reimbursement of defense fees in the Underlying Lawsuit - as required by the Policy.

47.     At all relevant times, Knickerbocker, Cal Jr and Shasta hid their secret intentions in order to deceive and, in fact, did deceive Gotham into thinking that the the Interpleader I Settlement Agreement was a full and final resolution of the Interpleader I lawsuit.

48.     The representations, omissions and deception of Knickerbocker, Cal Jr and Shasta that they intended to abide by the terms of the the Interpleader I Settlement Agreement and that it was to be a full and final resolution of the Interpleader I lawsuit, were false in that neither Shasta, nor Knickerbocker, nor Cal Jr ever intended to fairly and in good faith to fulfill the terms of the the Interpleader I Settlement Agreement.

49      Gotham justifiably relied on the representations by Shasta, Cal Jr and Knickerbocker in entering into and executing the Interpleader I Settlement Agreement.

50.     Had Gotham known the true intentions of Knickerbocker, Cal Jr and Shasta, Gotham (a) would not have entered into the Interpleader I Settlement Agreement,  (b) would not have dismissed the Interpleader I case, (c) would not have paid policy proceeds to Shasta's counsel to fund the defense of the Underlying Lawsuit without a court order resolving the interpleader issues, and (d) would have required the Self-Insured Retention to be paid before reimbursement of defense fees in the Underlying Lawsuit - as required by the Policy.

51.     As a direct and proximate result of such reliance on the fraudulent conduct by Knickerbocker, Cal Jr, and Shasta, Gotham has been damaged in an unknown amount, Gotham reserves the right to amend this Complaint at such time as the precise amount of damages becomes known.

52.     The conduct of Knickerbocker, Cal Jr, and Shasta, as alleged herein, was willful and constitutes oppression, fraud and malice within the meaning of California Civil Code Section 3294.  Accordingly, Gotham is entitled to punitive and exemplary damages in an amount to be proven at the time of trial

53.      Moreover, as a direct and proximate result of Knickerbocker's, Cal Jr.'s and Shasta's fraudulent conduct, Gotham has been forced to file this second Interpleader Action.  Consequently, under the doctrine of Tort of Another, Gotham is entitled to seek from Knickerbocker, Cal Jr., and Shasta reimbursement of all attorneys' fees and costs incurred in prosecuting and defending itself in this Action.

## PRAYER FOR RELIEF

Wherefore, Gotham  prays:

(a)     That Defendants in Interpleader and each of them be ordered to interplead and to litigate their claims to the Proceeds described in this Complaint;

(b)     That Gotham be discharged from liability as to each of the said defendants with respect to said money or properties;

(c)     That all Defendants in Interpleader and adverse claimants be restrained from instituting or further prosecuting any other action in any state court involving the same Proceeds pursuant to Section 386(f) of the California Code of Civil Procedure ;

(d)     That this Court enter its judgment for declaratory relief regarding the Proceeds due under the Policy, if any;

(e)     That Gotham be awarded general and special damages against Shasta, Knickerbocker and Cal Jr.  according to proof;

(f)     That Gotham be awarded punitive damages against Shasta, Knickerbocker and Cal Jr. according to proof,

(g)     That Gotham be awarded attorney fees and costs according to proof; and

(h)     For such other and further relief as this Court deems to be just and appropriate.

1  Dated:        July 31, 2014                    **PLAGER SCHACK LLP**

2

3                                        By:     /s/Mark H. Plager

4                                                Mark H. Plager
                                                 Attorneys for Plaintiff
                                                 Gotham Insurance Company

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28