1   OGLOZA FORTNEY LLP
      Darius Ogloza (SBN 176983)
2      *dogloza@oglozafortney.com*
      David C. Fortney (SBN 226767)
3      *dfortney@oglozafortney.com*
    535 Pacific Avenue, Suite 201
4   San Francisco, California 94133
    Telephone:  (415) 912-1850
5   Facsimile:  (415) 887-5349

6   Attorneys for Defendants and Cross-Defendants
    Shasta Technologies, LLC,
7   Calvin A. Knickerbocker, Jr.,
    and Calvin A. Knickerbocker III

8
                    **UNITED STATES DISTRICT COURT**
9
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10

11  | GOTHAM INSURANCE COMPANY, | **CASE NO.** 5:13 cv 03810 BL F |
    |---|---|
12  | Plaintiff in Interpleader, | |
13  | v. | **DECLARATION OF DAVID FORTNEY IN SUPPORT OF SHASTA TECHNOLOGIES, LLC'S OPPOSITION TO PHARMATECH SOLUTIONS, INC.'S MOTION TO DE-DESIGNATE LIFESCAN SETTLEMENT** |
14  | SHASTA TECHNOLOGIES, LLC; CALVIN A. KNICKERBOCKER, III; CALVIN A. KNICKERBOCKER, JR.; INSTACARE CORP.; and PHARMATECH SOLUTIONS, INC., | |
15  | | |
16  | | |
17  | Defendants in Interpleader. | |
18  | | |
19  | _____ | |
20  | AND RELATED COUNTER-CLAIM | |
21  | | |

22

23

24

25

26

27

28

DECLARATION OF DAVID C. FORTNEY

I, David C. Fortney, declare as follows:

1.      I am an attorney duly admitted to practice law in the State of California and before this Court.  I am a partner in the law firm of Ogloza Fortney LLP, attorneys of record for defendant Shasta Technologies, LLC ("Shasta") in the above-captioned action.  I have personal knowledge of the facts set forth below and, if called upon to do so, could and would testify competently thereto under oath.  I submit this Declaration in support of Shasta's Opposition to PharmaTech's Motion to De-Designate LifeScan Settlement Agreement As Highly Confidential – Attorneys' Eyes Only.

2.      Shasta, PharmaTech Solutions, Inc. ("PharmaTech") and Conductive Technologies, Inc. ("CTI") are or were all parties defendant to certain patent infringement litigation brought by LifeScan, Inc. and LifeScan Scotland, Ltd. (collectively, "LifeScan") in this District, captioned *LifeScan Scotland, Ltd. v. Shasta Technologies, LLC et al.,* Case No. CV11-04494 (N.D. Cal., San Jose Division) (the "Patent Litigation").

3.      In or around February 2015, Shasta and CTI settled all claims and counter-claims in the Patent Litigation between themselves and LifeScan, and entered into a confidential settlement agreement with LifeScan regarding the same.  PharmaTech and LifeScan did not reach a settlement at that time and litigation in the Patent Action between them is ongoing.  A true and correct copy of excerpts of the docket sheet in the Patent Action (showing a filing as recently as February 26, 2016) is attached hereto as **Exhibit A.**

4.      On or around March 20, 2014, during the pendency of both the Patent Litigation and the present interpleader action, Shasta and PharmaTech entered into a "Binding Term Sheet" for the settlement of both this interpleader action as well as other commercial disputes between them.  A true and correct copy of the "Binding Term Sheet" is attached hereto as **Exhibit B**.

5.      To my understanding, PharmaTech did not perform any portion of the Binding Term Sheet, including but not limited to failing to make the initial payment called for by the Binding Term Sheet of $50,000.

1    6.    On or around April 22, 2015, PharmaTech filed a lawsuit against Shasta in the

2    Superior Court of Ventura County, California, alleging breach by Shasta of the Binding Term

3    Sheet as well as an underlying distribution agreement between Shasta and PharmaTech.  A true

4    and correct copy of PharmaTech's complaint in the Ventura action is attached hereto as **Exhibit**

5    **C**.

6    7.    On February 19, 2015, I took the deposition of Keith Berman, PharmaTech's

7    President and Rule 30(b)(6) designee for PharmaTech.  True and correct excerpted portions of

8    that deposition are attached hereto as **Exhibit D**.

9

10    I declare under penalty of perjury under the laws of the United States that the foregoing is

11    true and correct.  Executed on March 2, 2016 at San Francisco, California.

12

13

14    _____

      David C. Fortney

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

ADRMOP,AO279,APPEAL,E-Filing,PROTO,REFSET-JCS

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:11-cv-04494-WHO

LifeScan Scotland, Ltd. v. Shasta Technologies, LLC et al
Assigned to: Hon. William H. Orrick
Referred to: Magistrate Judge Joseph C. Spero (Settlement)
Relate Case Case: 3:12-cv-06360-WHO
Cause: 35:145 Patent Infringement

Date Filed: 09/09/2011
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

### Plaintiff

**LifeScan Scotland, Ltd.**                          represented by   **Charles Davison Hoffmann**
Hoffmann Marshall Strong LLP
116 W 23rd St, Ste 500
New York, NY 10011
646-741-4501
Fax: 646-741-4501
Email: charlie@hmscounsel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maggie Wittlin**
Patterson Belknap Webb and Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Email: mwittlin@pbwt.com
*TERMINATED: 07/01/2014*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Anthony DeCinque**
Patterson Belknap Webb Tyler
1133 Avenue of the Americas
New York, NY 10036
212-336-2040
Email: adecinque@pbwt.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eugene M. Gelernter**
Patterson Belknap Webb and Tyler
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
Email: emgelernter@pbwt.com

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2011 | 1 | COMPLAINT /no process against Conductive Technologies, Inc., Instacare Corp., Pharmatech Solutions, Inc., Shasta Technologies, LLC ( Filing fee $ 350, receipt number 54611010348.). Filed byLifeScan Scotland, Ltd.. (ga, COURT STAFF) (Filed on 9/9/2011) (Additional attachment(s) added on 9/15/2011: # 1 Complaint) (ga, COURT STAFF). (Additional attachment(s) added on 6/10/2015: # 2 Receipt) (aaa, COURT STAFF). (Entered: 09/13/2011) |
| 09/09/2011 | 2 | Certificate of Interested Entities by LifeScan Scotland, Ltd. re 1 Complaint, (ga, COURT STAFF) (Filed on 9/9/2011) (Entered: 09/13/2011) |
| 09/09/2011 | 3 | ADR SCHEDULING ORDER: Case Management Statement due by 12/15/2011. Case Management Conference set for 12/22/2011 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 9/9/11. (Attachments: # 1 Standing Order)(ga, COURT STAFF) (Filed on 9/9/2011) (Entered: 09/13/2011) |
| 09/13/2011 | 4 | REPORT on the filing of an action regarding PATENT INFRINGEMENT (cc: form mailed to register). (ga, COURT STAFF) (Filed on 9/13/2011) (Entered: 09/13/2011) |
| 09/15/2011 | 5 | Summons Issued as to Conductive Technologies, Inc., Instacare Corp., Pharmatech Solutions, Inc., Shasta Technologies, LLC. (ga, COURT STAFF) (Filed on 9/15/2011) (Entered: 09/23/2011) |
| 10/05/2011 | 6 | MOTION to Expedite *Discovery and Modify Scheduling Order* filed by LifeScan Scotland, Ltd.. (Attachments: # 1 Proposed Order) Please see amended 26 (Vespremi, Roberta) (Filed on 10/5/2011) Modified on 10/24/2011 (cv, COURT STAFF). Modified on 9/10/2012 (ofr, COURT STAFF). (Entered: 10/05/2011) |
| 10/05/2011 | 7 | Declaration of Roberta H. Vespremi in Support of 6 MOTION to Expedite *Discovery and Modify Scheduling Order* filed byLifeScan Scotland, Ltd.. (Related document(s) 6 ) (Vespremi, Roberta) (Filed on 10/5/2011) (Entered: 10/05/2011) |
| 10/05/2011 | 8 | CERTIFICATE OF SERVICE by LifeScan Scotland, Ltd. re 6 MOTION to Expedite *Discovery and Modify Scheduling Order*, 7 Declaration in Support (Vespremi, Roberta) (Filed on 10/5/2011) (Entered: 10/05/2011) |
| 10/05/2011 | 14 | MOTION for leave to appear in Pro Hac Vice by Eugene M. Gelernter ( Filing fee $ 275, receipt number 34611065489.) filed by LifeScan Scotland, Ltd. (Attachments: # 1 Proposed Order)(mjj2, COURT STAFF) (Filed on 10/5/2011) (Entered: 10/07/2011) |
| 10/05/2011 | 15 | MOTION for leave to appear in Pro Hac Vice by Scott B. Howard ( Filing fee $ 275, receipt number 34611065491.) filed by LifeScan Scotland, Ltd.. (Attachments: # 1 Proposed Order)(mjj2, COURT STAFF) (Filed on 10/5/2011) (Entered: 10/07/2011) |
| 10/05/2011 | 16 | MOTION for leave to appear in Pro Hac Vice by Gregory L. Diskant ( Filing fee $ 275, receipt number 34611065492.) filed by LifeScan Scotland, Ltd. (Attachments: # 1 Proposed Order)(mjj2, COURT STAFF) (Filed on 10/5/2011) (Entered: 10/07/2011) |

| | | (Entered: 02/22/2016) |
|---|---|---|
| 02/23/2016 | 530 | Letter from Gregory L. Diskant *to Judge Orrick regarding Summary Judgment Motion*. (Diskant, Gregory) (Filed on 2/23/2016) (Entered: 02/23/2016) |
| 02/23/2016 | 531 | Declaration in Support of 528 Administrative Motion to File Under Seal filed byLifeScan Scotland, Ltd., Lifescan, Inc.. (Related document(s) 528 ) (DeCinque, Anthony) (Filed on 2/23/2016) (Entered: 02/23/2016) |
| 02/23/2016 | 532 | Transcript of Proceedings of the official sound recording held on 02/17/16, before Judge William H. Orrick. FTR/Transcriber Echo Reporting, Inc., telephone number (858) 453-7590.;echoreporting@yahoo.com. Tape Number: FTR 2:00 - 3:41. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 529 Transcript Order ) Redaction Request due 3/15/2016. Redacted Transcript Deadline set for 3/25/2016. Release of Transcript Restriction set for 5/23/2016. (Related documents(s) 529 ) (tgb, COURT STAFF) (Filed on 2/23/2016) (Entered: 02/23/2016) |
| 02/23/2016 | 533 | NOTICE by LifeScan Scotland, Ltd., Lifescan, Inc. *of filing presentation slides used by LifeScan Scotland, Ltd., Lifescan, Inc. at the hearing on the motion for summary judgment on February 17, 2016* (DeCinque, Anthony) (Filed on 2/23/2016) (Entered: 02/23/2016) |
| 02/24/2016 | 534 | Declaration of Dr. Joseph Wang in Support of 516 Administrative Motion to File Under Seal *[REDACTED VERSION OF DKT. 516-3]* filed byDecision Diagnostics Corp., Instacare Corp., Pharmatech Solutions, Inc.. (Related document(s) 516 ) (Grant, Jeffrey) (Filed on 2/24/2016) (Entered: 02/24/2016) |
| 02/26/2016 | 535 | OBJECTIONS to re 531 Declaration in Support by Decision Diagnostics Corp., Instacare Corp., Pharmatech Solutions, Inc.. (Grant, Jeffrey) (Filed on 2/26/2016) (Entered: 02/26/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/02/2016 18:40:54 | | | |
| **PACER Login:** | ofpacer1:4030688:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-04494-WHO |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# EXHIBIT B

**Binding Term Sheet for the GenStrip Technology Buyout from Shasta by PharmaTech**

The following has been electronically sent on March 18, 2014 to the following parties for signature:

      Calvin Knickerbocker, Sr., Managing Member of Shasta Technologies, LLC
      Keith Berman, President of PharmaTech Solutions, Inc.
      Rita Chasco, President of Broadtree, Inc.

By signing this binding Term Sheet, each signer agrees to abide by these terms herein as an individual, and as the representative of their respective companies, and that they have the full authority to sign on behalf of their respective entities. Each signer furthers agree to fully cooperate in the preparation and signing of this Term Sheet and the final settlement agreement to follow.

The following are the Buyout terms as agreed to by the parties above:

1. The Buyout is for Shasta's intellectual property (technology, marks, goodwill and 510(k), etc. and whatever is usual and customary for asset acquisitions of this nature), but not for the acquisition of Shasta as an entity.  A further description of this intellectual property will be provided prior to the completion of a subsequent long form written Settlement Agreement (hereafter "Settlement Agreement"), and agreed to by the parties hereto.
2. The Buyout amount of $2,000,000.00 will be placed into escrow within 15 days of the signing of the Settlement Agreement.
3. Subject to Section 4, the initial payment to Shasta will be a non-refundable $50,000 with 7.5% ($3,750) to be paid directly to Broadtree.
4. Schedule: Shasta will have: (i) 5 business days to reach a written understanding with Ropers Majeski (hereafter "Ropers") regarding the settlement amount of their fees.  A copy of the understanding with Ropers will be sent to escrow which will trigger a transfer of the $50,000 described in paragraph 3 above; (ii)  15 days to execute the Settlement Agreement; (iii) 60 days to determine whether the "483" issues have been settled, and to release the $2,000,000 (the 60-day period can be extended with written permission of all parties); and (iv) the time to start formal documentation begins on the date this Term Sheet is signed by Shasta, Broadtree and PharmaTech.
5. The definition of when the "483" matter is settled for release of $2,000,000 must be an objective set of circumstances which a third-party escrow agent can act upon.  The wording of this objective is to follow and will be included in the Settlement Agreement.
6. Shasta will execute all documents and place them in escrow as needed to withdraw from all appropriate FDA data bases relative to GenStrip, and Shasta will assist PharmaTech in replacing Shasta in these FDA databases upon the signing of the Term Sheet.  Escrow holder to release documents to PharmaTech simultaneously with release of all escrowed funds ($2,000,000 + $478,000 to Shasta). The final description of these actions will be described in the Settlement Agreement.
7. Shasta, through its managing member, will sign a release form that PharmaTech and CTI may use in responding to their respective Form 483 letters from FDA, which will state to the FDA and the public (through announcement and/or Form 8K filing), stating that Shasta and its members no longer have any involvement in GenStrip, either as a working partner, or as previous owner of the design.  The release forms will be held in escrow and released to PharmaTech simultaneously with the release of all escrowed funds ($2,000,000 + $478,000 to Shasta.)

8. Shasta, Broadtree and PharmaTech will sign a dissolution of the June 2011 Distribution Agreement concurrently with the closing of Escrow and distribution of funds ($2,000,000).

9. The Insurance proceeds paid to Shasta/Ropers from IPISC/Gotham insurance fund, i.e., $478,000.00, will placed into escrow. Shasta will grant Lathrup a Power of Attorney to defend all named parties against all claims in the trademark and patent suits. (Hereafter the "Litigation.") Pursuant to the Power of Attorney, Shasta is agreeing that its role in the Litigation has ended. Lathrop shall agree to defend Shasta in the Litigation (as consideration for the $50,000 fee paid). Shasta to secure Ropers' substitution of counsel documents immediately upon the execution of this Term Sheet. Ropers to agree to full fee payment "walk-away" before the execution of this Term Sheet and the Settlement Agreement to follow, within 48 hours of receipt of the Term Sheet. It is expected that Shasta will come to verbal agreement with Ropers within the next 72 hours.

10. Ropers will withdraw as counsel of record in the Litigation concurrently with the execution of the Power of Attorney granted to Lathrup by Shasta. Further PharmaTech shall not be responsible now or into the future for any monies owed to Ropers, or to Shasta's counsel Randy Hess ("Hess").

11. Shasta is responsible for satisfying its all payables to Ropers, and to Hess, not covered by the $478K from the insurer, and Ropers will sign a release of all claims against PharmaTech, including that Shasta will have no further liabilities, or expenses arising out of the Litigation upon the execution of the Settlement Agreement. The parties' attorneys will craft language to memorialize this in the Settlement Agreement.

12. PharmaTech will take full responsibility for all payables due Attorney Duval except for those amounts due Attorney DuVal due to DuVal's representation in Shasta's 483 inspection as incurred to the date of the signing of this Term Sheet, and any amounts owing to Attorney Duval from demands made of Attorney DuVal in 2011, 2012 and 2013 by Ropers where Attorney DuVal provided services based on these demands.

13. PharmaTech will attempt to persuade IPISC to contribute additional funds into the settlement, but such funds are <u>not</u> guaranteed.

14. Shasta will receive 10% of the net monies the Court orders Johnson & Johnson (hereafter "J&J") to pay the defendants relative to damages incurred as a result of the two preliminary injunctions.

15. Shasta will receive 20% of the net monies for attorney's fees granted at the end of the litigation with J&J/LifeScan, if any, and 5% of any litigation damages ordered by the court related to PharmaTech's counter-suits against J&J LifeScan for false advertising and anti-trust.

Broadtree will agree to the following settlement terms:

16. Broadtree will accept $388,923 as full compensation due under the Shasta Operating Agreement, or any other contract or Agreement (monies, royalties and the like). These monies to be paid directly to Broadtree out of escrow and netted against the $2,000,000. Broadtree shall pay its prorated share of escrow costs.

17. Broadtree has the option agree to sell, and, if Broadtree exercises this option, Shasta will agree to buy Broadtree's 7.5% membership for one-Dollar ($1.00) concurrently with the distribution of funds outlined on Paragraph 17 above. Subject to tax implications; see #20 below.

18. Broadtree will receive 7.5% ,and Calvin Knickerbocker, Sr., Calvin Knickerbocker, Jr. and Dr. Yu will each receive 30.83% of any monies PharmaTech pays to Shasta as a result of a payment by J&J, if any, resulting from a settlement of the injunction damages , from any other source. Broadtree will receive any such payments directly and not through Shasta.

19. Shasta shall immediately provide a copy of its manufacturing agreement with CTI, and any and all addenda and extensions to that agreement, so that PharmaTech can respond to its 483 Observation letter.

20. This Term Sheet is subject to review and approval by Shasta's tax counsel within the 5-day period prior to $50,000 payment.

General Terms:

21. The term "Shasta" shall mean the existing LLC.

22. The term "PharmaTech" shall mean that division, or any other division of Decision Diagnostics.

23. The term "GenStrip" shall mean any alternative test strip sold by PharmaTech for use in Ultra meters of LS, regardless of strip modifications, brand name, source of manufacturing or where in the world it is sold.

24. Shasta shall receive full releases signed by CTI within the initial the 5 day period and held in escrow until release of all escrowed funds.

25. The terms of this Term Sheet are intended to be binding on all parties pending execution of the Settlement Agreement.

26. Broadtree, its shareholders, employees and or associates, warrant, represent and agree that they, singly or collectively, or through others on their behalf, have not received, nor will receive, any other consideration or compensation for any acts or promises heretofore performed or to be performed regarding PharmaTech's buyout of the GenStrip technology as described herein, other than as is set forth herein, or disclosed by them, in writing, prior to the execution of this agreement.

So Agreed:

For Shasta Technologies, LLC.

By: _____ Date 3/20/2014

Calvin Knickerbocker, Sr., Managing Member


For Broadtree, Inc.

By: _____ Date 03/20/2014

Rita Chasco, President


For PharmaTech Solutions, Inc.

By: _____ Date 3/20/14

Keith Berman, President

**EXHIBIT C**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SHASTA TECHNOLOGIES, LLC, an Oregon Limited Liability
Company, and DOES 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PHARMATECH SOLUTIONS, INC., a Nevada Corporation

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

VENTURA
SUPERIOR COURT
FILED

APR 2 2 2015

MICHAEL D. PLANET
Executive Officer and Clerk
By:_____ Deputy

**TRICIA PLUMM-ALBERS**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an **attorney** referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the **case.**

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó mas de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Ventura Hall of Justice<br>800 South Victoria Avenue<br>Ventura, California 93009 | CASE NUMBER<br>*(Número del Caso):*<br>56-2015-00466606-CU-BC-VTA |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jeff Grant (SBN 218974). 1800 Century Park East, Suite 300, Los Angeles, CA 90067 TEL: 310-228-4483

| DATE:<br>*(Fecha)* | APR 2 2 2015 | Clerk, by<br>*(Secretario)* | **Michael D Planet** | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)* **TRICIA PLUMM-ALBERS**

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* SHASTA TECHNOLOGIES, LLC, an Oregon Limited Liability Company

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

William Rudy (*pro hac vice* application forthcoming)
John Shaeffer (SBN 138331)
Jeff Grant (SBN 218974)
Fox Rothschild LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: 310.598.4150
Fax: 310.556.9828

Attorneys for Plaintiff
PharmaTech Solutions, Inc.

VENTURA
SUPERIOR COURT
FILED

APR 22 2015

MICHAEL D. PLANET
Executive Officer and Clerk
BY· _____ . Deputy

TRICIA PLUMM-ALBERS

SUPERIOR COURT OF CALIFORNIA

VENTURA COUNTY

| | |
|---|---|
| PHARMATECH SOLUTIONS, INC, a Nevada Corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>SHASTA TECHNOLOGIES, LLC, an Oregon Limited Liability Company, and DOES 1 through 10.<br><br>                    Defendants. | Case No. 56-2015-00466606-CU-BC-VTA<br><br>**COMPLAINT FOR BREACH OF CONTRACTS**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff PharmaTech Solutions, Inc. ("PharmaTech" or "Plaintiff") hereby alleges against Defendant Shasta Technologies, LLC ("Shasta" or "Defendant") and DOES 1 through 10 as follows:

### INTRODUCTION

1.     This lawsuit arises out of two contracts entered into by PharmaTech and Shasta concerning the diagnostic blood glucose test strip to known as the GenStrip.

2.     Diabetes is a disease in which individuals suffer high blood sugar levels over a prolonged period of time.  The rate of diabetes has skyrocketed in the past two decades and, as of 2012, nearly 30 million of Americans, or almost 10% of the population, suffers from the disease.  Diabetes is the seventh leading cause of death in the United States.

3.     Treatment of diabetes most often requires the constant monitoring of blood sugar levels through the use of glucose monitoring systems.  The systems are typically composed of a reusable meter and a disposable test strip.  To use the system, a patient places a disposable test strip in the meter, draws a small drop of blood using a lancet, and places the blood on the test strip.  The meter then determines the glucose level in the blood by measuring the electrical current produced when an electrochemical reaction is triggered in the strip by the glucose.

4.     The market leader for blood glucose systems is Lifescan, Inc. ("Lifescan"), which is a wholly-owned subsidiary of Johnson & Johnson.  One of Lifescan's most popular systems is sold as the OneTouch Ultra System.  Lifescan typically offers OneTouch Ultra System meters at low or no cost and then charges the consumers and/or their insurers as much as $1 per test strip.

5.     The cost of name-brand diabetes test strips is prohibitively expensive for many consumers.  Some patients are advised by their doctors to test their blood sugars as much as three or five times a day.  Many patients cannot afford the costs associated with these monitoring requirements and consequently do not monitor their blood sugars in accordance with their doctors' instructions.

6.     The GenStrip is high quality, low cost test strip that is compatible with Lifescan's OneTouch Ultra System.  The GenStrip was the first competitive test strip that was cleared for sale by the FDA for use in Lifescan's OneTouch Ultra Systems.  GenStrip test strips sell for a fraction of price of Lifescan's own test strips.

COMPLAINT FOR BREACH OF CONTRACTS

7.      In May of 2010, the parties entered into an exclusive retail distribution agreement in accordance with which Shasta granted PharmaTech rights to distribute and sell the GenStrip.  In that agreement, Shasta represented that the FDA would clear the GenStrip for sales in the United States no later than December 31, 2010.  Those representations were not true.   Shasta was unable to secure FDA clearance.

8.      In light of Shasta's failure to obtain FDA clearance, PharmaTech took control of GenStrip FDA petition.  In June of 2011, the parties executed another exclusive distribution agreement that, in addition to reaffirming PharmaTech's distribution rights, specifically gave PharmaTech the right to control the FDA petition for GenStrip clearance.  This agreement, entitled the Exclusive Distribution Agreement of June 2011 ("Exclusive Distribution Agreement"), required PharmaTech to make various upfront payments, to reimburse Shasta for its prior efforts to obtain FDA clearance, and to pay Shasta royalties for each sale.

9.      On November 30, 2012, under PharmaTech's control, the FDA cleared the GenStrip for sale in the United States.

10.     On March 20, 2014, PharmaTech and Shasta entered into the Binding Term Sheet for the GenStrip Technology Buyout from Shasta by PharmaTech ("Binding Term Sheet"), which contemplated that all of Shasta's rights in and to the GenStrip would be transferred to PharmaTech.

11.     Shasta breached both the June 2011 Exclusive Distribution Agreement and the March 2014 Binding Term Sheet.  As described more fully below, Shasta repeatedly and intentionally frustrated PharmaTech's rights to market and sell the GenStrip.  Shasta's acts constitute multiple breaches of both the express and implied terms of both of those agreements.

## THE PARTIES

1.      Plaintiff PharmaTech is a Nevada Corporation, with its principal place of business at 2660 Townsgate Road, Suite 300, Westlake, California.

2.      Defendant Shasta is an Oregon limited liability company, with its principal place of business at 7340 Hunziker Road, Ste. 205, Tigard, Oregon.  On information and belief, one or more of Defendant Shasta's members reside in and are citizens of California.

COMPLAINT FOR BREACH OF CONTRACTS
ACTIVE 207388873v.1 04/21/2015

1       3.      Plaintiffs are informed and believe, and on that basis allege, except as otherwise

2   indicated, that all of the Defendants were at all times acting as agents, servants, conspirators,

3   ostensible agents, employees, hirelings, partners, alter egos, joint venturers, and/or co-venturers of

4   each other, and that at all relevant times each was acting for a common purpose or benefit, so that each

5   defendant is responsible for the events described herein and is therefore jointly and severally liable for

6   the resulting damages.

7   **JURISDICTION AND VENUE**

8       4.      This Court has personal jurisdiction over Shasta because, on information and belief,

9   one or more of Shasta's members reside in and are citizens of California and Shasta is therefore a

10  resident of California.

11      5.      This Court has personal jurisdiction over all Defendants because all such Defendants

12  have transacted business in California, both in connection with the conduct at issue in this action—

13  including by entering into contracts with California residents concerning activity that was to take place

14  in California—and, upon information and belief, generally from systematic and continuous minimum

15  contacts with California.  Defendants' actions and omissions giving rise to this lawsuit also occurred

16  within California, and Defendants knowingly committed acts they knew or should have known would

17  cause harm in California to California residents.

18      6.      Venue is proper in Ventura County because Defendants are subject to personal

19  jurisdiction in this County and a substantial part of the events giving rise to Plaintiff's causes of action

20  occurred in this County.  Venue is also proper in this County because one or more Defendants have

21  contracted to perform an obligation in this County pursuant to contracts at issue in this action.

22  **THE PARTIES' CONTRACTS:**

23  **THE EXCLUSIVE DISTRIBUTION AGREEMENT AND THE BINDING TERM SHEET**

24      7.      On or about June 20, 2011, PharmaTech entered into an Exclusive Distribution

25  Agreement with Shasta and Broadtree, Inc., Shasta's creditor, to distribute the GensStrip.  A true and

26  correct copy of the Exclusive Distribution Agreement is attached hereto as **Exhibit A**.

27      8.      In the Recitals Section of the Exclusive Distribution Agreement, the parties identified

28  their intent:  Shasta holds "exclusive rights to develop, manufacture and sell" the GenStrip.  Shasta

3

1  engaged Conductive Technologies, Inc. ("CTI") to manufacture the GenStrip.  In May of 2010,

2  PharmaTech and Shasta entered into a distribution agreement for the GenStrip, wherein Shasta

3  represented that the product would be cleared by the FDA for sale in the United States no later than

4  December 31, 2010.  Shasta's representation was false.   Shasta was not successful in obtaining FDA

5  clearance.

6       9.    In accordance with the terms of the June 2011 Exclusive Distribution Agreement,

7  Shasta granted PharmaTech the right to work with the FDA to obtain clearance for sale of the

8  GenStrip.  The Agreement granted PharmaTech an exclusive, irrevocable license to manufacture,

9  produce, sell and distribute the GenStrip.  Shasta furthermore agreed therein not to "sell, transfer, lien

10  or encumber its title to the [GenStrip], without the express written consent of PharmaTech."

11       10.    The Exclusive Distribution Agreement required PharmaTech to pay Shasta royalties

12  from GenStrip sales.  PharmaTech was obliged to pay Shasta a royalty of $3.50 for each box of 50

13  strips.  It also included an income sharing provision, which additionally required PharmaTech to pay

14  28% of all revenue generated for sales of the unit above the selling price of $16.75 per box.  It also

15  included a provision for PharmaTech to pay Shasta another share if the actual costs of goods sunk

16  below $7.00 per box.

17       11.    The Executive Distribution Agreement required PharmaTech to advance $50,000

18  against royalties payable under the Agreement.  The Agreement furthermore required PharmaTech to

19  reimburse Shasta, up to $50,000, for expenses that Shasta incurred in connection with its attempts to

20  obtain FDA approval.

21       12.    In addition to the covenant of good faith and fair dealing, the Executive Distribution

22  Agreement specifically forbade the parties from acting in contravention of the interests of the other

23  parties:

24      NO INCONSISTENT ACTIONS:  The Parties will not voluntarily undertake or fail to

25      undertake any action or course of action that is inconsistent with the provisions or intent

26      of this Agreement.  Furthermore, it is the intent of the Parties hereto to act in good faith

27      and a fair and reasonable manner with respect to the interpretation and application of the

28      provisions of this Agreement to achieve the intent of the parties hereto.

4

COMPLAINT FOR BREACH OF CONTRACTS

13.     On March 20, 2014, PharmaTech and Shasta entered into the Binding Term Sheet for the GenStrip Technology Buyout from Shasta by PharmaTech ("Binding Term Sheet").[1] **Exhibit B**. The Binding Term Sheet contemplates the transfer all rights in and to the GenStrip to PharmaTech for $2 million.

**LITIGATION INSTIGATED BY LIFESCAN BEFORE AND AFTER FDA CLEARANCE**

14.     In 2011, shortly after the parties executed the Exclusive Distribution Agreement, Lifescan brought an action in the United States District Court for the Northern District of California against PharmaTech, Shasta, CTI and Instacare, Inc., which was related to PharmaTech. Lifescan alleged that the GenStrip infringed two patents owned by Lifescan.[2] At the time that Lifescan brought this action, the GenStrip had not obtained FDA approval.

15.     The FDA cleared the GenStrip for sale in the United States in late 2012. Soon afterwards, Lifescan brought another action against PharmaTech, Shasta and CTI alleging violations under the Lanham Act. The Lanham Act lawsuit stemmed from Shasta's design of the packaging for the GenStrip. Shasta had placed on these boxes the logo of Johnson & Johnson, and its subsidiary, Lifescan along with a photograph of Lifescan's "One Touch" blood monitoring device, without Lifescan's prior knowledge, authorization or consent.

16.     On May 21, 2013, the District Court issued a preliminary injunction barring the use any GenStrip packaging that included a Lifescan logo or photograph of the OneTouch. This preliminary injunction was modified slightly by the District Court on June 24, 2013, to permit the use of a photograph of the "One Touch" on the materials inside of the box and then only to demonstrate that the GenStrip was compatible with the One Touch device.

17.     In view of the foregoing, it was necessary for PharmaTech to order replacement boxes in new packaging and to pay the labor necessary to assemble the new packages in order to comply with the District Court's Preliminary Injunction. Accordingly, PharmaTech ordered 74,256 replacement GenStrip boxes from CTI between October 23 and December 2, 2013.

---

[1] Broadtree was also a party to the Binding Term Sheet as Shasta's creditor.

[2] Lifescan subsequently amended its complaint to add infringement allegations concerning a third patent.

COMPLAINT FOR BREACH OF CONTRACTS

ACTIVE 29738873v1 04/21/2015

18.     In early 2015, Lifescan negotiated and settled with Shasta and CTI.  In connection with that settlement, on information and belief, CTI agreed not to supply PharmaTech with any additional GenStrip inventory unless and until PharmaTech settled its claims with Lifescan.  On information and belief, Shasta interfered with PharmaTech's ability to obtain GenStrip units from CTI.

19.     Lifescan's claims against PharmaTech in both lawsuits are still pending

## THE FDA WARNING LETTERS

20.     On April 8, 2014, Shasta received a harsh warning letter from the FDA because Shasta, among other things, had failed an FDA compliance inspection conducted in December 2013.  **Exhibit C**.  The FDA demanded that Shasta take remedial action promptly, and memorialized this demand in that Warning Letter.  This Warning Letter also contained an FDA demand for a voluntary recall of GenStrip.

21.     Shasta did not respond to the FDA's April 8, 2014 letter.

22.     Shasta's noncompliance prompted the FDA to subsequently issue a Worldwide Safety Warning Letter on April 29, 2014 to users, distributors, physicians, and other parties interested in the GenStrip, halting the sale, use, and advertisement of the GenStrip. The FDA also warned diabetics against using the GenStrip in the future, and even took the unprecedented action of requesting that users, sellers, distributors, return any purchases of the GenStrip to the original point of sale.  **Exhibit D**.  In the drug industry, this FDA action is known as the "death penalty."

23.     Finally, Shasta has falsely represented to the FDA that PharmaTech is the "manufacturer" (as that term is defined by the FDA) of the GenStrip in a disingenuous attempt to avoid the effects of the FDA's April 8, 2014, Warning Letter.  As a direct and proximate result of Shasta's misrepresentation and interference with PharmaTech's business, the FDA issued a Warning Letter to PharmaTech on or about July 7, 2014, which requires PharmaTech to now incur fees and costs in defending itself against the false characterization that it is the GenStrip manufacturer.[3]

---

[3] Shasta also made the same misrepresentations to the FDA concerning CTI, *i.e.*, that CTI was "the manufacturer" of the GenStrip, which resulted in the FDA recently sending CTI its own Warning Letter.

COMPLAINT FOR BREACH OF CONTRACTS
ACTIVE 29738873v1 04/21/2015

## FIRST CAUSE OF ACTION

## BREACH OF EXCLUSIVE DISTRIBUTION AGREEMENT

### (Against all Defendants)

24.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

25.    PharmaTech and Shasta entered into the valid and enforceable Exclusive Distribution Agreement.

26.    Shasta is in breach of the express terms and/or the implied covenant of good faith and fair dealing of the Exclusive Distribution Agreement.   Shasta's breaches include, but are not limited to, the design of the GenStrip packaging, the failure to maintain the proper documentation sufficient to satisfy an FDA inspection, the failure to respond to the FDA's Warning Letter, the misrepresentations to the FDA concerning the identity of the manufacturer of the GenStrip and the interference with PharmaTech's ability to acquire GenStrip product from CTI.

27.    Plaintiff has performed all terms and conditions required of it under the Exclusive Distribution Agreement, except as excused by the acts, breaches and omissions of Shasta.

28.    As a direct and proximate result of the foregoing, PharamTech has and will suffer significant damages.

## SECOND CAUSE OF ACTION

## BREACH OF BINDING TERM SHEET

### (Against all Defendants)

1.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

2.    PharmaTech and Shasta entered into a valid and enforceable Binding Term Sheet.

3.    Shasta is in breach of the express terms and/or the implied covenant of good faith and fair dealing of the Exclusive Distribution Agreement.  Shasta's breaches include, but are not limited to, the failure to maintain the proper documentation sufficient to satisfy an FDA inspection, the failure to respond to the FDA's Warning Letter, the misrepresentations to the FDA concerning the identity of the manufacturer of the GenStrip and the interference with PharmaTech's ability to acquire GenStrip product from CTI.

4.      Plaintiff has performed all terms and conditions required of it under the Binding Term Sheet, except as excused by the acts, breaches and omissions of Shasta.

5.      As a direct and proximate result of the foregoing, PharamTech has and will suffer significant damages.

### DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff PharmaTech prays for judgment as follows:

1.      For compensatory damages in an amount to be determined at trial;

2.      For specific performance in accordance with the terms of the parties' agreements;

3.      Injunctive relief;

4.      For attorneys' fees and costs; and

5.      For such other and further relief as this Court may deem just and proper.

Dated: April 21, 2015

FOX ROTHSCHILD LLP

By:
John Shaeffer
Jeff Grant
Attorneys for Plaintiff
Pharmatech Solutions, Inc.


### JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: April 21, 2015

FOX ROTHSCHILD LLP

By:
John Shaeffer
Jeff Grant
Attorneys for Plaintiff
Pharmatech Solutions, Inc.

8

COMPLAINT FOR BREACH OF CONTRACTS

ACTIVE 29738873v1 04/21/2015

**EXHIBIT D**

```
              UNITED STATES DISTRICT COURT

        FOR THE NORTHERN DISTRICT OF CALIFORNIA



GOTHAM INSURANCE COMPANY,          CASE NO. 5:13 cv 03810 BLF

     Plaintiff in Interpleader,
         vs.

SHASTA TECHNOLOGIES, LLC; CALVIN
A. KNICKERBOCKER, III; CALVIN A.
KNICKERBOCKER, JR.; INSTACARE
CORP.; and PHARMATECH SOLUTIONS,
INC.,

     Defendants in Interpleader.
_____

AND ALL RELATED CROSS-ACTIONS.
_____


             DEPOSITION OF 30(b)(6) WITNESS FOR

             PHARMA TECH SOLUTIONS, INC.

                    KEITH BERMAN

                     Volume I


                February 19, 2015

                   10:08 a.m.



          35 North Lake Avenue, Suite 670

              Pasadena, California


REPORTED BY:

Sheree L. Spencer

CSR No. 11073
```

Keith Berman
February 19, 2015

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3

 4   GOTHAM INSURANCE COMPANY,        CASE NO. 5:13 cv 03810 BLF

 5        Plaintiff in Interpleader,
              vs.
 6
     SHASTA TECHNOLOGIES, LLC; CALVIN
 7   A. KNICKERBOCKER, III; CALVIN A.
     KNICKERBOCKER, JR.; INSTACARE
 8   CORP.; and PHARMATECH SOLUTIONS,
     INC.,
 9
          Defendants in Interpleader.
10   _____

11   SHASTA TECHNOLOGIES, LLC,

12                  Counter-Claimant,

13          vs.

14   GOTHAM INSURANCE COMPANY, and
     DOES 1 TO 50, INCLUSIVE,
15
                    Counter-Defendants.
16   _____

17

18

19

20

21

22

23

24

25
```

**Keith Berman**
**February 19, 2015**

```
 1     APPEARANCES:

 2

 3          For Defendant and Counterclaimant Shasta
                Technologies, LLC, and Defendants
 4              Calvin A. Knickerbocker, Jr., and
                Calvin A. Knickerbocker, III:
 5
                OGLOZA FORTNEY LLP
 6              BY:  DAVID C. FORTNEY
                535 Pacific Avenue, Suite 201
 7              San Francisco, California 94133
                415.912.1850
 8              415.887.5349 Fax
                dfortney@oglozafortney.com
 9
            For Defendant Pharma Tech Solutions, Inc.:
10
                BAER & TROFF
11              BY:  ERIC L. TROFF
                35 North Lake Avenue, Suite 670
12              Pasadena, California 91101
                310.802.4202
13              626.568.2800 Fax
                eric@btllp.com
14

15

16

17

18

19

20

21

22

23

24

25
                                                          3
```

1    never occurred?  Yeah.  We made the $50,000 payment

2    and then some.

3          Q     To -- to Attorney DuVal --

4          A     Correct.

5          Q     -- correct?  But not to Shasta?

6          A     Not to Shasta.

7          Q     And you've never paid Shasta $2 million

8    for -- pursuant to the March 20th term sheet; correct?

9          A     No.  Shasta -- the $2 million was

10   conditioned on certain things that Shasta had to

11   perform and we're still waiting.

12         Q     This declaratory relief complaint seeks

13   enforcement of the term sheet but with a different

14   purchase price; is that fair?  A different purchase

15   price for Shasta's intellectual property as defined in

16   the --

17         A     That's one thing it alleges.  We still have

18   the Ropers problem.

19         Q     The declaratory relief complaint in

20   Exhibit 7 doesn't alter the allocation between the

21   parties of the funds interpleaded to the court in this

22   interpleading matter; correct?

23         A     No.  The term sheet governs this -- those

24   fights.

25         Q     And the declaratory relief action -- by

93

**Keith Berman**
**February 19, 2015**

 1    filing the declaratory relief action, you are seeking

 2    to enforce that term sheet; correct?

 3        A       Correct.

 4        Q       Do you contend that Pharma Tech currently

 5    owns the 510(k) for GenStrip?

 6        A       Yes.

 7        Q       And you contend that Pharma Tech owns the

 8    510(k) for GenStrip despite none of the monies set

 9    forth in the March 20th term sheet to Shasta; is that

10    correct?

11        A       Yes.

12        Q       On what basis do you claim ownership of the

13    510(k)?

14        A       It was transferred to us, and when you

15    transfer a document -- I'm not sure if Shasta shared

16    that with you -- when you transfer a 510(k), you have

17    to check a box that says that this is -- that -- that

18    the 510(k) was sold.  That's the only way you can

19    transfer.  And incidentally as an aside, it came two

20    weeks before new FDA guidance that allowed the FDA to

21    stand in the way of any transfer going forward, but

22    this one was done.  Cal Jr., the younger, transferred.

23        Q       To clarify, are you referring to Cal the

24    III, as we've been referring to him --

25        A       Yes.

94